UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIO CANDO, RAMON A. PLACENCIA, FREDDY RODRIGUEZ, and YLDEFONSO HERNANDEZ, on behalf of themselves, FLSA Collective Plaintiffs, and the Class,

                    Plaintiffs,

-against-

BIG CITY YONKERS, INC. d/b/a BIG CITY AUTOMOTIVE WAREHOUSES, AUTOSTAR AUTOMOTIVE WAREHOUSE, INC., d/b/a DANKEN AUTO PARTS WILLIAMSBURG, QPBC INC. d/b/a QUEENS PLAZA, et al.

                    Defendants.

---

No. 16-cv-1154 (RML)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENOR-PLAINTIFFS' MOTION TO INTERVENE

Reed Smith LLP
David L. Weissman
Mark S. Goldstein
Jake A. Ebers
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................9

BACKGROUND ..........................................................................................................13

ARGUMENT ...............................................................................................................16

I.      THE *ROBINSON* PLAINTIFFS HAVE NOT MET THEIR BURDEN OF
        SHOWING THAT THEY ARE ENTITLED TO INTERVENE .....................................16

        A.      The Standards For Intervention Under Rule 24 ......................................16

        B.      The *Robinson* Plaintiffs' Motion To Intervene Is Not Timely, And
                Intervention By The *Robinson* Plaintiffs Will Unduly Delay Or Prejudice
                The Absent Class Members And The *Cando* Parties By Jeopardizing The
                Hard-Fought Settlement ...........................................................................17

        C.      The *Robinson* Plaintiffs Have Failed To Show That Their "Interests" Are
                Not Fully And Adequately Protected In *Cando*......................................21

        D.      The *Robinson* Plaintiffs Have Failed To Show That The *Cando* Plaintiffs
                Cannot Adequately Represent Their "Interests".......................................26

                i)      The *Robinson* Plaintiffs' Interest Regarding Their Classification
                        As Independent Contractors Is Meritless....................................28

                ii)     *Robinson* Plaintiffs' Have Failed To Show That Their Interest In
                        Proceeding As A Collective Action Is Not Protected .................29

                iii)    The *Robinson* Plaintiffs' Interest In Proceeding As A Class Action
                        Is Fully Protected In *Cando* ....................................................31

                iv)     The *Robinson* Plaintiffs' Claims Falling Outside The Statute Of
                        Limitations Of *Cando* Are Protected .......................................33

                v)      The *Robinson* Plaintiffs' Interests Will Not Be Affected If An
                        Injunction Is Eventually Issued..................................................34

        E.      Permissive Intervention Is Not Warranted ...............................................35

II.     THE SETTLEMENT DID NOT RESULT FROM A "REVERSE AUCTION" .............36

III.    THE *ROBINSON* PLAINTIFFS ARE NOT ENTITLED TO INTERVENTION
        BY VIRTUE OF THE FIRST-FILED RULE .............................................................39

        A.      The First-Filed Rule Does Not Apply to State Court Actions ...............39

B.    Assuming The First-Filed Rule Could Be Applied In This Case, Departure From The First-Filed Rule Is Warranted ...............................................................42

     i)    The Settlement of the *Cando* Action Constitutes "Special Circumstances" Overriding The First-Filed Rule ......................................42

     ii)    Because the Cando Litigation Has Progressed Further Than The Robinson Litigation, The First-Filed Rule Should Not Apply .................44

C.    The Cases Cited By The *Robinson* Plaintiffs Are Inapposite And Should Be Disregarded..........................................................................................45

IV.    THE *ROBINSON*  PLAINTIFFS ARE NOT ENTITLED TO CONDUCT DISCOVERY...................................................................................................46

CONCLUSION......................................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEI Life, LLC v. Lincoln Benefit Life Co.*,
No. 14-CV-6449, 2015 WL 9286283 (E.D.N.Y. Dec. 21, 2015) ...........................................44

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D. 41 (E.D.N.Y. 2010) ....................................................................................25, 26

*In re Arbitration between Griffin Indus., Inc. & Petrojam, Ltd.*,
58 F. Supp. 2d 212 (S.D.N.Y. 1999) ...................................................................................43

*Bailey v. AK Steel Corp.*,
No. 1:06-cv-468, 2008 WL 148941 (S.D. Ohio Jan. 14, 2008) ...........................................31

*Bukhari v. Deloitte & Touche LLP*,
No. 12 CIV. 4290 PAE, 2012 WL 5904815 (S.D.N.Y. Nov. 26, 2012) ..........................39, 45

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir.2001) ..................................................................................................27

*Calibuso v. Bank of Amer. Corp.*,
No. 10-cv-1413 (PKC), 2013 WL 5532631 (E.D.N.Y. Oct. 4, 2013) ...................................23

*Capitol Records, Inc. v. Optical Recording Corp.*,
810 F. Supp. 1350 (S.D.N.Y. 1992) ...............................................................................43, 44

*Chariot v. Ecolab, Inc.*,
97 F. Supp. 3d 40 (E.D.N.Y. 2015) .....................................................................................44

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................................40

*Cohorst v. BRE Properties, Inc.*,
No. 3:10-cv-2666, 2011 WL 3489781 (S.D. Cal. Jul. 19, 2011) ...........................................31

*Columbia Pictures Indus., Inc. v. Schneider*,
435 F. Supp. 742 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) .........................43, 44

*In re Community Bank of Northern Virginia*,
418 F.3d 277 (3d Cir.2005).................................................................................................26

*Connors v. Lexington Ins. Co.*,
666 F. Supp. 434 (E.D.N.Y. 1987) ......................................................................................44

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992) ......................................................................46

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011) ......................................................... *passim*

*Devlin v. Scardelletti*,
   536 U.S. 1 (2005) ......................................................................................32

*In re DHB Indus., Inc.*,
   Nos. 05-cv-4296, 05-cv-4345, 2007 WL 2907262 (E.D.N.Y. Sept. 30, 2007) ......................24

*Doe v. Cin–Lan, Inc.*,
   No. 08–cv–12719, 2011 WL 37970 (E.D.Mich. Jan. 5, 2011) ...............................................23

*Emp'rs Ins. of Wausau v. Fox Entm't Grp. Inc.*,
   522 F.3d 271 (2d Cir. 2008) ...................................................................39, 40, 42

*Employers Ins. of Wausau v. Prudential Ins. Co. of Am.*,
   763 F. Supp. 46 (S.D.N.Y. 1991) .................................................................43

*Farinella v. PayPal, Inc.*,
   611 F. Supp. 2d 250 (E.D.N.Y. 2009) ...........................................................17

*Farmland Dairies v. Commissioner of the New York State Dep't of Agric. & Mkts.*,
   847 F.2d 1038 (2d Cir.1988) ........................................................................17

*First City Nat. Bank & Trust Co. v. Simmons*,
   878 F.2d 76 (2d Cir. 1989) ...........................................................................42

*Geier v. Alexander*,
   801 F.2d 799 (6th Cir. 1986) .........................................................................30

*Hautur v. Kmart Corp.*,
   No. 15-CV-267A, 2015 WL 5567912 (W.D.N.Y. Sept. 22, 2015) .......................................45

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000) ..........................................................16, 17, 19, 20

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   99 F. Supp. 3d 288 (E.D.N.Y. 2015) .........................................................40, 41, 45

*Jones v. GES Exposition Servs., Inc.*,
   No. 02 C 6243, 2004 WL 2011396 (N.D. Ill. Sept. 7, 2004) ................................21

*Kerotest Mfg. v. C–O–Two Fire Equipment Co.*,
   342 U.S. 180 (1951) ....................................................................................42

*Lan Sang v. Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013)....................................................................40

*Lane v. Facebook, Inc.*,
    No. C 08-3845, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009)...............................32

*Lopez v. Delta Funding Corp.*,
    No. 98-cv-7204(MDG), 2004 WL 7196764 (E.D.N.Y. Aug. 9, 2004) ....................24

*Martin v. Cargill*,
    No. 13-cv-2563, 2014 WL 12609656 (D. Minn. May 2, 2014) .........................41, 42

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)....................................................................................37

*Meeropol v. Nizer*,
    505 F.2d 232 (2d Cir. 1974)....................................................................................40

*Millennium Drilling Co. v. Prochaska*,
    No. 14CV1985, 2014 WL 6491531 (S.D.N.Y. Nov. 18, 2014) ..............................40

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010)...............................................................................39, 40

*NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................26, 27

*Nicholas v. Conseco Life Ins. Co.*,
    No. 12 C 0845, 2012 WL 1831509 (N.D. Ill. May 17, 2012) .............................32, 41

*Ontel Prod., Inc. v. Project Strategies Corp.*,
    899 F. Supp. 1144 (S.D.N.Y. 1995)........................................................................43

*In re Pet Food Products Liability Litigation*,
    629 F.3d 333 (3d Cir.2010).....................................................................................26

*Pippins v. KPMG LLP*,
    No. 11 Civ. 0377(CM), 2011 WL 1143010 (S.D.N.Y. Mar. 21, 2011)...................46

*Port Auth. of N.Y. and N.J. v. Kraft Power Corp.*,
    No. 11 Civ. 5624(HB), 2012 WL 832562 (S.D.N.Y. Mar. 13, 2012) ....................39

*Radioactive, J.V. v. Manson*,
    153 F. Supp. 2d 462 (S.D.N.Y. 2001).....................................................................40

*Reich v. ABC/York-Estes Corp.*,
    64 F.3d 316 (7th Cir.1995) ................................................................................28, 29

- 6 -

*Reynolds v. Beneficial National Bank*,
  288 F.3d 277 (7th Cir. 2002) ........................................................................39

*Riviera Trading Corp. v. Oakley, Inc.*,
  944 F. Supp. 1150 (S.D.N.Y. 1996)..........................................................42, 43

*Robeson v. Howard Univ.*,
  No. 00 CIV 7389 (GBD), 2002 WL 122913 (S.D.N.Y. Jan. 30, 2002)..................................43

*Selis v. Rochester City Sch. Dist.*,
  199 F.R.D. 506 (W.D.N.Y. 2001).......................................................................17

*Shea v. Angulo*,
  19 F.3d 343 (7th Cir. 1994) .........................................................................21

*Tarazi v. Truehope, Inc.*,
  958 F. Supp. 2d 428 (S.D.N.Y. 2013)................................................................44

*Tate-Small v. Saks Inc.*,
  No. 12 CV 1008 HB, 2012 WL 1957709 (S.D.N.Y. May 31, 2012) ...............................40, 46

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................20, 33

*Thornton v. Syracuse Sav. Bank*,
  961 F.2d 1042 (2d Cir. 1992)........................................................................47

*U.S. v. City of New York*,
  198 F.3d 360 (2d Cir. 1999)..........................................................................16

*U.S. v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir.1994)......................................................................17, 18, 19

*United States Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)..........................................................................26

*Vollmer v. Publishers Clearing House*,
  248 F.3d 698 (7th Cir. 2001) ........................................................................46

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990)..........................................................................27

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  992 F.2d 92 (2d Cir. 1990)..........................................................................33

*Wyler–Wittenberg v. MetLife Home Loans, Inc.*,
  No. 12–cv–00366 (ADS), 2012 WL 5077482 (E.D.N.Y. Oct. 17, 2012) ...........................46

## Rules

Fed. R. Civ. P. 23 ...........................................................................................................21, 25

Fed. R. Civ. P. 23(a) ................................................................................................................32

Fed. R. Civ. P. 23(b)(3) .....................................................................................................10, 31

Fed. R. Civ. P. 23(c)(2)(B)(v) ...................................................................................................31

Fed. R. Civ. P. 23(e) ........................................................................................................10, 31

Fed. R. Civ. P. 23(e)(2) ....................................................................................................21, 24

Fed. R. Civ. P. 23(e)(5) ............................................................................................................21

Fed. R. Civ. P. 24 .....................................................................................................................16

Fed. R. Civ. P. 24(a) ................................................................................................................16

Fed. R. Civ. P. 24(b) ................................................................................................................17

## Other Authorities

AMERICAN LAW INSTITUTE, *Principles of the Law of Aggregate Litigation*, § 3.05,
    cmt. A (2010) ......................................................................................................................38

# PRELIMINARY STATEMENT[1]

If motions were decided based upon sheer volume (page length, number of exhibits, etc.), material misstatements, out-of-Circuit case law, and rank fallacies – both legal and factual – then the *Robinson* Plaintiffs' motion to intervene would be a slam dunk.  Unfortunately for the *Robinson* Plaintiffs, motions are not decided based upon such criteria.  Here, the law, as applied to the *actual* facts of this case, impel only one logical conclusion: namely, that the *Robinson* Plaintiffs have no right whatsoever to intervene.

Indeed, the *Robinson* Plaintiffs' motion is about one thing, and only one thing: stopping the Court from approving the *Cando* parties' settlement.  By virtue of filing this baseless motion, the *Robinson* Plaintiffs have evidenced their unwavering desire to explore every avenue possible to procure the ultimately unattainable relief they so desperately seek.  Unfortunately, no matter how they frame their conclusory suppositions as arguments, their efforts will be for naught.

Only now – after the *Cando* parties have been vigorously negotiating a potential resolution of this action and have requested for preliminary approval of their settlement agreement (the "Settlement") – the *Robinson* Plaintiffs seek to intervene and become parties to this case for the sole purpose of opposing the Settlement.  Instead of continuing to participate in settlement discussions, the *Robinson* Plaintiffs charted their own course, filing motions for both conditional and class action certification.  Now, only after *Cando* progressed far enough where settlement was a tangible possibility, the *Robinson* Plaintiffs come to this Court asserting that the

---

[1] Throughout this memorandum, Defendants will use the following definitions: the "*Robinson* Plaintiffs" refers to the proposed intervenor-plaintiffs who have filed the motion to intervene; "Defendants" refers to Big City Automotive, Big City Automotive Warehouse, 450 Concord Avenue Corp., Big City Yonkers, Inc., D A L Holding Co., Inc., Glenwood Auto Parts Corp., KKLDS, Inc., All Parts Inc., QPBC Inc., 20-15 Atlantic Corp., Autostar Automotive Warehouse, Inc., Williamsburg Automotive Realty, LLC, Ryle Realty Corp., Linden BC, Inc., and Big City Englewood, Inc.; the "*Cando* Plaintiffs" refers to the Named Plaintiffs and the represented putative Class Members in *Cando*; "*Cando*" refers to the instant action (*Cando v. Big City Yonkers, Inc., et al.*, No. 16 Civ. 1154(RML) (E.D.N.Y.)); the "*Cando* parties" refers to Defendants and the *Cando* Plaintiffs; the "Parties" refers to Defendants, the *Cando* Plaintiffs, and the *Robinson* Plaintiffs.

only way to protect their purported interests is to intervene in *Cando*.  Unfortunately, their motion is baseless and should be denied.

   ***First***, the *Robinson* Plaintiffs' motion is untimely.  Their decision to wait until the *Cando* parties reached a settlement strongly suggests that the *Robinson* Plaintiffs have no interest in intervening in the litigation, but in only holding the *Cando* parties' settlement hostage before this Court can grant preliminary approval.

   ***Second***, the *Robinson* Plaintiffs' intervention at such a late stage would prejudice not only the *Cando* parties, but also putative class members by forestalling their opportunity to assess the settlement for themselves and decide whether to participate.  Additionally, the *Cando* parties will be significantly prejudiced if the *Robinson* Plaintiffs were permitted to intervene in this case so that they could unjustifiably attempt to block the Settlement after vigorous negotiations.  Indeed, courts in the Second Circuit repeatedly deny intervention when it would jeopardize a settlement.

   ***Third***, in contrast to the *Cando* parties, the *Robinson* Plaintiffs will suffer no prejudice whatsoever if their motion to intervene is denied.  In fact, to the extent that the *Robinson* Plaintiffs (or any other purported class members) believe that the Settlement is unfair, they can more than adequately protect their interests by filing formal objections to the Settlement and appearing at the fairness hearing that the Court will be required to hold pursuant to Federal Rule of Civil Procedure Rule 23(e), or by simply opting-out pursuant to Federal Rule of Civil Procedure Rule 23(b)(3).  As such, the *Robinson* Plaintiffs have failed to show that their interests are not adequately protected in *Cando*, or that they will suffer any prejudice.

   ***Fourth***, the *Robinson* Plaintiffs have failed to overcome the strong presumption that class members' interests are adequately represented by the settling *Cando* Plaintiffs and their counsel,

- 10 -

and have provided not a single fact or circumstance to show otherwise.  The *Robinson* Plaintiffs' interests are not inadequately represented simply because their motive to litigate is different from that of the *Cando* Plaintiffs.

      *Fifth*, the *Robinson* Plaintiffs have failed to show that they have protectable interests in this action.  Their purported "interests" can actually just be boiled down to one: namely, the desire of counsel for the *Robinson* Plaintiffs to continue their state court action because they have a different opinion with the *Cando* Plaintiffs' counsel on the amount of the Settlement. These "interests" – which are clearly illusory in light of the ability of any class member to object or to opt-out of the Settlement – are legally insufficient to warrant intervention into *Cando*. Moreover, these fictitious and illusory "interests" that are purportedly at risk by virtue of the Settlement manifests the true nature of the *Robinson* Plaintiffs' motivations: they think they could have gotten a better deal.  Unfortunately for the *Robinson* Plaintiffs, such is not a legally protectable interest for the purposes of their motion to intervene.

      *Sixth*, the *Robinson* Plaintiffs' suggestion that the Settlement was a product of a "reverse auction" or "procedural unfairness" is simply absurd.  The Court must not be blinded by the *Robinson* Plaintiffs' veil of factual misrepresentations, glaring omissions, and boilerplate statements of out-of-circuit law lacking any evidentiary or factual support.  Their motion to intervene represents nothing more than an improper effort to stymie a fair and reasonable settlement because the *Robinson* Plaintiffs believe they could have secured a better deal by drowning Defendants in unnecessary litigation costs.  The *Robinson* Plaintiffs should not be allowed to perpetrate such a fraud on this Court.

      *Seventh*, the first-filed rule on which the *Robinson* Plaintiffs rely is inapplicable to their motion to intervene.  Indeed, it is well settled in the Second Circuit that the first-filed rule only

applies to concurrent federal litigation.  Moreover, even if the first-filed rule could apply in this case, courts in the Second Circuit consistently recognize settlement efforts as constituting "special circumstances" meriting departure from the first-filed rule.  As such, the *Robinson* Plaintiffs' reliance on the first-filed rule is wholly without merit.  It is therefore no wonder that they buried this argument at the end of their motion papers after initially championing the first-filed rule as their sole legally protected interest warranting intervention at the December 1, 2016 pre-motion conference.  Such a change in strategy shows that the *Robinson* Plaintiffs are merely seeking to hold the *Cando* parties hostage and impose their own personal preferences in guiding this litigation.  Accordingly, the first-filed rule does not warrant the *Robinson* Plaintiffs' intervention into *Cando*.

*Eighth and finally*, the *Robinson* Plaintiffs' request to conduct discovery "related to these motions" must be summarily denied.  Not only do the *Robinson* Plaintiffs fail to cite any legal authority to support their request, but such authority does not exist.  Because they are not parties to the *Cando* action and should not be permitted to intervene, they have no basis to seek any discovery from this Court.  Moreover, because discovery regarding settlement negotiations has a chilling effect on the ability of parties to settle cases, courts routinely deny such requests, particularly in ongoing litigation, without a showing of collusion or other improper behavior on the part of the settling parties.  The *Robinson* Plaintiffs can point to no such behavior.  Indeed, their request for discovery related to these motions amounts to yet another attempt to unjustifiably assert themselves into the case when their participation as parties is neither necessary nor warranted.

In short, to permit the *Robinson* Plaintiffs to disrupt the Settlement on the basis of nothing more than their unsupported suppositions and blatant misrepresentations of fact would

completely thwart the settlement process.  On their theory, no class action would ever be settled, so long as there was at least a single lawyer around who brashly believes that they could do a better job than existing counsel.  As such, the *Robinson* Plaintiffs' motion to intervene should be denied.

## BACKGROUND

Defendants are compelled by the *Robinson* Plaintiffs' skewed portrayal of the procedural and factual record to provide the following background:

The *Robinson* Plaintiffs initially filed their lawsuit against Defendants on September 15, 2015 in Federal Court in the Southern District of New York.   (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 2).  After Defendants provided the *Robinson* Plaintiffs with the Operator Agreements they signed upon their engagement, which contained a forum selection clause stating that "any action related to this Agreement shall be subject to the jurisdiction of the courts of the State of New York, County of Nassau," the *Robinson* Plaintiffs "voluntarily dismissed" their lawsuit on November 3, 2015.  *Id.* at 2-3.  This was purely a strategy decision by the *Robinson* Plaintiffs.  Indeed, instead of fighting Defendants' anticipated motion to dismiss, the *Robinson* Plaintiffs voluntarily opted to chart their own course of action, and two months later, filed their state court action on January 11, 2016.  *Id.* at 3.  No court order had dismissed their action.  No motion to dismiss had even been filed.  The *Robinson* Plaintiffs took it upon themselves to decide when and where they wanted to litigate their case.

*Cando* was filed just 57 days later, on March 8, 2016.[2]  *Id.*  Both lawsuits seek identical relief in the form unpaid minimum wage and overtime compensation – based on the theory that

---

[2] Both the *Robinson* Plaintiffs and the *Cando* Plaintiffs filed amended complaints in their respective suits.  The *Robinson* Plaintiffs' amended complaint added additional defendants, while the *Cando* Plaintiffs' amended complaint added additional named plaintiffs.  The factual and legal arguments, as well as the relief sought, in both complaints were left unchanged.

the delivery drivers were misclassified as independent contractors – as well as other alleged damages, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

On May 18, 2016, Defendants entered into a Stipulation and Tolling Agreement with the *Robinson* Plaintiffs in the hopes of "settling at mediation after some targeted discovery for settlement purposes." *Id.* at 4.  On June 3, 2016, Defendants requested a pre-motion conference before Hon. Judge William F. Kuntz, II regarding their anticipated motion to dismiss *Cando* pursuant to the aforementioned forum selection clause. *Id.* at 4.  Said conference, while initially scheduled for June 24, 2016, was adjourned *sine die* after the *Cando* Plaintiffs agreed in early June 2016 to join Defendants and the *Robinson* Plaintiffs at the mediation. *Id.* at 3.

On August 1, 2016, the Parties attended an all-day mediation before Ralph S. Berger, Esq., which did not immediately result in a settlement. *Id.* at 4.  While Defendants attempted to continue discussing settlement with the *Robinson* Plaintiffs, the *Robinson* Plaintiffs "reached an impasse with the other parties" and decided to pursue their state court action. *Id.*

On August 11, 2016, just ten days after the failed mediation, Defendants renewed their request for a pre-motion conference regarding their anticipated motion to dismiss.  (ECF No. 76). The pre-motion conference was originally scheduled for October 7, 2016 before Hon. William F. Kuntz, II, but due to a change in Court's calendar, the conference was re-scheduled to November 4, 2016.  (ECF No. 76 ¶ 3).[3]  Contrary to the *Robinson* Plaintiffs' contention, Defendants never abandoned their motion to dismiss *Cando* (as will be discussed in more detail below).

_____

[3] Defendants must note that the Declaration of Troy L. Kessler in Support of Proposed Intervenor-Plaintiffs' Motion to Intervene contains a purposeful misrepresentation of fact.  Mr. Kessler states that "[o]n August 11, 2016 [Defendants] requested that [ ] Judge Kuntz reschedule the pre-motion conference regarding [Defendants] anticipated motion to dismiss *Cando* pursuant to the forum selection clause."  In fact, Defendants renewed their request for a pre-motion conference regarding said motion to dismiss, which Judge Kuntz originally scheduled for October 7, 2016, and subsequently rescheduled to November 7, 2016 due to a change in the Court's calendar.  Defendants take issue with Mr. Kessler's characterization of their request to renew as a request to "reschedule."  Mr. Kessler is

- 14 -

In the interim, Defendants continued discussing settlement with the *Cando* Plaintiffs. The *Robinson* Plaintiffs, for their own part, remained steadfast in their unwillingness to participate in such discussions, opting instead to continue litigating their state court action. (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 4-6).

Given the progress of the settlement discussions between the *Cando* parties, on August 28, 2016, Defendants filed a letter requesting a settlement conference with Your Honor, which was scheduled for October 7, 2016.  (ECF No. 77 ¶¶ 1, 4).  Conveniently, just eight days before the settlement conference, the *Robinson* Plaintiffs filed a request for a pre-motion conference request regarding their anticipated motion to intervene, even though they had likely known about *Cando* for *almost 7 months*.  (ECF No. 80).  Indeed, it was not until it appeared that the *Cando* parties were on the verge of a settlement did the *Robinson* Plaintiffs first seek to intervene in this case.  This would be the first of many tactics by the *Robinson* Plaintiffs to block the *Cando* parties' settlement efforts.  The requested pre-motion conference was scheduled for November 17, 2016.  (ECF No. 80 ¶ 2).

On October 7, 2016, the settlement conference was held, and after "[l]engthy settlement negotiations" the *Cando* parties reached an agreement in principle to settle the matter.  (*Id.* at Minute Entry of October 7, 2016).  Six days later, Defendants notified Justice Denise L. Sher, who is presiding over the state court action, of the settlement in principle. (*See Robinson* Plaintiffs' Ex. 15).  On October 24, 2016, the *Cando* parties filed a pre-motion conference request regarding the *Cando* Plaintiffs' anticipated motion for preliminary approval of the Settlement.  (ECF No. 85).  The very same day, the *Robinson* Plaintiffs again filed a request for a

---

attempting to perpetuate a fraud on this Court by framing Defendants' request as further support for his meritless contention that Defendants had abandoned said motion.  As is clear from the record, Defendants never abandoned their motion to dismiss *Cando*.

pre-motion conference regarding their anticipated motion to intervene.  (ECF No. 86).  Both conferences were scheduled for December 1, 2016.  (ECF No. 87 ¶¶ 2-3).

At the December 1, 2016 conference, all Parties were present, and were instructed by Your Honor to attempt in good faith to explore a global settlement of these matters.  Those efforts were unsuccessful, resulting in the *Robinson* Plaintiffs' filing of this motion and the *Cando* Plaintiffs' filing of the preliminary approval motion.

## ARGUMENT

**I.    THE *ROBINSON* PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY ARE ENTITLED TO INTERVENE**

### A.    The Standards For Intervention Under Rule 24

The *Robinson* Plaintiffs claim that the standard for intervention is a light one.  This is simply untrue.

Federal Rule of Civil Procedure Rule 24 provides two potential bases for a motion to intervene: intervention as a matter of right and permissive intervention.  In order to intervene as of right under Rule 24(a) in the Second Circuit, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  *U.S. v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) (affirming denial of motion to intervene, because intervention would prejudice the existing parties who had participated in an arm's legnth negotiation for more than a year prior to reaching the challenged settlement).  All of these elements must be satisfied, and "*[d]enial of the motion to intervene is proper if any of these requirements is not met*."  *Selis v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 509-10 (W.D.N.Y. 2001) (citations omitted) (emphasis added).

Permissive intervention under Rule 24(b) similarly focuses on whether the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact" and "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 259 (E.D.N.Y. 2009).

Because the two standards overlap significantly, they will be considered together below. Nevertheless, the *Robinson* Plaintiffs have failed to satisfy the standards for either type of intervention.

**B.     The *Robinson* Plaintiffs' Motion To Intervene Is Not Timely, And Intervention By The *Robinson* Plaintiffs Will Unduly Delay Or Prejudice The Absent Class Members And The *Cando* Parties By Jeopardizing The Hard-Fought Settlement**

A district court has broad discretion in assessing the timeliness of a motion to intervene, which "defies precise definition." *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994).  The court may consider, inter alia, the following factors: (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000).  Generally, the court's analysis must take into consideration the totality of the circumstances.  *See, e.g., Farmland Dairies v. Commissioner of the New York State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir.1988).

Courts in the Second Circuit regularly deny motions to intervene where granting intervention would jeopardize a settlement.  *See e.g., In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) ("[I]ntervention at this late stage would prejudice the existing parties by destroying their Settlement and sending them back to the drawing board"); *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) (upholding district court's denial of plaintiffs'

- 17 -

motion for intervention where it found that permitting intervention "would have also required a reopening and a renegotiation of the consent decree, thereby wasting the fruits of lengthy negotiations that had culminated in agreement.").

Here, the *Robinson* Plaintiffs assert that their motion to intervene is timely and that the *Cando* Parties have not been prejudiced because the instant action "has not advanced since [the *Cando* Plaintiffs] filed their complaint and amended complaint" and that "[Defendants] were not prejudiced because [they] caused the harm of competing cases."   (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 11).   Such arguments are nonsensical and must be disregarded.

First and foremost, by the *Robinson* Plaintiffs' own admission, they "voluntarily dismissed" the *Alcantara* action pursuant to the forum selection clause in the delivery drivers' Operator Agreements.   *Id.* at 4.   This was purely a strategy decision on their part.   No order was issued mandating dismissal, nor was any motion to dismiss actually filed.   To suggest that Defendants "caused the harm in competing cases" when the *Robinson* Plaintiffs voluntarily dismissed their action is, consequently, patently untrue.   The *Robinson* Plaintiffs were presented with an obstacle, and instead of trying to overcome it, they surrendered without a fight.   Any "harm" cited by the *Robinson* Plaintiffs was therefore self-inflicted.   Moreover, to state that *Cando* has not progressed as far as the state court action – when *Cando* has resulted in a settlement, that would resolve the claims of up to 1,709 class members, after over seven months of negotiations – belies logic and common sense.   *Cando* is on the precipice of final resolution and dismissal, while the *Robinson* Plaintiffs' state court action is not (and may not be for years to come).

In addition, the Parties are only in this precarious situation – a proposed settlement pitted against an intervention motion – because of the *Robinson* Plaintiffs' substantial delay.  Counsel for the *Robinson* Plaintiffs were well aware of *Cando* for almost 7 months before they filed their motion to intervene.  Yet it was not until eight days before the *Cando* parties' settlement conference that the *Robinson* Plaintiffs first decided to seek intervention into *Cando*.  This delay has not only significantly prejudiced the *Cando* parties – who have expended significant time, effort, and resources in negotiating and finalizing the Settlement – but the timing of the *Robinson* Plaintiffs' motion to intervene at this late juncture, perhaps more than anything, shows that their motion to intervene is nothing more than a transparent, and impermissible, attempt to block the Settlement.

In addition, as stated above, courts in the Second Circuit have repeatedly denied intervention where said intervention would jeopardize a settlement and thereby prejudice the existing parties.  *See Holocaust Victim Assets Litig.*, 225 F.3d at 198 (denying intervention where the parties had engaged in extensive negotiations before reaching an agreement); *Pitney Bowes*, 25 F.3d at 72 (noting that the parties had negotiated for eight months before reaching a final agreement).  In the present action, all parties, including the *Robinson* Plaintiffs, have been engaged in extensive settlement discussions for over seven months.  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 4) ("[O]n May 18, 2016, [the *Robinson*] Plaintiffs and [Defendants] entered into a Stipulation and Tolling Agreement, with the hopes of settling at mediation after some targeted discovery for settlement purposes.").  To allow the *Robinson* Plaintiffs to intervene at the eleventh hour would not only disrupt the orderly resolution of the *Cando* action, but would prejudice putative class members by forestalling their opportunity to

decide for themselves whether to participate in the settlement based on their own assessment of the Settlement's terms and the payment they could receive.

In other words, intervention would jeopardize the Settlement and inflict prejudice not just upon the *Cando* parties, but to the purported class members as well.  Courts within the Second Circuit should not, and in fact do not, countenance such reckless behavior.  *See, e.g., Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 69 (S.D.N.Y. 2003) (denying motion to intervene and noting that class members waiting to receive the benefits from the proposed settlement may suffer prejudicial delay were intervention permitted).

Moreover, because the *Robinson* Plaintiffs can still pursue their state court action – assuming that they opt-out of the Settlement (as discussed in more detail below) – they will not suffer any prejudice if the Court denies their motion to intervene.  *See Holocaust Victim Assets Litig.*, 225 F.3d at 199 ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied.").

By attempting to intervene in *Cando* for the purpose of thwarting the Settlement, what the *Robinson* Plaintiffs are really seeking to do is to substitute their own judgment for that of the *Cando* Plaintiffs and their counsel.  The Court should see the *Robinson* Plaintiffs' motion to intervene for what it truly represents: a premature and improper effort to scuttle a fair and reasonable settlement at the preliminary approval stage, before the rest of the purported class has an opportunity to consider it.  Because allowing the *Robinson* Plaintiffs to intervene in *Cando* would unduly delay and potentially upend a fair and reasonable settlement, their motion should be denied.

**C.     The *Robinson* Plaintiffs Have Failed To Show That Their "Interests" Are Not Fully And Adequately Protected In *Cando***

Even if the Court determines that the *Robinson* Plaintiffs have protectable interests in this action (which they clearly do not, as will be discussed below), they have still failed to demonstrate that their interests will be impaired by the disposition of *Cando*.  In contrast to the prejudice that the *Cando* Plaintiffs and the putative class members would suffer if the *Robinson* Plaintiffs are permitted to intervene, the *Robinson* Plaintiffs do not have a sufficient interest in this litigation that is impaired or, conversely, not adequately protected.  "Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding."  *Jones v. GES Exposition Servs., Inc.*, No. 02 C 6243, 2004 WL 2011396, at *8 (N.D. Ill. Sept. 7, 2004) (citing *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994)).  "Thus, where the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the 'impairment' prong of 24(a) typically is not met."  *Id.* (citing *Shea*, 19 F.3d at 347).  Such impairment will not occur.

Whatever interests the *Robinson* Plaintiffs purportedly have in this action are fully protected by the well-established procedure for obtaining judicial approval of a class action settlement under Federal Rule of Civil Procedure 23.  The *Robinson* Plaintiffs will have the opportunity to file formal objections to the proposed Settlement, which will be heard at a fairness hearing before final approval of the Settlement, and the Court will have to determine that the Settlement is "fair, reasonable, and adequate" before approving it.  FED. R. CIV. P. 23(e)(2).  The objection procedure is specifically designed to accomplish exactly what the *Robinson* Plaintiffs seek in their motion to intervene: an opportunity to voice any concerns over the fairness of the settlement.  In the alternative, they will also have the opportunity to opt out of the Settlement, freeing themselves to pursue their purported causes of action as they see fit.

On this point, *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601 (W.D.N.Y. 2011), which presents virtually analogous issues, proves instructive.  In that case, the plaintiffs asserted class-based FLSA and NYLL unpaid overtime claims against the defendants.  Shortly after the plaintiffs filed their fifth amended complaint, the parties notified the Court that they had reached a classwide settlement of the plaintiffs' claims and filed a motion seeking preliminary approval of such settlement.

Prior to the filing of the motion for preliminary approval of the settlement, however, Cynthia Cole and three other individuals (the "*Cole* Plaintiffs"), plaintiffs in a separate litigation involving similar claims, moved to intervene in *Davis*.  The *Cole* Plaintiffs were joined in their motion to intervene by Gayla Pickle and Carol Hughes (the "*Pickle* Plaintiffs"), plaintiffs in another similar action then-pending in the Southern District of New York.  Ostensibly, the *Cole* and *Pickle* Plaintiffs moved to intervene "to protect the rights of class members in the *Cole* and *Pickle* actions, whose claims, they contend, would be extinguished as a result of the proposed settlement in this case."  *Id*. at 604.

In denying the *Cole* and *Pickle* Plaintiffs' joint motion to intervene, the Court concluded in pertinent part that:

> Intervention is not necessary here to protect the proposed intervenors' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties. . . .

> The proposed intervenors' interests in this action can be fully protected at the fairness hearing for final approval of the settlement.  In addition, any class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately.

> In an analogous case, *Doe v. Cin–Lan, Inc.*, No. 08–cv–12719, 2011 WL 37970 (E.D.Mich. Jan. 5, 2011), after the parties agreed to settle the plaintiffs' claims under the FLSA and Michigan law, plaintiffs from two actions that had been filed in California moved to intervene in the Michigan action, seeking, *inter alia*, to conduct discovery regarding the parties' conduct during settlement negotiations to determine whether the settlement was a result of collusion.

- 22 -

Denying the motion to intervene, the court stated that while there was no dispute
that the proposed intervenors' motion was timely and that they possessed an
interest in the settlement of the nationwide claims at issue in the case, the
proposed intervenors had failed to show that intervention was necessary to protect
their legally protected interests.  The court stated that the "Proposed Intervenors
may simply choose not to join this action and they will not be bound by it," and
that "[a]lternatively, should Proposed Intervenors choose to join this settlement,
but also wish to object to it, they may voice their concerns in writing and in
person at the fairness hearing."  Adding that permitting intervention would delay
the potential resolution of the case, prejudice both the plaintiffs and the
defendants, and "likely offer little to no benefit to the potential class members,
given that the settlement took nearly six months to put together and already
reflects the parties' final bargaining positions," the court concluded that
intervention was not warranted under either Rule 24(a)(2) or 24(b), and that "[i]f
the class members do not wish to take advantage of the settlement, they can
choose not to join it." . . . .

The Court is also mindful that [t]he Second Circuit has noted on several occasions
that jeopardizing a settlement agreement causes prejudice to the existing parties to
a lawsuit.  In addition, there is a presumption that class members' interests are
adequately represented by the settling plaintiffs and their counsel, and the burden
is on the proposed intervenors to rebut that presumption.  The proposed
intervenors in the case at bar have not overcome that presumption.

*Davis*, 775 F. Supp. 2d at 605-07 (internal citations and quotations omitted).

The situation created by the *Robinson* Plaintiffs is a virtually analogous situation to the
one presented in *Davis*.  As in *Davis*, to the extent that the *Robinson* Plaintiffs take issue with the
Settlement, their "interests in this action can be fully protected at the fairness hearing for final
approval of the settlement" and they will "be given an opportunity to opt out and pursue their
own claims separately."  *Id*. at 605-06.  In addition, "should [the *Robinson* Plaintiffs] choose to
join [the] settlement, but also wish to object to it, they may voice their concerns in writing and in
person at the fairness hearing."  *Id*. at 606 (quoting *Cin–Lan, Inc.*, 2011 WL 37970, at **2-3);
*see also Calibuso v. Bank of Amer. Corp.*, No. 10-cv-1413(PKC), 2013 WL 5532631, at *2
(E.D.N.Y. Oct. 4, 2013) (noting that even though the settlement process, by allowing the
purported intervenor to object to the settlement or simply opt out, "could present [the purported
intervenor] with a Hobbesian choice does not compel this Court to end-run the settlement

- 23 -

process, by permitting her to intervene and, unlike other class members, object *without* staying in this action") (emphasis in original); *Lopez v. Delta Funding Corp.*, No. 98-cv-7204(MDG), 2004 WL 7196764, at *4 (E.D.N.Y. Aug. 9, 2004) ("Notwithstanding the vehemence of their criticism of class counsel, the objectors' attacks are simply 'differences of opinion with class counsel on a negotiated settlement [which] can be adequately addressed through the Court's consideration of the objections,' without need for intervention") (citations omitted); *In re DHB Indus., Inc.*, Nos. 05-cv-4296, 05-cv-4345, 2007 WL 2907262, at *2 (E.D.N.Y. Sept. 30, 2007) (proposed intervenor's interest was not impaired because "she is a member of the class, and she can object to the fairness of the settlement" and can "bring her own lawsuit.").

The *Robinson* Plaintiffs' attempt to distinguish *Davis* from the present situation is unpersuasive.  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 16-18). First, the *Robinson* Plaintiffs assert that the Judicial Panel on Multidistrict Litigation ("Judicial Panel") refused to centralize the numerous cases involved because of the "long history of *Davis*." *Id.* at 17.  This is incorrect.  In refusing to centralize the cases seeking intervention, the Judicial Panel focused on the fact that the parties in *Davis* had "announced that they had reached a tentative nationwide settlement," while emphasizing that the  "[p]laintiffs in the non-settling actions should reasonably anticipate an opportunity to object to the purported nationwide settlement . . .".  *Davis*, 775 F. Supp. 2d at 605 (quoting Dkt. # 158-8).  The *Davis* court adopted the Judicial Panel reasoning, holding that the "proposed intervenors' interests in this action can be fully protected at the fairness hearing for final approval of the settlement."  *Id.* 605-06 (citing FED R. CIV. P. Rule 23(e)(2)).  Just like the proposed intervenors in *Davis*, the *Robinson* Plaintiffs' "interests" in *Cando* will be fully protected at the fairness hearing for final approval of the Settlement.

Second, the fact that the *Robinson* Plaintiffs' action was filed first has nothing to do with their burden to show that their interests are not fully protected in the instant action. (*See also infra*, Argument § III). Yet again, the *Robinson* Plaintiffs have relied on inapplicable out-of-circuit case law to distract the Court from one, undeniable conclusion: the *Robinson* Plaintiffs' interests are adequately protected by the procedure for obtaining judicial approval of a class action settlement under Federal Rule of Civil Procedure Rule 23. Whichever party raced to the Courthouse steps and filed their action first is of no consequence.

Finally, the *Robinson* Plaintiffs assert that the "*Davis* intervenors only sought to intervene in the settlement approval process." (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 17). This is a bold faced fallacy, as the intervenors in *Davis* moved to intervene "to protect the rights of class members in [their respective] actions, whose claims, they contend, *would be extinguished as a result of the proposed settlement in this case*." *Id.* at 604 (emphasis added). This is indistinguishable from the *Robinson* Plaintiffs' arguments. Clearly, the *Robinson* Plaintiffs' attempt to distinguish *Davis* is severely flawed, and should be disregarded.

The *Robinson* Plaintiffs' baseless attack on *Davis* aside, *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010), also proves instructive. That case dealt with three objectors who had previously filed a separate FLSA case against the defendants who collectively opposed the settlement and expressed suspicion that the timing of the settlement agreement, which occurred almost contemporaneously with the judge in their own action directing them to establish a briefing schedule on class certification, suggested that the settlement was the result of collusion and a race to the courthouse. *Id.* at 47. The court denied the motion, finding that three objectors had been given a full opportunity to air their concerns about counsel and the settlement

through the fairness hearing and that intervention would cause delay and add to litigation costs.

*Id.* at 60.  The court added:

> The Court notes that objectors were initially plaintiffs in a separate action in the Southern District in which they sought recovery from defendants on the very same claims, and that objectors withdrew from that case in order to join this action. . . . To the extent that objectors believed that the settlement gave short shrift to the merits of their claims and undervalued their potentially recoverable damages, ***the logical course was to opt out and continue to pursue their claims in the Southern District case***.

*Id.* (emphasis added).  The same reasoning applies here.  Allowing the *Robinson* Plaintiffs to intervene and become parties to this action, at this juncture, would cause unnecessary delay and prejudice the *Cando* parties.  If the *Robinson* Plaintiffs believe the settlement is unfair, they will have the opportunity to voice their concerns by objecting and appearing at the fairness hearing, or they may opt-out and continue to pursue their own claims.

### D. The *Robinson* Plaintiffs Have Failed To Show That The *Cando* Plaintiffs Cannot Adequately Represent Their "Interests"

The *Robinson* Plaintiffs also allege that the *Cando* Plaintiffs and their counsel are not representing their interests.  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 18-19).  However, as described below, the *Robinson* Plaintiffs have offered virtually no factual basis to support these arguments.

"An applicant for intervention . . . has the burden of showing that representation may be inadequate."  *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).  As the Court stressed in *Davis*, "*there is a presumption that class members' interests are adequately represented by the settling plaintiffs and their counsel . . .*".  *Davis*, 775 F. Supp. 2d at 606-07 (emphasis added) (citing *In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3d Cir.2010); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 315 (3d Cir.2005); *NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 491 (S.D.N.Y. 1998)).

While the burden to demonstrate inadequacy of representation is generally "minimal," the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Moreover, simply because a purported intervenor's interest may be different from that of a party to the action does not mean that the interests of the former are not adequately represented by the latter. *See NASDAQ*, 187 F.R.D. at 491 (citing *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). The *Robinson* Plaintiffs assert just that, stating that they, as a "proposed intervenor[,] can satisfy this burden by demonstrating divergence of interests between himself and the class representative." (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in Support P. 18).

The "interests" purportedly unprotected by the *Cando* Plaintiffs are, to wit: "(1) their classification as independent contractors; (2) their interest in proceeding as a collective action; (3) their interest in proceeding as a class action, with [Frank] Robinson as the class representative, (4) the back pay owed to them, which accrued outside of *Cando*'s statute of limitations; and (5) the right to oppose any injunction of [the state court action]." (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in Support P. 11-12). For the following reasons, the *Robinson* Plaintiffs' purported "interests" are, in fact, adequately protected in *Cando*, and are otherwise speculative, suppositious, and insufficient to warrant intervention in this action.[4]

---

[4] While the *Robinson* Plaintiffs correctly assert that the relevant factors for the Court to consider when determining the adequacy of representation in this context is whether have provided any evidence of "(1) collusion; (2) adversity of interests; (3) possible nonfeasance; or (4) incompetence," (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 18), they make no such allegations that would support such a conclusion. They could have argued, for example, that the Settlement gives insufficient value, that the release is overbroad, or that the notice to be sent to the class members is deficient. However, they make no such allegation. Because of this glaring omission, the *Robinson* Plaintiffs have failed to satisfy their burden to show that intervention into *Cando* is warranted.

i)   **The _Robinson_ Plaintiffs' Interest Regarding Their Classification As Independent Contractors Is Meritless**

The _Robinson_ Plaintiffs' first contend that the "_Cando_ Plaintiffs are not seeking to reclassify the drivers from independent contractors to employees, while [they] are." _Id._ at 19. However, no judicial mechanism exists that would permit a court to order a company to reclassify independent contractors as employees (and, even if there was, Defendants no longer directly engage delivery drivers, rendering this point moot).  As a result, this argument is frivolous.

Moreover, the out-of-circuit case cited by the _Robinson_ Plaintiffs, _Reich v. ABC/York-Estes Corp._ ("_ABC_"), 64 F.3d 316, 321 (7th Cir.1995), is clearly inapposite.

The exotic dancers in _ABC_ were seeking intervention _to defend their status as independent contractors as party defendants, not party plaintiffs_. _Id._ at 320-321.  This is a critical distinction that the _Robinson_ Plaintiffs have overlooked.  In fact, the present situation is diametrically opposite to the situation in _ABC_.  In granting the exotic dancers' motion for intervention, the Court noted that their delay in filing the motion was due to the defendant's misrepresentation that "it was vigorously defending [the dancers'] status as independent contractors." _Id._ at 321.  The Court went on to note that the exotic dancers would suffer prejudice if their application for intervention was denied, because "they w[ould] find themselves precluded from bargaining _for_ independent contractor status." _Id._ at 322 (emphasis added).  For the _Robinson_ Plaintiffs to rely on a case that is so inapposite to their supposed "interest" in _Cando_ is shocking.

Additionally, the Court in _ABC_ went so far as to acknowledge that that "intervention cases are highly fact specific and tend to resist comparison to prior cases" and "the threshold issue in this case is a very narrow one involving a peculiar set of facts applicable only to this

employment relationship." *ABC*, 64 F.3d at 321.  This recognition by the Court is especially

important in the context of this case, as the *Robinson* Plaintiffs have relied on a case in which the

purported employees actually sought to preserve their status as independent contractors.  As

such, the *Robinson* Plaintiffs reliance on *ABC* is also quite suspect.

Moreover, the Secretary of Labor in *ABC*, prior to the motion to intervene, had moved for

a second default judgment, which would have definitively determined the exotic dancer's

classification as employees, and not independent contractors, a classification they desired to

maintain.  *Id.* at 321-323.

In the present action, the *Robinson* Plaintiffs' assert that "any resolution of *Cando* will

impact the drivers' rights."  (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in

Support P. 12).  This is simply inaccurate.  Assuming that the Court grants preliminary approval

of the Settlement, the *Robinson* Plaintiffs will have the opportunity to opt-out and pursue their

own causes of action, and will not have released any of their purported claims.  While their

desired remedy to reclassify drivers from independent contractors to employees may not exist, if

it did, it would not be at risk by virtue of resolving *Cando*.

   **ii)**  <u>***Robinson* Plaintiffs' Have Failed To Show That Their Interest In</u>
       <u>Proceeding As A Collective Action Is Not Protected**</u>

The *Robinson* Plaintiffs assert that they have an interest in proceeding as a collective

action.  (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in Support P. 13, 19).  Yet

they assert no facts to suggest that this interest is not fully protected by the *Cando* Plaintiffs.

Instead, they assert that they are "seeking to exercise their rights under the National Labor

Relations Act[5] and make common cause with their fellow drivers to seek back wages and

---

[5] A statute that is not referenced anywhere in their Complaint.

equitable relief from [Defendants]." *Id.* at 13.  To suggest, however, that the *Cando* Plaintiffs do not share in this interest belies logic and common sense.

From the very onset, both the *Robinson* Plaintiffs and the *Cando* Plaintiffs have sought to represent all delivery drivers on a collective basis.  As such, they have an identical interest in resolving their identical claims.  The *Robinson*  Plaintiffs' assertion that this interest cannot be protected by the *Cando* Plaintiffs should be seen for what it really is: the desperate act of a disgruntled attorney who wished he kept his seat at the bargaining table.  Moreover, the cases cited by the *Robinson* Plaintiffs in this respect all dealt with employees who were either required by contract to pursue any legal claims against their employer through arbitration *and only as individuals in separate proceedings*, or were terminated for threatening to bring actions against their employer on a collective bases.  *Id.* at 13 (cases cited). In this case, the *Robinson* Plaintiffs may opt out of the Settlement and pursue their claims on a collective action basis if they so choose (assuming they meet the legal requirements to do so).

Regardless of the *Robinson* Plaintiffs purported interest to pursue their claims on a collective basis, Defendants are nevertheless confident that *all* class members will find that the Settlement is both fair and beneficial, with the possible exception of those class members who are represented by attorneys who stand to gain by obstructing the Settlement.  *See, e.g., Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.  On their theory no class action would ever be settled, so long as there was at least a single lawyer around who would like to replace counsel for the class and start the case anew.").

      iii)    **The *Robinson* Plaintiffs' Interest In Proceeding As A Class Action Is Fully Protected In *Cando***

The *Robinson* Plaintiffs assert that, "[w]ithout standing to oppose the *Cando* motion for conditional certification of the class, no one will be protecting their interest to have their chosen Class Representative and Class Counsel." (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in Support p. 14). However, nothing can be farther from the truth. If their theory was correct, any attorney who files a class action can impede on a fair and reasonable settlement of a competing class action without any barriers to intervention. The procedural mechanisms provided by the class action statute show that the *Robinson* Plaintiffs are incorrect.

As stressed throughout Defendants' opposition – and glaringly ignored by the *Robinson* Plaintiffs – there are two mechanisms built into class action procedure to protect putative class members' interests potentially affected by a class-wide settlement. First, they can object to the settlement. *See* FED. R. CIV. P. 23(e) (providing the opportunity to file objections and requiring the Court to find that the settlement is "fair, reasonable and adequate."). Second, they can opt-out of the settlement and pursue their claims in any manner they wish. *See* FED. R. CIV. P. 23(c)(2)(B)(v), (e) (requiring that any class certified under Rule 23(b)(3) provide the opportunity for class members to request exclusion). Federal Courts have repeatedly held that these procedural mechanisms adequately protect purported class members' interests regarding their rights as affected by a potential class-wide settlement. *See Cohorst v. BRE Properties, Inc.*, No. 3:10-cv-2666, 2011 WL 3489781, at *1, *8 (S.D. Cal. Jul. 19, 2011) (holding that where there is a right to object to or opt-out of a settlement, intervention is simply unnecessary to protect a putative class member's interests); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 148941, at *1, *6 (S.D. Ohio Jan. 14, 2008) ("Here, the primary purposes in moving to intervene, e.g., to investigate and evaluate the fairness of the proposed settlement, is a function that Movants can

fully perform as objectors upon the fairness hearing"); *Lane v. Facebook, Inc.*, No. C 08-3845, 2009 WL 3458198, at *1 (N.D. Cal. Oct. 23, 2009) (finding that the proposed interveners "failed to establish that their rights to raise these issues [we]re not adequately protected through the process of submitting objections that will follow upon preliminary approval of the settlement agreement.").

 The *Robinson* Plaintiffs' reliance on yet another out-of-circuit case, *Nicholas v. Conseco Life Ins. Co.*, No. 12 C 0845, 2012 WL 1831509 (N.D. Ill. May 17, 2012), is distinguishable.  In that case, if the purported-intervenor had opted out of the proposed settlement, she would have been prevented from pursuing her own case as a nationwide class.  *Id.* at *3.  In the present action, the *Robinson* Plaintiffs will not suffer the same fate if they opt-out.  The will be permitted to pursue their claims as they see fit.  Moreover, as discussed above, the *Robinson* Plaintiffs have put forward no facts to overcome the strong presumption that class members' interests are adequately presented by settling class members and their counsel.  (*See supra*, Argument § II (D), P. 9).

 If this Court follows the theory espoused by the *Robinson* Plaintiffs, whenever there are competing class actions, each and every putative class member would be able to intervene in the competing actions willy-nilly so long as their interests clashed with at least one other class member.  Such a theory stands in direct contradiction with the efficiencies on which the class action procedure sought to embody, whereby a class representative stands in the shoes of the other putative class members.  *See* Fed. R. Civ. P. 23(a); *Devlin v. Scardelletti*, 536 U.S. 1, 6 (2005) ("Nonnamed class members are, for instance, parties . . . Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation – to simplify litigation involving a large number of class members with similar claims

– would be defeated.").  And, yet again, the *Robinson* Plaintiffs have wholly failed to overcome the presumption that class members' interests are adequately represented by settling class members and their counsel.

### iv) The *Robinson* Plaintiffs' Claims Falling Outside The Statute Of Limitations Of *Cando* Are Protected

The *Robinson* Plaintiffs assert the *Cando* Plaintiffs cannot adequately protect their interests because "any resolution and release in *Cando* will *likely* result in some drivers releasing up to five months' worth of claims without any compensation."  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 16) (emphasis added).  This assertion is based on nothing more than pure speculation, as any class member who elects to opt-out of the Settlement will not be bound by it.  *See Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 992 F.2d 92, 97 (2d Cir. 1990) (holding that, to warrant intervention, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule") (citations omitted). Moreover, the terms of the Settlement clearly indicate that only those claims accruing on or after March 8, 2010 – i.e. 6-years before the *Cando* Plaintiffs filed their initial Complaint – will be released.  The *Robinson* Plaintiffs' argument is therefore baseless.

The *Robinson* Plaintiffs have presupposed that every purported class member would rather wait years until their state court litigation has completed before those class members have been presented with the potential benefits of the Settlement.  Unless the *Robinson* Plaintiffs can definitively speak for the entire class of 1,709 delivery drivers – which, clearly, they cannot – their assertion in the above respect is without merit.  *See, e.g., Thompson*, 216 F.R.D. at 69 (class members waiting to receive the benefits from the proposed settlement may suffer prejudicial delay were intervention permitted).  Moreover, the *Robinson* Plaintiffs' NYLL claims are already

tolled by virtue of their filing of their class action complaint in state court.  To therefore suggest

that their pre-*Cando* claims are unprotected in this action is pure fiction.

**v)      The *Robinson* Plaintiffs' Interests Will Not Be Affected If An
Injunction Is Eventually Issued**

Even though an injunction has not yet been issued, the *Robinson* Plaintiffs assert that the

"*Cando* Plaintiffs will benefit from the injunction while [the *Robinson*] Plaintiffs will not."  This

assertion is facially nonsensical.

Contrary to the *Robinson* Plaintiffs' glib assertion, the purpose of the injunction is not to

prevent class members from "pursuing their claims in a timely [manner]."  (*See* Proposed

Intervenor-Plaintiffs Memorandum of Law in Support P. 16).  Quite the contrary.  If the

injunction is granted, all the Parties, even the *Robinson* Plaintiffs, will benefit.

For example, the rights and interests of purported class members, as well as the

jurisdiction of the Court, will be severely impaired if, during the notice period, parallel actions

alleging virtually identical claims to those if the state court grants the pending motions for class

certification and for conditional certification of an FLSA collective in that case (both of which

have already been filed).  And if this Court grants preliminary approval of the Settlement, then

one notice will go out notifying class members that they are part of a settlement, and one or two

other notices will go out notifying them that their claims, instead of being settled, are actually

being fully litigated.  This will cause confusion to all of the class members, including the

*Robinson* Plaintiffs – they likely will not understand whether their claims are being settled or,

instead, being litigated towards trial – and will also result in prejudice to Defendants.  The

likelihood of this type of havoc being wreaked is not insubstantial given Justice Sher's

November 29, 2016 decision to deny Defendants' motion to stay that case, meaning that the

motions for class certification and for conditional certification of an FLSA collective will

- 34 -

proceed, and notices will be disseminated, if those motions are granted, unless an injunction is issued by this Court.  The injunction will allow all class members to evaluate for themselves whether they want to participate in the Settlement, or not.

The *Robinson* Plaintiffs will not be prejudiced if an injunction is granted.  They, as well as the *Cando* Plaintiffs and the remaining class members, will have the right to opt out of, or not opt into, the Settlement, in which case they can proceed on their behalf in state court.  They all can also object to the Settlement.  Needless to say, however, the *Robinson* Plaintiffs will have the opportunity to vindicate their rights through the settlement process if they so choose, or to opt out of the settlement process and proceed with their claims in a separate forum, again if they so choose.  Their rights are therefore fully protected by the *Cando* Plaintiffs, and their arguments to the contrary should be disregarded.

### E.       Permissive Intervention Is Not Warranted

Aside from asserting, in a wholly conclusory and meritless manner, that they will suffer prejudice if their motion to intervene is denied – which, as discussed above, they clearly will not (*see supra*, Argument § II (D)) – the *Robinson* Plaintiffs also assert that permissive intervention is warranted because they will "contribute to the full development of the record and equitable adjudication of the legal questions presented."  (*See* Proposed Intervenor-Plaintiffs' Memorandum of Law in Support P. 23).

To support this contention, the *Robinson* Plaintiffs state, in relevant part, that they have compiled 14 affidavits, reviewed their own records, and procured documents from the U.S. Department of Labor.  *Id.*  These contentions are wholly without merit.  Indeed, all the *Robinson* Plaintiffs really claim is that they can contribute publically available documents, as well as documents the *Cando* Plaintiffs already have in their possession.  This is, again, nothing more than a transparent, Hail Mary attempt to hold the *Cando* parties hostage.  Moreover, the fact that

counsel for the *Robinson* Plaintiffs originally filed their action in federal court without knowing that their clients signed agreements with forum selection clauses described above, calls into question just how much the *Robinson* Plaintiffs can actually contribute to *Cando*.

## II.   THE SETTLEMENT DID NOT RESULT FROM A "REVERSE AUCTION"

The *Robinson* Plaintiffs attack the Settlement as a so-called "reverse auction." (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 21). This is, first and foremost, untrue. It also underscores the fact that this motion is being made out of spite, greed, and jealousy on the part of the *Robinson* Plaintiffs' counsel.

To support this attack, the *Robinson* Plaintiffs have made the following claims to suggest that the Settlement was reached as a result of "procedural unfairness":

- "The settlement resulted from [Defendants'] choice to abandon its motion to dismiss *Cando* while allowing [the *Robinson*] Plaintiffs to continue litigating in Nassau County." *Id.*

- "[W]hen [Defendants] advised Judge Kuntz that another action had been filed and withdrawn pursuant to the forum selection clause, they failed to provide the Court with the case information for *Alcantara* and *Robinson*." *Id.* at 22.

- "*Cando* Plaintiffs also made no mention of *Robinson* in their letter to Judge Kuntz advising him of the mediation." *Id.*

- "[Defendants] did not advise Justice Sher of the settlement until October 13, 2016, when they requested an indefinite adjournment of Robinson." *Id.*

These claims are blatant fallacies.

First, Defendants never abandoned their motion to dismiss. The *factual* record clearly shows that on August 11, 2016, just ten days after the failed mediation between the Parties, Defendants renewed their request for a pre-motion conference regarding their anticipated motion to dismiss *Cando*. Moreover, by their own admission, the *Robinson* Plaintiffs "voluntarily dismissed" the *Alcantara* action pursuant to the forum selection clause in the delivery drivers'

Operator Agreements.  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P.

3).  To suggest that Defendants "abandoned their motion to dismiss" is a blatant falsehood, and

the *Robinson* Plaintiffs' characterization as such is without merit.[6]

By the *Robinson* Plaintiffs' severely flawed logic, Defendants should have incurred

significant litigation costs by continuing their motion to dismiss *Cando*, while ignoring a fair and

reasonable settlement offer from the *Cando* Plaintiffs after lengthy and contentious negotiations.

This would fly directly in the face of the robust judicial and public policy in the Second Circuit

favoring settlements, especially in the class action context.  *See McReynolds v. Richards-*

*Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (championing the "strong judicial policy in favor of

settlements, particularly in the class action context") (quotations omitted).

The remaining grounds constituting "procedural unfairness" are similarly flawed, and are

in fact nonsensical.  First, the letter from Defendants to Judge Kuntz dated June 3, 2016

unequivocally informed the Court that Defendant Big City Yonkers, Inc. was involved in a

similar litigation pending in Nassau County Supreme Court and the fact that the *Robinson*

Plaintiffs voluntarily withdrew their complaint and re-filed their action.  At that time, the Court

could have done a quick search and found the case in the matter of seconds.   Defendants were

more than forthcoming in informing the Court regarding the concurrent litigation, and nothing

prevented the *Robinson* Plaintiffs from notifying the Court themselves, as counsel for the

*Robinson* Plaintiffs was surely aware of *Cando* for many months prior.  But to suggest, under

these circumstances, that Defendants were somehow hiding the existence of *Alcantara* and the

*Robinson* Plaintiffs' state court action from Judge Kuntz is simply a boldfaced lie.

---

[6] It should be noted that Defendants intend to appeal Justice Sher's decision denying Defendants' motion to stay that proceeding, as the *Robinson* Plaintiffs made numerous misrepresentations in their brief in opposition to that motion which unfairly swayed Justice Sher.

Finally, while the *Robinson* Plaintiffs are correct that Defendants did not advise Justice Sher of the settlement until October 13, 2016 when they requested an adjournment, ***this occurred a mere six days after the settlement conference where the Cando parties came to an agreement in principal after "lengthy settlement negotiations."*** As the Court can surely appreciate, Defendants did not want to inform Justice Sher regarding the settlement in principle until the *Cando* parties had a finalized and signed term sheet in place, which did not occur until several days after the settlement conference.

The *Robinson* Plaintiffs were well aware that the *Cando* parties were continuing to negotiate a potential settlement. The *Robinson* Plaintiffs filed their request for a pre-motion conference regarding the instant motion just eight days before the settlement conference. Moreover, by their own admission, the *Robinson* Plaintiffs "reached an impasse with the other parties" in the middle of settlement negotiations, opting instead to continue litigating in state court. (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 4). The *Robinson* Plaintiffs' suggestion that the Settlement was the result of "procedural unfairness" is belied by the factual record, is wholly meritless, and as such, further dooms their motion to intervene. *See* AMERICAN LAW INSTITUTE, *Principles of the Law of Aggregate Litigation*, § 3.05, cmt. A(2010) ("The timing of a settlement may or may not be probative on the issue of fairness. For instance, an early settlement may simply reflect a realistic appraisal of a case rather than a settlement negotiated without an adequate knowledge of the facts or merits of the case. . . . By the same token, the number of objectors may or may not be probative of the settlement's fairness. *Class members are sometimes urged to object by lawyers with similar lawsuits who are unhappy that they did not achieve the settlement themselves, thus missing out on attorneys' fees*, or by lawyers

who may seek private gain from interposing strategically motivated objections.  In such

instances, lawyer-driven objections have little merit") (emphasis added).[7]

### III.    THE *ROBINSON* PLAINTIFFS ARE NOT ENTITLED TO INTERVENTION BY VIRTUE OF THE FIRST-FILED RULE

The first-filed rule is a tool for determining proper venue that sometimes permits an

action involving the same parties and issues to be given priority over a later action pending in a

different district.  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d

Cir. 2010).  "The first-filed rule, however, is not ironclad: The presumption in favor of the first-

filed rule 'may be rebutted by proof of the desirability of proceeding in the forum of the second-

filed action.'"  *Bukhari v. Deloitte & Touche LLP*, No. 12 CIV. 4290(PAE), 2012 WL 5904815,

at *3 (S.D.N.Y. Nov. 26, 2012) (citing *Emp'rs Ins. of Wausau v. Fox Entm't Grp. Inc.*, 522 F.3d

271, 275 (2d Cir. 2008)).  The rule should not be applied to *Cando* because (1) the rule does not

apply to state court actions, (2) the *Cando* settlement constitutes "special circumstances" that

override the rule, and (3) the *Cando* litigation is significantly closer to resolution than the

*Robinson* litigation.

### A.    The First-Filed Rule Does Not Apply to State Court Actions

It is settled Second Circuit law that "the first-to-file doctrine applies where there is

concurrent federal litigation, not where a federal court contends with concurrent state litigation."

*Port Auth. of N.Y. and N.J. v. Kraft Power Corp.*, No. 11 Civ. 5624(HB), 2012 WL 832562, at *1

(S.D.N.Y. Mar. 13, 2012) (stating, "[t]he parties have made a not uncommon mistake in

misapplying the first-to-file doctrine to concurrent state/federal litigation. . . . This is not, I might

---

[7] In the case cited by the *Robinson* Plaintiffs, *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 280-82 (7th Cir. 2002) there was a serious ground for concern that a reverse auction had occurred.  In *Reynolds*, counsel met and outlined the essential terms of what eventually became the proposed class settlement before there was a pending suit and even before plaintiffs' counsel had a client.  *Id.* at 280-81.  Nothing remotely comparable occurred here.  As the record clearly indicates, as early as May 2016 Defendants had been in extensive settlement negotiations with the *Robinson* Plaintiffs as well as the *Cando* Plaintiffs.  The *Robinson* Plaintiffs would not agree to a reasonable settlement; the *Cando* Plaintiffs eventually did.

add, a new concept"); *see also Lafarge*, 599 F.3d 102; *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974) ("Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action."); *Millennium Drilling Co. v. Prochaska*, No. 14-cv-1985, 2014 WL 6491531, at *3 (S.D.N.Y. Nov. 18, 2014) ("The first-to-file doctrine applies where there is concurrent federal litigation, not where a federal court contends with concurrent state litigation. … Thus, the 'first-filed' authorities cited by the parties are inapposite as they involve competing federal cases.") (citations omitted); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (refusing to transfer an action from the Southern District of New York to New York state court because the first-filed rule only applies to concurrent federal litigation); *Tate-Small v. Saks Inc.*, No. 12-cv-1008(HB), 2012 WL 1957709, at *2 n.3 (S.D.N.Y. May 31, 2012) ("The first-filed rule "applies where there is concurrent federal litigation, not where a federal court contends with concurrent state litigation."); *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001) ("The first-to-file doctrine applies to concurrent federal litigation—not concurrent state/federal litigation"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) ("It is a 'well-settled principle' in this circuit that where proceedings involving the same parties and issues are pending simultaneously in different federal courts the first-filed of the two takes priority absent 'special circumstances' or a balance of convenience in favor of the second.") (citation omitted).

The *Robinson* Plaintiffs cite a lone district court opinion, *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 297 (E.D.N.Y. 2015) to support their contention that the first-filed rule "applies to situations in which one case is pending in federal

court and the other is in state court." (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 25). This is too broad a reading of *HSBC*. In that case, movants in a federal action sought to enjoin the approval process of a proposed settlement in the state court action. *HSBC Bank*, 99 F. Supp. 3d at 301. Here, by contrast, state court plaintiffs seek to enjoin the approval of a class action settlement in a federal court action. Yet even if the *Robinson* Plaintiffs read *HSBC* correctly, that case is an extreme outlier. Indeed, the court in *HSBC* simply proclaimed – without citing to any legal authority or addressing any of the cases mentioned above – that the first-filed rule can apply where one case is in state court and the other is in federal court. *Id.* at 309. Tellingly, no case has cited *HSBC* for that unsupported proposition.

Moreover, the *Robinson* plaintiffs attempt to downplay the significance of the Settlement pending in *Cando* by reaching to cases from Illinois and Minnesota – in fact, their use of out-of-circuit case law throughout their motion is a blatant "red herring" – but those cases differ significantly from the present situation. In *Martin II*, the proposed settlement in the second-filed case had effectively died. *Martin v. Cargill*, No. 13-cv-2563 (RHK/JJG), 2014 WL 12609656, at *2 (D. Minn. May 2, 2014) (noting that the court had rejected the proposed settlement, that the case had "lived in stasis since that time," and that the parties had not attempted to fix problems with the settlement or file for preliminary approval again). By contrast, this Court has not rejected the Settlement, and the *Cando* parties stand ready to quickly remedy any deficiencies the court may find with the settlement. In *Nicholas*, the court made much of the fact that the first-filed case had been proceeding "for over four years" before the second-filed case arrived. *Nicholas v. Conseco Life Ins. Co.*, No. 12 C 0845, 2012 WL 1831509, at *1 (N.D. Ill. May 17, 2012). While that lapse in time led the court to believe the first-filed judge was better qualified to efficiently handle the second-filed case, the *Robinson* Plaintiffs filed their state court action a

mere 2-months before the *Cando* Plaintiffs filed the instant action.  As such *Nicholas* fails to provide any persuasive authority warranting the Court's attention.

Finally, it bears mentioning that every case cited by the *Robinson* Plaintiffs dealt with concurrent *federal* cases, not parallel federal and state cases.  Indeed, the *Robinson* Plaintiffs need only look to the cases they cite to see the inapplicability of those cases to the present situation.  As the court stated in *Martin II*, the first-filed rule "recognizes the comity between coequal federal courts."  *Martin*, 2014 WL 12609656, slip op. at *1.

**B.      Assuming The First-Filed Rule Could Be Applied In This Case, Departure From The First-Filed Rule Is Warranted**

Even if the first-filed rule could apply in the present case (which is certainly cannot), this Court should nevertheless refrain from applying the rule because (a) the "special circumstances" exception applies, and (b) the present, second-filed action is closer to resolution.

**i)      The Settlement of the *Cando* Action Constitutes "Special Circumstances" Overriding The First-Filed Rule**

The Second Circuit's recognition of the first-filed rule includes important exceptions. The rule should not be applied (1) where the "balance of convenience" favors the second-filed action, or (2) where "special circumstances" warrant giving priority to the second suit.  *Employers Ins. of Wausau*, 522 F.3d at 275.  The determination as to whether there are circumstances warranting a departure from the first-filed rule rests in the sound discretion of the district court.  *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).  As courts in the Second Circuit have noted, "the Supreme Court has endorsed this case-specific approach, and has held that '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems.'"  *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) (citing *Kerotest Mfg. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183 (1951)).

Second Circuit courts have consistently recognized settlement efforts as constituting "special circumstances" meriting departure from the first-filed rule. *Robeson v. Howard Univ.*, No. 00-CIV-7389(GBD), 2002 WL 122913, at *3 (S.D.N.Y. Jan. 30, 2002) (holding that parties' mere intent to continue settlement discussions can override the first-filed rule); *see also In re Arbitration between Griffin Indus., Inc. & Petrojam, Ltd.*, 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999) (noting that defendant's good-faith attempts at settlement are "special circumstances"); *Riviera Trading Corp.*, 944 F. Supp. at 1158–59 (noting good faith settlement attempts in rejecting application of first-filed rule); *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (finding it improper to apply first-file rule where settlement discussions had reached "terminal impasse"); *Employers Ins. of Wausau v. Prudential Ins. Co. of Am.*, 763 F. Supp. 46, 49 (S.D.N.Y. 1991) (noting that settlement negotiations can negate the first-filed rule, but did not apply the exception due to lack of evidence); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 751 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) (holding that defendant's "good faith attempts at settlement" supported departure from the first-filed rule). Here, the *Cando* parties have not only initiated settlement discussions, but have reached an agreement that will resolve their dispute.

Relatedly, in *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350 (S.D.N.Y. 1992), the court chose not to apply the first-filed rule where doing so would harm the "policy of promoting the amicable settlement of disputes." *Id.* at 1354. There, as in all of the cases cited above, the court precluded application of the first-filed rule even where settlement had only been proposed or attempted. *Id.* In the present case, settlement has not only been proposed, but has already been agreed to, and the motion for preliminary approval of the settlement has already been filed. As in the aforementioned cases, applying the first-filed rule

"would undermine the policy of promoting good faith efforts to achieve a settlement." *Id.*
Where the parties are well beyond the mere initiation of settlement talks, and are not stuck at
impasse, scuttling settlement by applying the first-filed rule would do even more harm to the
interests of amicable resolution of disputes.[8]  Such is the course of action undertaken by the
*Robinson* Plaintiffs.

ii)        **Because the Cando Litigation Has Progressed Further Than The Robinson Litigation, The First-Filed Rule Should Not Apply**

As mentioned above, a court's weighing of the first-filed rule is highly discretionary and
includes a holistic assessment of the circumstances surrounding the concurrent federal actions.
One such circumstance given particular weight in the Second Circuit is the relative development
of the two actions. "When the second filed action has developed substantially further than the
initial suit, the "first to file" rule is generally not applied." *AEI Life, LLC v. Lincoln Benefit Life
Co.*, No. 14-CV-6449, 2015 WL 9286283, at *3 (E.D.N.Y. Dec. 21, 2015); *see also Chariot v.
Ecolab, Inc.*, 97 F. Supp. 3d 40, 63 (E.D.N.Y. 2015) (transfer of case inappropriate where case
pending in Eastern District of New York was procedurally more advanced than case pending in
other court); *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (noting
"well-established exception[ ]" to rule "when the first filed action has not reached a more
advanced stage than its counterpart"); *Tarazi v. Truehope, Inc.*, 958 F. Supp. 2d 428, 436
(S.D.N.Y. 2013) (consideration of which case was "first" is diminished "where the first-filed
action has not reached a more advanced stage than the later action") (citations omitted).  The fact
that a settlement has been reached in *Cando* again weighs against applying the rule. *Cando* is on

---

[8] As recognized almost forty years ago, due to "federal court calendars [in the Second Circuit] becom[ing] increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court." *Columbia Pictures*, 435 F. Supp. At 747.  The current state of federal court dockets demonstrates the continuing need to facilitate attempts to amicably settle litigation. Applying the first-filed rule in this case to preclude a pending settlement does nothing to accomplish this goal.

the precipice of *resolution and dismissal*; the *Robinson* Plaintiffs' state court action is years away from that.

### C.   The Cases Cited By The *Robinson* Plaintiffs Are Inapposite And Should Be Disregarded

As briefly mentioned above, the *Robinson* plaintiffs rely on *HSB*C for its application of the first-filed rule to competing cases in state and federal court.  (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 25).  In addition to being a stark departure from Second Circuit precedent—taken without citation to any legal authority and in turn not cited by any subsequent decision— the circumstances involved in *HSBC* and the present situation are distinguishable.

In *HSBC*, a group of plaintiffs sought to enjoin settlement in the first-filed action in favor of the second-filed consolidated actions.  *HSBC Bank*, 99 F. Supp. 3d at 301.  The court noted that the first-filed rule could apply "in deference" to the first-filed action, where settlement was imminent.  *Id.* at 309.  By contrast, in the present case, application of the first-filed rule would produce the opposite result: imminent resolution of claims through settlement would be derailed. While *Cando* is on the verge of final disposition through settlement, the second-filed consolidated federal cases in *HSBC* were not.  In fact, the court in *HSBC* highlighted the remoteness of settlement in the second-filed cases to demonstrate why an injunction of the soon-to-settle first-filed action was improper.  *Id.* at 305-306.

The *Robinson* Plaintiffs also cite *Bukhari*, 2012 WL 5904815, to support their assertion that the first-filed rule applies to "class and collective actions involving FLSA and NYLL claims." (*See* Proposed Intervenor-Plaintiffs Memorandum of Law in Support P. 25).  However, this issue is not settled within the Second Circuit.  *See e.g., Hautur v. Kmart Corp.*, No. 15-CV-267A, 2015 WL 5567912, at *7 (W.D.N.Y. Sept. 22, 2015) ("The Court thus finds that the first-

filed rule does not apply to FLSA collective actions, subject to any future appellate guidance on the issue.").  Yet even if *Bukhari* accurately states the law, it presents a fundamental difference from the present situation.  Both actions at issue in *Bukhari* were in federal court.  Indeed, every case cited within *Bukhari* in support of its application of the first-filed rule to FLSA and NYLL class and collective actions dealt exclusively with actions in federal courts.  *See Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM), 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992); *TateSmall v. Saks Inc.*, No. 12 Civ. 1008(HB), 2012 WL 1957709, at *4 (S.D.N.Y. May 31, 2012); *Wyler–Wittenberg v. MetLife Home Loans, Inc.*, No. 12–cv–00366 (ADS), 2012 WL 5077482, at *6–7 (E.D.N.Y. Oct. 17, 2012).

   *Cando* and *Robinson* are in federal and state court, respectively.  As has been noted above, with the exception of a lone district court proclamation unsupported by legal authority, the Second Circuit limits application of the first-filed rule to competing federal actions.  (*See supra*, Argument § II(A)).

## IV.   THE *ROBINSON*  PLAINTIFFS ARE NOT ENTITLED TO CONDUCT DISCOVERY

   In addition to seeking to intervene into this action, the *Robinson* Plaintiffs also seek permission to conduct discovery regarding various motions they which to file or oppose as if they actually had standing to do so.  Yet they cite no authority, legal or otherwise, to support their request for such discovery.

   First, as non-parties to this action, the *Robinson* Plaintiffs have no basis for such discovery at this time.  Courts are extremely reluctant to order discovery at this stage because of the very real "potential for undermining the settlement process."  *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (quoting *Vollmer v. Publishers Clearing House*,

248 F.3d 698, 708 (7th Cir. 2001)); *see also Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (holding that objectors were not entitled to discovery regarding a settlement agreement because nothing in the settlement terms or timing of the settlement suggested collusion).

As discussed above, the *Robinson* Plaintiffs have made zero showing that the Settlement is the product of collusion.  Their unsubstantiated accusations of "procedural unfairness" are nothing more than the petty manifestations of their disagreements, both strategic and monetarily, with the *Cando* Plaintiffs.  Moreover, although Defendants oppose their request for discovery at this stage, the *Robinson* Plaintiffs' request has been rendered moot by virtue of the fact that the *Cando* Plaintiffs filed their motion for preliminary approval of the Settlement, which is publically available to the *Robinson* Plaintiffs.  Defendants are confident that, upon the *Robinson* Plaintiffs' review of said motion and the terms of the Settlement, if they are truly acting in the interests of the class they seek to represent, they will find it more than fair and reasonable.

Should the *Robinson* Plaintiffs still have concern about the Settlement, they will still have an opportunity to submit their objections in writing and the Court, as well as the *Cando* Parties, will have a chance to consider them.  However, the *Robinson* Plaintiffs have wholly failed to establish any basis for granting their request for discovery at this time, and, therefore, said request should be denied.

## **CONCLUSION**

For all of the above-stated reasons, the Court should deny the *Robinson* Plaintiffs' motion to intervene in its entirety, and should grant any other such relief the Court deems just and proper.

Date: December 15, 2016                         REED SMITH LLP
      New York, New York

By:     */David L. Weissman/*
       David L. Weissman
       Mark S. Goldstein
       Jake A. Ebers
       599 Lexington Avenue
       New York, NY 10022
       (212) 521-5400
       dweissman@reedsmith.com
       mgoldstein@reedsmith.com
       jebers@reedsmith.com
       *Attorneys for Defendants*