**OUTTEN & GOLDEN LLP**        **SHULMAN KESSLER LLP**
Justin M. Swartz               Troy L. Kessler
Juno Turner                  Garrett Kaske
685 Third Avenue, 25th Floor      534 Broadhollow Road, Suite 275
New York, New York 10017       Melville, New York 11747
Telephone: (212) 245-1000       Telephone: (631) 499-9100
Facsimile: (646) 509-2060

## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------ X

MARIO CANDO,RAMON A. PLACENCIA, FREDDY RODRIGUEZ, :
YLDEFONSO HERNANDEZ, IRIS RIVERA, ALBENIO CASTILLO, :
ARNALDO RAMOS, FERNANDO RAMOS, LUIS ALMANZAR, :
ANGEL ROBLES, VICENTE MONTESDEOCAQUEZADA, FELIPE :   Case No.:
AGUIRRE, EDGAR S. MENDEZ, WILLIAM GONZALEZ, MARIA :   16 Civ. 1154 (RML)
URIBE, ROSA GUZMAN, MILTON MONTESDEOCA, ANDREW :
RAMIREZ, JAIME MALDONADO, EDDIE RODRIGUEZ, REGINA :
STUCKEY, CARLOS PEREZ, RICARDO UGAZ, RAQUEL ROMAN,:
RUDY RODRIGUEZ, JOSUE GUZMAN, JOSE R. RODRIGUEZ, :
RAQUEL R. MONTESDEOCA, OSCAR FERREIRA, NORMA :
PEREZ, CRISTIAN BERLINGERI, GINO SANMARTIN, ARMANDO:
RODRIGUEZ, JORGE DAVILA, ANDRES SALAS, JAORIBE :
OLADEJI, WILLIAM BARROUS, ELIAS RAMIREZ, GLORIA :
ROBLES, MARTA VASQUEZ, NELSON SANTOS, HECTOR :
NUNEZ, MODESTO JUSTINIANO, JOSE CINTRON, BRUNILDA :
MARTINEZ, JULIUS MARSHALL, ISMAEL VALDERRAMA, :
CHARLES CARTER, JORGE MONTERO, PEDRO CUEVAS, and :
SILVIA UZHCA, on behalf of themselves, FLSA Collective Plaintiffs, :
and the Class,                               :
                                     :
               Plaintiffs,            :
         - against -                :
                                   :

BIG CITY YONKERS, INC. d/b/a BIG CITY AUTOMOTIVE :
WAREHOUSES, AUTOSTAR AUTOMOTIVE WAREHOUSE, INC. :
d/b/a DANKEN AUTO PARTS WILLIAMSBURG, QPBC INC. d/b/a :
QUEENS PLAZA, MICHIGAN LOGISTICS INC., NORTHEAST :
LOGISTICS, INC., and JOHN DOE CORPORATIONS 1-8, :
                     Big City.           :

------------------------------------------------------------------------------ X

## PROPOSED INTERVENORS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION <u>SETTLEMENT AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ...................................................... 2

I.   The Robinson Plaintiffs' First-Filed Complaint and Big City's Agreement to Mediate With the Robinson Plaintiffs ................................................................... 2

II.  Big City's Selective Invocation of Its Forum Selection Clause Sets the Stage for a Reverse Auction ................................................................................ 3

III. The Parties Try and Fail to Reach a Global Settlement of Both Cases. ............. 4

IV.  The *Cando* Parties' Concerted Effort to Keep the *Robinson* Plaintiffs in the Background. 5

ARGUMENT ...................................................................................................... 6

I.   The Court Should Deny Preliminary Approval Because the Settlement Is Procedurally and Substantively Unfair ............................................................... 6

     A   The Proposed Settlement Is Procedurally Deficient Because It Results from a Reverse Auction ........................................................................ 6

         1.   Big City Manipulated the Settlement Negotiations to Its Advantage. ........ 9

         2.   Big City Took Advantage of Cando Plaintiffs' Weaker Negotiating Position to Secure a Favorable Settlement ................................................. 9

     B.  The Settlement Suffers from Significant Substantive Deficiencies ..................... 11

         1.   The *Cando* Parties Fail to Demonstrate that the Settlement Amount Falls Within the Range of Possible Approval ................................................. 12

         2.   The Proposed Notice Does Not Provide Class Members Adequate Information to Make Informed Decisions Regarding the Settlement and Their Rights. ................................................................................... 16

         3.   The Proposed Release Is Much Too Broad ............................................. 17

     C.  The Court Should Not Enjoin *Robinson*. ............................................... 18

         1.   The Anti-Injunction Act Precludes the Injunction the *Cando* Parties Seek. ......................................................................................... 18

              a.   The "In Aid of Jurisdiction Exception" Does Not Apply. ............ 19

ii

           b.      The Exception Permitting an Injunction to Protect or Effectuate the Court's Judgment Does Not Apply. ...................... 21

     2.      Big City Has Already Tried, and Lost, this Argument in State Court. ...... 22

  D.      The Court Should Evaluate the Fairness of the Settlement Now, and Not Wait Until Final Approval. ........................................... 22

II.    The Court Should Not Certify the Proposed Class. ......................................... 24

  A.      Proposed Class Counsel is Inadequate. ................................................ 24

     1.      *Cando* Plaintiffs' Counsel's Conduct in the Settlement Negotiations Demonstrates Its Inability to Fairly Represent the Class. ......................... 25

     2.      Courts Routinely Criticize *Cando* Plaintiffs' Counsel's Conduct. ........... 25

     3.      *Cando* Plaintiffs' Counsel's Selection of Its Own Claims Administration Firm to Administer the Settlement Presents an Irreconcilable Conflict. .. 27

  B.      *Robinson* Is a Superior Vehicle by Which to Prosecute These Claims. ............... 27

CONCLUSION ...................................................................................................... 29

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

*In re 2014 Avon Prods. Inc. ERISA Litig.*,
  ECF No. 71 (S.D.N.Y. Oct. 13, 2016) .................................................................................14

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) ..........................................................................................7

*Agudelo v. E&D LLC*,
  No. 12 Civ. 960, 2013 WL 1401887 (S.D.N.Y. Apr. 4, 2013) ..............................................26

*Alcantara v. Big City Yonkers, Inc.*,
  No. 15 Civ. 7288 (S.D.N.Y.) ..................................................................................................2

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) ..............................................................................................................10

*In re BankAmerica Corp. Sec. Litig.*,
  775 F.3d 1060 (8th Cir. 2015) ..............................................................................................13

*Bijoux v. Amerigroup N.Y., LLC*,
  No. 14 Civ. 3891, 2016 WL 2839797 (E.D.N.Y. May 12, 2016) .........................................28

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................................8, 11

*Chang v. Phoenix Satellite TV (U.S.), Inc.*,
  No. 14 Civ. 2686, 2014 WL 5017838 (S.D.N.Y. Sept. 22, 2014) ........................................19

*In re Citigroup Inc. Sec. Litig.*,
  No. 7 Civ. 9901, 2016 WL 4198194 (S.D.N.Y. Aug. 9, 2016) ..............................................13

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
  662 F.3d 913 (7th Cir. 2011) ..........................................................................................25, 26

*Cullan & Cullan LLC v. M-Qube, Inc.*,
  No. 13 Civ. 172, 2014 WL 347034 (D. Neb. Jan. 30, 2014) .................................................7

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................................28

*Davis v. J.P. Morgan Chase & Co.*,
  775 F. Supp 2d 601 (W.D.N.Y. 2011) ..................................................................................16

*Diaz v. Michigan Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ..................................................................................10

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002)...........................................................................................20, 21

*In re Dom. Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993).............................................................................................14

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ....................................................................................7

*Garcia v. Pancho Villa's of Huntington Village*,
    281 F.R.D. 100 (E.D.N.Y. 2011) ............................................................................................29

*Gattinella. v. Michael Kors (USA), Inc.*,
    No. 14 Civ. 5731 (S.D.N.Y. November 17, 2015) ..................................................................14

*Gonzalez v. Pritzker*,
    No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016).........................................28

*Gonzalez v. Scalinatella, Inc.*,
    112 F.Supp. 3d 5 (S.D.N.Y. June 12, 2015) ..........................................................................26

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ............................................................................................14

*Gurung v. White Way Threading LLC*,
    No. 16 Civ. 1795, 2016 WL 7177510 (S.D.N.Y. Dec. 8, 2016).............................................17

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*,
    No. 11 Civ. 1510, 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014) .........................................28

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir 1998) .................................................................................................11

*Harris v. Vector Mktg.*
    *Corp.*, No. 08 Civ. 5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................15

*In re Holocaust Victim Assets Litig.*,
    105 F. Supp. 2d 139 (E.D.N.Y. 2000) .....................................................................................7

*Jacob v. Duane Reade, Inc.*,
    289 F.R.D. 408 (S.D.N.Y. 2013) ............................................................................................28

*Kim v. 511 E. 5th Street, LLC*,
    No. 12 Civ. 8096, 2016 WL 6833928 (S.D.N.Y. Nov. 7, 2016) .....................................25, 26

*In re Linerboard Antitrust Litig.*,
    361 F. App'x 392 (3d Cir. 2010) ............................................................................................21

*Litty v. Merrill Lynch & Co.*,
  No. 14 Civ. 0425, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)........................................7, 23

*Lopez v. Nights of Carbiria, LLC*,
  96 F. Supp. 3d 170 (S.D.N.Y. 2015)....................................................................15

*In re Lupron Mktg. & Sales Practices Litig.*,
  345 F. Supp. 2d 135 (D. Mass. 2004) .................................................................23

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)..............................................................................7

*In re Merrill Lynch & Co., Inc. Secs., Derivative & ERISA Litig.*,
  No. 7 Civ. 10268 (S.D.N.Y. July 20, 2009)..........................................................14

*Michel v. Parts Auth., Inc.*,
  No. 15 Civ. 5730, 2016 WL 5372797 (E.D.N.Y. Sept. 26, 2016)..........................................11

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781 (7th Cir. 2004) ............................................................................16

*Morris v. Affinity Health Plan*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)....................................................................29

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016)..............................................................................11

*Perez v. Allstate Insurance Co.*,
  No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)..........................................28

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .........................................................................21

*Puglisi v. TD Bank*,
  No. 13 Civ. 637 (E.D.N.Y. July 30, 2015) .............................................................29

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ..........................................................................7, 9

*Robinson v. Big City Yonkers, Inc.*,
  No. 600159/2016, 2016 WL 7032150 (N.Y. Sup. Nov. 29, 2016)..................................16, 22

*Rodriguez v. Joseph Eletto Transfer, Inc.*,
  No. 5431/2016, 2016 WL 7365683 (Sup. Ct. Dec. 15, 2016) .................................................29

*Rojas v. East-lex Diner, Inc.*,
    No. 15 Civ. 6195, 2016 WL 3181152 (S.D.N.Y. June 3, 2016)..............................................15

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) ...................................................................................17

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)...........................................28

*Torres v. Gristede's Operating Corp.*,
    No. 4 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)...........................................28

*United States v. Schurkman*,
    728 F.3d 129 (2d Cir. 2013)....................................................................................18, 19, 20

*Vendo Co. v. Lektro-Vend Corp.*,
    433 U.S. 623 (1977)...........................................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................................6, 16

*Yong Kui Chen v. Wai Cafe Inc.*,
    No. 10 Civ 7254, 2016 WL 722185 (S.D.N.Y. Feb. 19, 2016) ............................................25

**Statutes**

28 U.S.C. § 2283 ........................................................................................................18, 19

**Other Authorities**

7A Fed. Prac. & Proc. Civ. § 1769.1 (3d ed.) .............................................................................26

Fed. R. Civ. P 23 .................................................................................................................24, 27

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action*
    *Settlements* .........................................................................................................................8

## INTRODUCTION

The *Cando* Parties'[1] proposed settlement is so flawed that the Court should not preliminarily approve it.  It would be a waste of resources and a futile exercise to send notice to the class because there is not even probable cause that the settlement will ever achieve final approval.

The proposed settlement is the result of a classic "reverse auction."  After a mediation session attended by the *Robinson* Plaintiffs, Big City, and the *Cando* Plaintiffs, counsel for Big City and *Cando* Plaintiffs' counsel held a secret side-negotiation cutting the *Robinson* Plaintiffs out, and settled the case for a fraction of what had been discussed at the mediation and pennies on the dollar compared to the value of the claims.  The settlement amount is even significantly less than the amount that the *Cando* parties told the Court that they had settled for after a Court-directed settlement conference.  Big City was able to achieve this extremely favorable result by taking advantage of the *Cando* Plaintiffs' weak bargaining position and their counsel's strong interest in getting a quick deal done.

The proposed settlement is also unfair because it releases potentially valuable claims were not part of the settlement negotiations.  The proposed notice fails to inform class members that they are releasing these potentially valuable claims if they do not opt out.  In addition, the proposed notice fails to include any information about *Robinson*, or inform class members that they will release their claims in that case unless they opt out of the settlement in *Cando*.

---

[1]     Throughout this brief, *Robinson* Plaintiffs use the following definitions for the parties: "*Robinson* Plaintiffs" refers to the Named Plaintiffs, Opt-In Plaintiffs, and represented putative Class Members in *Robinson v. Big City Yonkers Inc., et al.*, No. 600159/2016 (N.Y. Sup. Ct.) ("*Robinson*"); "Big City" refers to all defendants in *Robinson* and Big City Yonkers, Inc., Autostar Automotive Warehouse, Inc., and QPBC, Inc., which are also defendants in *Cando*; "*Cando* Plaintiffs" refers to the Named Plaintiffs in *Cando*; the "Parties" refers to Plaintiffs, Big City, and the *Cando* Plaintiffs; and the "*Cando* Parties" refers to Big City and *Cando* Plaintiffs.

The proposed settlement also allows *Cando* Plaintiffs' counsel to collect almost 50% of the settlement amount for themselves and places them in conflict with the class. It designates *Cando* Plaintiffs' counsel's wholly-owned claims administration company as the claims administrator at a price well above market rates. Not only does this demonstrates that the settlement is unfair, it shows that the Court should not certify a settlement class with *Cando* Plaintiffs' counsel as class counsel. *Cando* Plaintiffs' counsel has acted in their own best interests and contrary to the interests of the class at every turn.

The Court should also reject the *Cando* Parties' joint effort to stop *Robinson* from proceeding. The injunction that the *Cando* parties request would violate the federal Anti-Injunction Act and contradict the order of a state court judge denying the same relief. While enjoining *Robinson* would certainly benefit Big City by allowing it to avoid defending its conduct, derailing the only opportunity for meaningful relief would certainly not help the class. If *Cando* Plaintiffs' counsel was truly looking out for the interests of the class, they would not be seeking this type of relief.

**FACTUAL AND PROCEDURAL HISTORY**

I.      **The Robinson Plaintiffs' First-Filed Complaint and Big City's Agreement to Mediate With the Robinson Plaintiffs.**

The *Robinson* Plaintiffs were the first to challenge Big City's unlawful compensation practices when they filed a class and collective action lawsuit, *Alcantara v. Big City Yonkers, Inc.*, No. 15 Civ. 7288 (S.D.N.Y.) ("*Alcantara*"), in the Southern District of New York on September 15, 2015. *Alcantara* alleged that Big City misclassified its delivery drivers as independent contractors in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and failed to pay them overtime compensation that they earned. Decl. of Troy L. Kessler in Opp'n to Pls.' Mot. for Preliminary Approval of Class Action Settlement and

Approval of Proposed Notice of Settlement ("Kessler Decl.") ¶ 3; Ex. 1.  Shortly after *Alcantara* was filed, Big City informed *Robinson* Plaintiffs that it intended to move to dismiss the complaint pursuant to a forum selection clause in an agreement that it claimed that the *Alcantara* plaintiffs executed.  Kessler Decl. ¶¶ 4-5; Exs. 2, 3.  The forum selection clause purported to require plaintiffs to bring their case in New York Supreme Court, Nassau County.  Kessler Decl. ¶ 6.  Rather than litigate the issue and endure the resulting delay, the *Alcantara* plaintiffs agreed to dismiss their federal complaint and re-file it in state court.  Kessler Decl. ¶¶ 7, 9; Ex. 3, *Alcantara* ECF No. 13.  On January 11, 2016, the *Alcantara* plaintiffs filed a complaint in Supreme Court, Nassau County, captioned *Robinson v. Big City Yonkers Inc., et al.*, pleading the same claims as had been pled in *Alcantara*.  Kessler Decl. ¶ 9; Ex. 4, NYSCEF No. 1.

On March 8, 2016, almost six months after the *Alcantara* filing, the *Cando* Plaintiffs filed their Complaint in this Court.  *Cando* ECF No. 1.

On May 18, 2016, the *Robinson* Plaintiffs and Big City had entered into a Stipulation and Tolling Agreement, with the hopes of settling at mediation after some targeted discovery for settlement purposes.  Kessler Decl. ¶ 13.

## II.   Big City's Selective Invocation of Its Forum Selection Clause Sets the Stage for a Reverse Auction.

On June 3, 2016, Big City filed a request for a pre-motion conference in *Cando*, indicating that it planned to file a motion to dismiss relating to the same forum selection clause it had invoked against the *Alcantara* plaintiffs.  It noted that "trial efficiency and the interest of justice militate in favor of enforcing the Forum Clause in the present matter."  *Cando* ECF No. 71 at 4 n.3.  The *Cando* Plaintiffs, however, were unwilling to voluntarily withdraw their complaint and join the *Robinson* action, *id.*, even though the *Robinson* case protected more workers and included more workweeks due to its earlier filing.

3

As a result, Big City informed the *Robinson* Plaintiffs that to achieve a class-wide resolution, the *Cando* Plaintiffs needed to be included in the mediation.  Kessler Decl.  ¶ 15.  The *Robinson* Plaintiffs agreed to include the *Cando* Plaintiffs in the mediation.  *Id.*

Big City then agreed to adjourn its pre-motion conference request, *id*; ECF No. 72 (*Cando* Pls.' Ltr. to Judge Kuntz, June 7, 2016), allowing *Cando* to remain in this court and laying the groundwork for a reverse auction.

## III.    The Parties Try and Fail to Reach a Global Settlement of Both Cases.

On August 1, 2016, Plaintiff Frank Robinson, *Robinson* Plaintiffs' counsel, Big City and its counsel, Plaintiff Mario Cando, and *Cando* Plaintiffs' counsel, attended an all-day mediation overseen by Ralph S. Berger.  Kessler Decl. ¶ 18.  Although the parties made progress toward a settlement, the mediation was ultimately unsuccessful and adjourned at approximately 3:00 p.m. *Id.*

Unbeknownst to *Robinson* Plaintiffs' counsel, however, *Cando* Plaintiffs' counsel and Big City stayed behind and initiated a separate negotiation.  *Id.*

On or about August 8, 2016, after some additional efforts to settle, the mediator informed all plaintiffs' counsel that a resolution was not possible at that time.  *Id.* at ¶ 19.

This was not true, however, at least as far as *Cando* Plaintiffs' counsel was concerned. As subsequently became clear, the *Cando* Plaintiffs continued to quietly negotiate with Big City at numbers much lower than had been discussed at the end of the mediation.  The *Cando* Parties then requested a settlement conference with the Court and, during that conference, ultimately reached agreement on a monetary amount of $750,000.  ECF No. 83 (Transcript of Oct. 7, 2016 Court conference) at 3:1.  The settlement for which the *Cando* parties now seek approval, however, is significantly less – only $565,000 – and it includes up to $70,000 in fees and "unforeseen costs" for the claims administration firm operated by *Cando* Plaintiffs' counsel.

4

ECF No. 99-1 (Settlement Agreement) §§ 1.28, 3.1(A), 3.1(C).  There is no indication on the record that the *Cando* Parties ever disclosed their attempts to reach a global resolution that included *Robinson*.

Meanwhile, *Robinson* Plaintiffs' counsel repeatedly reached out to *Cando* Plaintiffs' counsel seeking to continue to discuss whether there was potential for a resolution and, if not, how they could cooperate in litigation in a way that was best for the plaintiffs and the class. *Robinson* Plaintiff's Counsel requested that *Cando* Plaintiffs' counsel consent to adjourn the settlement conference before the Court, but *Cando* Plaintiffs' counsel was well on the way to reaching their sweetheart deal with Big City, and failed to respond. [2]  Kessler Decl. ¶¶ 24-25, 27-29, 30, 33 & Exs. 6, 7, 8.

*Cando* Plaintiffs' counsel's sole response came after he had already settled the case, when he asked *Robinson* Plaintiffs' counsel to meet him at his home on the Upper West Side at 8:00 a.m.  *Id.* at ¶ 34 & Ex. 9.  When *Robinson* Plaintiffs' counsel indicated that he could not attend in person, but could speak by phone, *Cando* Plaintiffs' counsel never responded.  *Id.*

## IV.   The *Cando* Parties' Concerted Effort to Keep the *Robinson* Plaintiffs in the Background.

Instead of encouraging the Court to perform an appropriate evaluation of the fairness of the settlement at the preliminary approval stage, the *Cando* Parties ask the Court to truncate the process and quickly rubber stamp the notice despite the *Robinson* Plaintiffs' concerns.  *See* ECF No. 101 (Letter from Big City urging the Court to conduct an "expedited review" of the preliminary approval motion).  Moreover, apparently reluctant to defend the backroom deal they struck, *see* ECF No. 98 (*Cando* Pls.' Mem. of Law) at 26, the *Cando* parties encourage the Court

---

[2]    *Robinson* Plaintiffs also asked Big City's consent in adjourning the conference.  Big City's counsel promised to get back to *Robinson* Plaintiffs' Counsel with an answer, but never did.  *See* Kessler Decl. ¶ 28.

*not to even hear from the Robinson* Plaintiffs.  *See* ECF No. 108 (Letter from Big City's

counsel); ECF No. 109 (Letter from *Cando* Plaintiffs' counsel).[3]

## ARGUMENT

## I.     The Court Should Deny Preliminary Approval Because the Settlement Is Procedurally and Substantively Unfair.

The reverse auction that led to the proposed settlement was not arms' length and

predictably resulted in a bad deal for the proposed class.  To merit preliminary approval, a

proposed class settlement must be both procedurally and substantively fair.  *Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  The Court's review "must be exacting

and thorough," even at the preliminary approval stage.  *See* Manual for Complex Litigation

(Fourth) § 21.61 at 309 ("The [court's] task is demanding because the adversariness of litigation

is often lost after the agreement to settle.").

The Court should reject the settlement now.  This will avoid wasting judicial and party

resources that would result from sending the defective class notice that the parties propose (at an

estimated cost to the class of more than $50,000), presenting class members with an overbroad

release that goes well beyond the claims at issue in the case, and inviting them to release

valuable claims in exchange for approximately $4.19 per workweek.  Resources spent on

disseminating notice and monitoring the settlement could be better used in achieving a superior

result, either through further litigation or a fair negotiation process.

## A     The Proposed Settlement Is Procedurally Deficient Because It Results from a Reverse Auction.

The procedural fairness inquiry requires courts to scrutinize the negotiations "in light of

the experience of counsel, the vigor with which the case was prosecuted, and the coercion or

---

[3]     The *Cando* parties are wrong that this opposition brief violates the Court's December 1, 2016 order.  The order is silent as to whether an opposition is permitted, and the Local Rules expressly permit filing of opposition briefs fourteen days after a motion is filed.  Minute Entry dated Dec. 1, 2016; Local Civ. R. 6.1(b).  They are also wrong that absent class members do not have standing to oppose preliminary approval.  They do.  *See* section I.D. below.

collusion that may have marred the negotiations themselves." *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145–46 (E.D.N.Y. 2000) (internal quotation marks and citations omitted).   "[T]he district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (internal quotation marks omitted).   Courts routinely deny approval where there is evidence indicating that the settlement was the "product of procedural unfairness," even absent evidence of outright collusion between the parties to the detriment of the class.   *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282, 286 (7th Cir. 2002) (district court abused discretion in approving settlement without applying close scrutiny to circumstances suggesting reverse auction); *Litty v. Merrill Lynch & Co.*, No. 14 Civ. 0425, 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) (denying preliminary approval where, despite a lack of "evidence of overt misconduct," the court was troubled that the parties attempted to sweep the claims of class members in two separate cases into their settlement "without involving plaintiffs' counsel in those cases"); *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 13 Civ. 172, 2014 WL 347034, at *10 (D. Neb. Jan. 30, 2014) ("In light of its timing, the pendency of other actions, the size of the class, the amount of the settlement and some 'red flags' that could be signs of potential abuse or collusion, the court finds that the parties' motion for preliminary approval should be denied at this time."); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 399 (C.D. Cal. 2007) (preliminary approval denied where the court "[could not] avoid the conclusion that the process by which [the settlement] was reached is strikingly similar" to a reverse auction); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (declining to approve settlement where the court could not ignore "the perception . . . that [defendant] selected counsel confronted with a most precarious position,

insisted upon amendments to the pleading to broaden the scope of this litigation to obtain a global peace, and then proceeded to offer and convince Class Counsel to accept highly undesirable terms to settle the case").

Courts have cautioned that "[c]ollusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (proposed settlements reached before certification of a class "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)").  For example, "courts are wary of situations in which there are multiple class suits, defendants settle one of the cases in order to preclude the other actions, and the settlement with that particular group of plaintiffs and their counsel seems suspicious."  5 William B. Rubenstein, 4 Newberg on Class Actions § 13:57 (5th ed.); Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. LEGAL ANALYSIS 167, 191 n.92 (2009) ("A reverse auction can occur without collusion: the defendant plays off competing teams of plaintiffs' attorneys against one another without engaging in a collusive deal with any of them.  But evidence of a reverse auction at least creates the possibility that the 'winning' team of plaintiffs' attorneys has failed to deal with the defendant on a fully arms-length basis.").

Here, the events giving rise to the proposed settlement have all the indicia of a classic reverse auction – a win-win-lose, where Big City gets releases at an artificially depressed price, counsel in the inferior bargaining position can recover a significant fee from a weaker position (leveraging the position of other counsel in another, better-situated case), and the class members

8

lose.  *See Reynolds*, 288 F.3d at 282 (describing a reverse auction as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant"); Newberg on Class Actions § 13:57 (5th ed.) (the primary "problem in the reverse auction situation is that the class's interests have been sold out, and class members will get less than the full value of their claims").

### 1. Big City Manipulated the Settlement Negotiations to Its Advantage.

Big City insisted on a joint mediation, took the opportunity to size up both sets of plaintiffs and their counsel, and then divided and conquered by continuing side negotiations with the group that was in a weaker bargaining position and appeared willing to accept a settlement at the lowest price, to the detriment of the class.

As explained above, after Plaintiffs and Big City entered into a tolling agreement and scheduled a mediation session, Big City insisted that any settlement discussions must include *Cando* counsel.  The *Robinson* Plaintiffs agreed, and both sets of Plaintiffs' counsel mediated with Big City in an attempt to reach a global classwide settlement.  The mediation ended without an agreement, but Big City continued to negotiate with *Cando* Plaintiffs' counsel without the knowledge or agreement of *Robinson* Plaintiffs' counsel.  In other words, when presented with the opportunity to settle very favorably with the *Cando* plaintiffs, Big City had no problem negotiating without all parties present.

### 2. Big City Took Advantage of Cando Plaintiffs' Weaker Negotiating Position to Secure a Favorable Settlement.

In *Robinson* Plaintiffs' absence, it is not surprising that Big City was able to secure favorable terms with the *Cando* Plaintiffs, who were in a weaker negotiating position, were

represented by counsel that was self-motivated to settle, and who were willing to wipe out all class members' claims at a bargain basement price.

The suspicious circumstances are especially troubling because the *Robinson* Plaintiffs, represented by experienced counsel with a history of successful litigation on behalf of similar employees, *see infra* note 11, were in a superior position to the *Cando* Plaintiffs to negotiate a reasonable settlement.  *Cando* Plaintiffs' counsel, on the other hand, has been regularly criticized by other courts for its conduct in similar cases.  *See infra* Section II.A.3.

Moreover, *Robinson* Plaintiffs filed their case in federal court more than six months before the *Cando* Plaintiffs filed.  Having tolled the statute of limitations on their NYLL claims earlier, *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) ("the commencement of the original class suit tolls the running of the statute for all purported members of the class"), *Robinson* includes many more workers and workweeks than does *Cando*. In addition, *Robinson* Plaintiffs' case has progressed swiftly towards conditional and class certification.

In addition, the *Cando* Plaintiffs named Diligent, incorporated as Michigan Logistics, Inc. and Northeast Logistics, Inc., as defendants in their Complaint.  *See* ECF No. 24 (Amended Complaint) ¶ 11-12.  Diligent requires its purported independent contractors to sign an arbitration agreement containing a class and collective action waiver.  *See* ECF No. 70 (Letter from Diligent requesting a pre-motion conference on their anticipated motion to compel arbitration).  The *Cando* Plaintiffs were facing a motion to compel arbitration which could have prevented, or at least delayed, their ability to pursue their claims against Big City in this Court. *See, e.g.*, *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (compelling wage-and-hour case involving auto-parts drivers employed by Diligent and Diligent's co-defendant to individual arbitration, notwithstanding the fact that the drivers did not

10

agree to arbitrate their claims against the co-defendant), *appeal dismissed* (July 11, 2016); *Michel v. Parts Auth., Inc.*, No. 15 Civ. 5730, 2016 WL 5372797 (E.D.N.Y. Sept. 26, 2016). Consequently, the *Cando* Plaintiffs and their counsel were in a much weaker position to broker a class settlement.

Finally, Big City's selective invocation of its forum selection clause provides additional evidence that Big City orchestrated a reverse auction here.  4 Newberg on Class Actions § 13:57 (5th ed.) ("A defendant's failure to consolidate parallel litigation where consolidation was possible may indicate that the defendant sought to create the conditions enabling a reverse auction.").  Big City liked the *Cando* Plaintiffs and their counsel right where it had them.

If the Court approves the settlement, Big City's plan will succeed.  It will have secured a classwide release for a bargain-basement price.  *Cando* Plaintiffs' counsel will also come out ahead, receiving nearly $200,000 in fees plus costs and up to $70,000 in inflated administration costs, which – quite unusually – will be paid to *Cando* Plaintiffs' counsel's own administration firm.  Meanwhile, the class will suffer – receiving an average of $4.19 per workweek after fees and administration costs are taken out.[4]

## B.    The Settlement Suffers from Significant Substantive Deficiencies.

The suspicious background behind the brokering of the settlement deal is not a mere abstract problem posing a hypothetical danger.  Rather, this reverse auction has led to an unfair result that harms class members.

---

[4]       The fact that a mediator was involved in brokering the deal "is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *In re Bluetooth*, 654 F.3d at 948; *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 234–35 (2d Cir. 2016) ("One aspect of the Settlement Agreement that emphatically cannot remedy the inadequate representation is the assistance of judges and mediators in the bargaining process."). The court, not the mediator, has the primary responsibility to guard against procedural unfairness to ensure the class' interests are not sacrificed. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir 1998).

     1.       **The *Cando* Parties Fail to Demonstrate that the Settlement Amount Falls Within the Range of Possible Approval.**

The unexplained reduction in the reported settlement amount and the overall low value of the settlement raise serious concerns about its reasonableness.  First, the proposed settlement being evaluated here is not the same settlement that the *Cando* Plaintiffs presented to the Court at the October 7, 2016 settlement conference:  though they advertised it as a $750,000 settlement, it turns out to be a $565,000 settlement (a 25% discount).  *See* ECF No. 106-1 (Trans., Oct. 7, 2016) at 2:24-3:1 (Mr. Lee:  "The parties have reached . . . an agreement on the dollar amount of the settlement which would be $750,000."); ECF No. 99-1 (Settlement Agreement) ¶ 1.28.

Although the *Cando* Parties attempt to portray the new settlement as a better, non-reversionary deal (*Cando* Pls.' Mem. of Law at 12, ECF No. 98), this is sleight of hand. Participating class members will recover much less money from this settlement than the parties previously represented to the court.  The $185,000 reduction in the settlement value results in a up to a 29.37 decrease in the average settlement award.  Under the proposed settlement, although no money will revert to Big City, unclaimed funds *will not* be redistributed to class members. ECF No. 99-1 (Settlement Agreement) ¶ 3.1(E).  Rather, those funds will either go to the *Cando* Plaintiffs' *counsel's* settlement administration firm as "unforeseen costs" or to a *cy pres* designee.  *Id*.; ECF No. 98 (*Cando* Pls.' Mem. of Law) at 16-17.

In essence, *Cando* Plaintiffs' counsel agreed to a lower settlement amount than it reported to the Court in order to allow for the possibility for his in-house claims administration "company" to recover additional fees.  Although *Cando* Plaintiffs' counsel's self-dealing is discussed in more detail below, it is also highlights the collusive nature of the settlement.  Big City has no incentive to object to a windfall by *Cando* Plaintiffs' counsel because Big City has already squeezed another $185,000 from the class and, because it is not entitled to a reversion, it has no reason to care whether unclaimed funds go to a *cy pres* designee or to *Cando* Plaintiffs' counsel.  Consistent with these incentives, the settlement agreement does not appear to require

12

the parties to return to Court to ask for approval for disbursing unclaimed funds.   *See* ECF No. 99-1 (Settlement Agreement) § 3.1(E).

Although *cy pres* awards can be appropriate in many circumstances, it is inappropriate to determine in advance that unclaimed funds will go to a *cy pres* without determining whether they can feasibly be re-distributed to the class.   *See In re Citigroup Inc. Sec. Litig.*, No. 7 Civ. 9901, 2016 WL 4198194, at *3 (S.D.N.Y. Aug. 9, 2016) ("*cy pres* designations should be made only when it is "'not feasible to make further distributions to class members"); *see also In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015) (a class action "settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.") (quoting American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 (2010)).

In addition, the value of the settlement is unreasonably low, and the *Cando* Plaintiffs' motion fails to adequately explain why a settlement representing a tiny sliver of the potential damages is within the range of reasonableness under the circumstances here.

Class members will receive only $4.19 per workweek employed with Big City, despite alleging that they worked a substantial number of unpaid overtime hours each week, in addition to other claims.  According to the *Cando* Plaintiffs' calculations, the gross settlement ($565,000) represents less than 0.6% of the potential available damages of $95,000,000.  *See Cando* Pls.' Mem. of Law at 27.  The *Cando* Plaintiffs amorphously point to the risks of continued litigation present in all misclassification cases without adequately explaining why such an especially steep discount is warranted here.  Notably, in support of their argument that the settlement amount is within the range of reasonableness, the *Cando* Plaintiffs exclusively cite not to wage and hour cases, but to ERISA, consumer, securities, and antitrust class actions, which typically involve potential damages so huge that even a small fraction often results in a substantial recovery for the

13

class.[5]  *See Gattinella. v. Michael Kors (USA), Inc.,* No. 14 Civ. 5731 (S.D.N.Y. November 17,

2015) Pls.' Brief, ECF No. 49 at 29, (requesting approval of settlement of $4.9 million where

estimated damages "could be as much as $170 million," representing a 2.9% recovery;

settlement also provided forward-looking equitable relief), *approved by* 2016 WL 690877

(S.D.N.Y. Feb. 9, 2016) (approving settlement where "negotiations appear to have taken place in

good faith and at arms' length" and [n]o objections were lodged"); *In re Merrill Lynch & Co.,*

*Inc. Secs., Derivative & ERISA Litig.*, No. 7 Civ. 10268 (S.D.N.Y. July 20, 2009), Pls.' Reply

Brief, ECF No. 95 at 4 (requesting $75 million settlement against maximum potential recovery

of approximately $3 billion - 2.5% recovery, where legal theory for damages had "yet to be

adopted by a court in a similar case"), *approved by* ECF No. 97 (S.D.N.Y. Aug. 4, 2009)

(entering proposed order).[6]  Significantly, even among these divergent cases, only one approves

of a settlement representing a similarly small percentage of the possible recovery.  *See In re Gulf*

*Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (approving settlement

of $18.4 million for claims estimated to be worth $5.3 billion; settlement was 0.3% of the

maximum possible recovery).[7]  Given the large amount of potential damages here, even a

recovery that represented just 1.7% of the total (as in one of the examples the *Cando* Plaintiffs

---

[5]     Inexplicably, the *Cando* Plaintiffs cite not to the orders approving these settlements, but
to the parties' briefs requesting approval.
[6]     The *Cando* Plaintiffs also rely on a yet-to-be approved settlement, but claim that it
represents an approval of a settlement that was 1.7% of recoverable damages.  ECF No. 98
(*Cando* Pls.' Mem. of Law) at 32 (citing to *In re 2014 Avon Prods., Inc.ERISA Litig.*, No. 14
Civ. 10083 (S.D.N.Y. September 6, 2016), ECF No. 66 at 19).  The Court in *In re 2014 Avon*
*Products* subsequently demanded additional information on "the parties' respective theories of
damages as they relate to the adequacy of the settlement amount" and "the metholog[ies] used
and assumptions made and any other information that parties believe would be helpful to the
Court in asserting the fairness, reasonableness, and adequacy of the settlement."  *In re 2014 Avon*
*Prods. Inc. ERISA Litig.*, ECF No. 71 (S.D.N.Y. Oct. 13, 2016), attached as Ex. 9.  To date, the
settlement has not been approved.  *See* Ex. 10 (*In re 2014 Avon* Docket).
[7]     Moreover, several of these cases involved significant non-economic relief as well.  *See,*
*e.g.*, *Gattinella*,  ECF No.49 at 29 ("[T]he most important feature of the Settlement is the non-
monetary part which will result in substantial saving to the Settlement Class and future Michael
Kors customers."); *In re Dom. Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 320 (N.D. Ga. 1993)
(noting the "substantial benefit to the class" of the non-monetary relief).

provided) of $95,000,000 would be approximately $1.6 million – or approximately three times the value of the proposed settlement.

Although the *Cando* Plaintiffs claim that the recovery represents 3.6% of the class's "actual back wages," that amount is not the appropriate point of comparison, because that is not everything being sought by the plaintiffs in the litigation.  To evaluate whether the settlement amount is in the range of possible approval, "courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer."  *Harris v. Vector Mktg. Corp.*, No. 08 Civ. 5198, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 1114, 1125 (E.D. Cal. 2009)) (internal quotation mark omitted).  This requires the court to estimate the "maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount."  *Id.* (quoting *Glass v. UBS Financial Servs., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (internal quotation marks omitted)); *Lopez v. Nights of Carbiria, LLC*, 96 F. Supp. 3d 170, 176-77 (S.D.N.Y. 2015) (wage and hour settlement rejected where the court was not provided with enough information to asses reasonableness of settlement amount); *Rojas v. East-lex Diner, Inc.*, No. 15 Civ. 6195, 2016 WL 3181152, at *1 (S.D.N.Y. June 3, 2016) (settlement rejected where plaintiffs failed to address the full scope of damages available to them).   Here, the potential damages include not only back wages but also liquidated damages, interest, and damages for Big City's wage statement and wage notice violations, as well as potential damages for retaliation, which *Cando* Plaintiffs don't seem to have taken into account at all.  Moreover, even assuming that the "actual back wages" is the appropriate comparator (which it is not), the *Cando* Plaintiffs' number disregards drivers' "tools of the trade" damages – that is, the unreimbursed expenses and costs drivers incurred to performed their duties for Big City – which also constitute back wages. When the tools of the trade damages (an additional $55,000,000) are accounted for, the resulting percentage of recovery is much lower than 3.6%.  Rather, it is approximately 0.8%.

15

**2.    The Proposed Notice Does Not Provide Class Members Adequate Information to Make Informed Decisions Regarding the Settlement and Their Rights.**

The proposed notice does not adequately apprise potential class members of *Robinson* and their option to participate in that case.  The proposed notice does not even mention the pendency of *Robinson*, let alone provide *Robinson* Plaintiffs' counsel's contact information or any information about the case that would allow class members to make informed decisions about whether to accept the small recovery on offer or to pursue their claims in pending litigation (as opposed to the abstract option of initiating their own individual lawsuits).  Including information about parallel cases aids class members' understanding of their rights and should, therefore, be included in the notice.  *See Wal-Mart Stores*, 396 F.3d at 116 n.22 ("We note . . . that class notices do sometimes include specific reference to pending actions. . . . Obviously, this information is helpful to class members. We strongly encourage the inclusion of such information in the future." (internal citation omitted)); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (criticizing notice of settlement that failed to inform class members of a pending state-court case and that their rights in that case would be extinguished if the settlement in the federal case was approved, unless they opted out of it); *Robinson v. Big City Yonkers, Inc.*, No. 600159/2016, 2016 WL 7032150, at *2 (N.Y. Sup. Nov. 29, 2016) ("[P]rospective class members in [*Robinson*] may very well be faced with a decision as to whether to accept the settlement in [*Cando*] without knowledge of the option of proceeding to judgment in [*Robinson*]. That is a true injustice."); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp 2d 601, 611 (W.D.N.Y. 2011) ("If class members are to make informed decisions about what steps to take in response to the notice, it would indeed be helpful for them to be aware that other actions have been filed against these Defendants, involving claims similar to those here."); *see also* C.P.L.R. 908, Practice Commentaries § 908:2 ("[S]ome settlements present the risk of a 'sell out' by the

16

named plaintiffs, the court may be better informed about potential collusion if interested parties are put on notice, and notice may protect potential class members against the running of the statute of limitations.").  The fact that, despite this well-established principle, the *Cando* parties chose not to even mention *Robinson* in the proposed notice is another example of sacrificing the class members' interests for Big City's and *Cando* Plaintiffs' counsels' interest in pushing through a bad settlement.

Accordingly, Plaintiffs respectfully request that, if preliminary approval is granted (it should not be), the Court require the parties to amend their proposed notice to prominently describe the *Robinson* action and provide *Robinson* Plaintiffs' counsel's contact information.

### 3.    The Proposed Release Is Much Too Broad.

In addition to inadequate relief and a defective notice, the proposed release is overbroad because it requires class members to release claims not mentioned in the notice.  For instance, participating class members will waive any retaliation claims, even though those claims were not part of the *Cando* Parties' application for Preliminary Approval and the notice does not inform them that they will waive any such claims.[8]  ECF No. 99-1 (Settlement Agreement) ¶ 1.25. Many courts have rejected such broad releases when scrutinizing settlement agreements in the FLSA context.  *See Gurung v. White Way Threading LLC*, No. 16 Civ. 1795, 2016 WL 7177510, at *1 (S.D.N.Y. Dec. 8, 2016) (rejecting proposed release as overbroad noting that "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic") (internal quotations and citations omitted); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 576 (E.D. Pa. 2001) (a class settlement release that "extends far beyond the conduct

---

[8]    This is a real concern.  Several of the *Robinson* Plaintiffs filed a charge for retaliation with the National Labor Relations Board after Diligent and Big City fired them shortly after they asserted claims against Diligent.  Kessler Decl. Ex. 11 (NLRB charge).

challenged in the litigation" is a factor that weighs in favor of rejecting a proposed class

settlement).  Here, the release sweeps too broadly and there is no indication that class members

will receive additional consideration in exchange for releasing these additional claims.

### C.     The Court Should Not Enjoin *Robinson*.

The *Cando* Parties make the extraordinary request that the Court enjoin potential Class

Members from litigating claims that are covered by the parties' proposed release "pending the

Court's determination of whether the settlement should be given final approval."  ECF No. 99-1

(Settlement Agreement) § 2.4(D).   This request is improper for several reasons.  It also further

highlights the procedural and substantive unfairness of the proposed settlement, and *Cando*

Plaintiffs' counsel's willingness to accede to Big City's wishes.  Finally, the proposed injunction

inappropriately seeks to remove class members' only opportunity to pursue their valuable claims

by inappropriately stopping *Robinson* – which is further advanced and better positioned to obtain

a worthwhile settlement – in its tracks.  The *Robinson* court already declined to allow Big City to

halt its proceedings, and this Court should do the same.

### 1.     The Anti-Injunction Act Precludes the Injunction the *Cando* Parties Seek.

The proposed injunction violates the Anti-Injunction Act, 28 U.S.C. § 2283, which, with

limited exceptions not applicable here, establishes an "absolute prohibition" on federal courts

enjoining actions pending in state court.[9]  *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630

(1977); 28 U.S.C. § 2283.  The only circumstances where such an injunction is permissible are

---

[9]     To the extent the *Cando* Plaintiffs claim that the All Writs Act provides a separate basis
for the injunction they seek, *see Cando* Pls.' Br. at 46, this argument is misplaced.  The Anti-
Injunction Act is an express limit on the All Writs Act and, as set out in detail below, the
requested injunction does not fit within any of its exceptions.  *See United States v. Schurkman*,
728 F.3d 129, 135 (2d Cir. 2013) (All Writs Act "must be read in tandem with the Anti–
Injunction Act, which tempers the potency of the All Writs Act by limiting the circumstances
under which a federal court may enjoin state court proceedings").

when the injunction is "expressly authorized by Act of Congress," "necessary in aid of [the court's] jurisdiction," or "to protect or effectuate [the court's] judgments."  28 U.S.C. § 2283.  In light of this strict prohibition and "the fundamental principle of a dual system of courts," "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Schurkman*, 728 F.3d at 135 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).

> ### a.     The "In Aid of Jurisdiction Exception" Does Not Apply.

The *Cando* Plaintiffs claim, without citing any authority, that "[i]t is common for most, if not all, federal courts to issue preliminary injunctions after granting preliminary approval to class action settlements and while notice is being disseminated to the Class," pursuant to the "in aid of" jurisdiction exception to the Anti-Injunction Act.  ECF No. 98 (*Cando* Pls.' Mem. of Law) at 44.  This is simply wrong.

"Since the Anti-Injunction Act's prohibitory provision 'rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction.'"  *Schurkman*, 728 F.3d at 135 (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at 287).  Accordingly, courts in the Second Circuit limit the "in aid of jurisdiction" exception to *in rem* cases and limited *in personam* actions where the "federal proceeding was the 'virtual equivalent' of a *res*." *Chang v. Phoenix Satellite TV (U.S.), Inc.*, No. 14 Civ. 2686, 2014 WL 5017838, at *4 (S.D.N.Y. Sept. 22, 2014) (citations omitted); *see also Schurkman*, 728 F.3d at 137 ("Because 'an *in personam* action involves a controversy over liability rather than over possession of a thing[,] . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.'") (quoting *Wyly v. Weiss,* 697 F.3d 131, 138 (2d Cir. 2012); Newberg on Class Actions § 10:46 (5th ed.) ("The

Supreme Court has never held that a federal court may enjoin a parallel state court *in personam* action under the 'in aid of jurisdiction' exception.") (citing *Vendo Co.*, 433 U.S. 642). In practice, the "in aid of jurisdiction" exception has only been allowed in the most complex, advanced class actions, and school desegregation cases. *Schurkman*, 728 F.3d at 137-38

      Although the Second Circuit has recognized a "limited exception to the general rule that the "in aid of jurisdiction" exception does not permit a federal court to enjoin a parallel *in personam* action," *id.* at 137, that rule does not apply here. In *In re Baldwin-United Corp.*, the Second Circuit held that an injunction of an *in personam* action was justified where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *Id.* (citing *Baldwin-United*, 770 F.3d 328, 337 (2d Cir. 1985). Specifically, that case was a complex, consolidated, multi-district litigation in which 18 of 26 defendants had already settled and the remaining eight were near settlement after two years of court-brokered negotiations, all of which occurred before the state-court action was filed. *Baldwin-United*, 770 F.3d at 338. The Second Circuit has declined, in subsequent cases, "to extend the holding of *Baldwin-United* beyond the exceptional circumstances of that case." *Schurkman*, 728 F.3d at 138. Because the "exceptional circumstances" of *Baldwin-United* are absent here, there is no basis for the Court to enjoin *Robinson*. *See id.*

      *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002), on which the *Cando* Plaintiffs rely, is also inapplicable here. It involved a district court's injunction of parallel state-court litigation where there were "eighteen thousand individual lawsuits and over one hundred class actions" involving millions of class members pending in federal and state courts around the country. 282 F.3d at 225, 236. The disputed injunction prevented the state court from effectuating a "mass opt-out"

of class members who were also part of the state court case from the federal action – but otherwise left the state court case free to proceed.  *Id.* at 238.  Furthermore, the events leading to the issuance of the injunction occurred "after two years of exhaustive work by the parties and the District Court, and after a conditional class certification and preliminary settlement had been negotiated and approved by the District Court."  The Third Circuit found the injunction proper under the "necessary in aid of exception" because of the "complexity of this multidistrict class action in its mature stages" and the "direct[] threat[]" caused by the state court's order effectuating a mass opt-out from the settlement.  *Id.* at 239.

> **b.    The Exception Permitting an Injunction to Protect or Effectuate the Court's Judgment Does Not Apply.**

Although the *Cando* Plaintiffs cite several cases in support of their claim that the injunction they seek falls within the second exception to the Anti-Injunction Act, none of those cases stands for that proposition, and one explicitly rejects it.

None of the parties in *In re Diet Drugs* contended that the exception allowing injunctions necessary to protect or effectuate judgements applied, and the court noted that the exception applies "only where a preclusive judgment has been made."  282 F.3d at 233 n.11.  The propriety of the requested injunction was likewise not discussed in *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 538 (D.N.J. 1997) which was, like *In re Diet Drugs*, *In re Linerboard*, *In re Baldwin-United Corp.*, and unlike this case, a settlement of a long-running multi-district litigation involving the claims of millions class members.  *In re Prudential*, 962 F. Supp. at 478; *In re Diet Drugs*, 282 F. 3d at 225; *In re Linerboard Antitrust Litig.*, 361 F. App'x 392, 395 (3d Cir. 2010); *In re Baldwin-United Corp.*, 770 F.2d at 337.

### 2.    Big City Has Already Tried, and Lost, this Argument in State Court.

Big City has made repeated efforts to put a stop to *Robinson* and clear the way for its reverse-auction settlement with the *Cando* Plaintiffs, but has been thwarted every step of the way.  First, the Honorable Denise L. Sher, A.S.C.J., denied Big City's request for an adjournment *sine die* pending the resolution of *Cando*.  Kessler Decl. ¶ 35.  Then, Justice Sher denied Big City's request for a temporary stay pending the briefing on their attempt to stay *Robinson* via an order to show cause. *Id.* ¶ 40; Ex. 12.  Most recently, on November 29, 2016, Justice Sher denied Big City's request for stay.  *Robinson v. Big City Yonkers, Inc.*, No. 600159/2016, 2016 WL 7032150 (Sup. Ct. Nov. 29, 2016).

Now, the *Cando* Plaintiffs are parroting Big City's failed argument that *Robinson* must be enjoined to prevent confusion "due to competing notices."  Justice Sher has already rejected this argument, stating that, "[w]hile [defendants] characterize[] the possibility of multiple and potential conflicting notices as confusing, it is the view of this Court that they would instead be informative." *Robinson*, 2016 WL 7032150, at *5.  As already discussed above, the *Cando* Parties' failure to include information about *Robinson* in their notice is not only contrary to Second Circuit policy, but demonstrates that they are trying to keep class members in the dark about their rights, so as to consummate their fire-sale settlement.  Justice Sher correctly concluded that it would be "a true injustice" that the class "may very well be faced with a decision as to whether to accept the settlement in [*Cando*] without knowledge of the option of proceeding to judgment in [*Robinson*]." *Robinson*, 2016 WL 7032150, at *2.

### D.    The Court Should Evaluate the Fairness of the Settlement Now, and Not Wait Until Final Approval.

The *Cando* Parties argue that the Court should wait to evaluate the fairness of the settlement until final approval.  *see Cando* ECF No. 108.  Preliminary approval is, however, not

a rubber stamp.  Courts may grant preliminary approval of a settlement and direct notice to the class only if the settlement: (1) "appears to be the product of serious, informed, non-collusive negotiations"; (2) "has no obvious deficiencies"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "falls within the range of possible approval."  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  In light of the "obvious deficiencies" in the settlement raised by Plaintiffs, judicial economy mandates that the Court assess these issues now.  It would waste significant resources to grant preliminary approval and disseminate notice, and then wait for the inevitable objections to a settlement that has obvious flaws that ultimately will preclude its final approval.

Courts frequently find permit intervenors to act as "an offsetting influence" against the loss of adversarial opposition between the parties.  *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 n.5 (D. Mass. 2004) (permitting counsel pursuing independent state class actions against same defendants to appear to represent intervenors, observing that "once an agreement to settle is reached the adversariness of the litigation is often lost"); *see also Litty*, 2015 WL 4698475, at *10 (considering arguments of proposed intervenors in opposition to preliminary approval in deciding motion).

By contrast, the settlements at issue in the cases on which Big City relies in opposing Plaintiffs' submission bore none of the red flags present here.  The objection in *In re Penthouse Executive Club Company Litigation*, was directed solely at the amount of the settlement, and did not claim that the process by which it was reached was inherently unfair.  *See* No. 10 Civ. 1145, 2013 WL 1828598, at *2-3 (S.D.N.Y. Apr. 30, 2013).  The potential objectors in *Casey v. Citibank, N.A.*, sought to intervene even though their competing case was filed *after* the parties in the settled case began mediation, and they did not contend, as Plaintiffs do here, that the

23

settlement was collusive.  *See* No. 13 Civ. 353, 2014 WL 3468188, at *1 (N.D.N.Y. Mar. 21,

2014).  *In re HSBC Bank U.S.A., N.A., Checking Account Overdraft Litigation*, is similarly

inapposite.  49 Misc. 3d 1211(A), 29 N.Y.S.3d 847 (N.Y. Sup. 2015).  There, the court had

already rejected the proposed intervenors' motion to intervene (on a significantly different

factual record than the one established here) when it decided preliminary approval, and there

were no serious questions raised about the reasonableness of the settlement amount or procedural

fairness.  *Id.*  ($30 million settlement represented approximately 50% of the actual damages

sustained and was on the higher end of similar settlements).  Finally, Plaintiffs have already

addressed the many reasons why *Davis* is factually distinguishable and has been widely

criticized.  *See* ECF No. 95 (*Robinson* Pls.' Mem. of Law in Supp. of Mot. to Intervene) at 16-

18; ECF No. 110 (*Robinson* Pls.' Reply to Mot. to Intervene) at 7-9.

## II.   The Court Should Not Certify the Proposed Class.

The Court should deny the motion to certify the class for two reasons.  First, the

circumstances of the settlement and *Cando* Plaintiffs' counsel's conduct in this case and others

raise serious concerns about their adequacy to represent the class in this settlement.  Second, this

case is not a superior mechanism for prosecuting these claims because *Robinson* was first-filed,

is procedurally more advanced, and is prosecuted by superior counsel.

### A.   Proposed Class Counsel is Inadequate.

In appointing class counsel, in addition to the several criteria listed in Fed. R. Civ. P.

23(g)(1)(A), the Court  may consider "any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Here, *Robinson*

Plaintiffs raise several significant concerns that impact *Cando* Plaintiffs' counsel's ability to

represent the class's interests.

### 1.     *Cando* Plaintiffs' Counsel's Conduct in the Settlement Negotiations Demonstrates Its Inability to Fairly Represent the Class.

As detailed above, the settlement that *Cando* Plaintiffs' counsel asks the Court to approve was obtained through a reverse auction, in which the class members' claims were sold out to the lowest bidder. *Cando* Plaintiffs' counsel's willingness to engage in this process renders them unfit to represent the class.

*Cando* Plaintiffs' counsel undermined the mediation process by continuing to negotiate with Big City after *Robinson* Plaintiffs' counsel had departed the mediation under the impression that the parties had reached impasse. *See* Kessler Decl. ¶ 18. Instead of working with *Robinson* Plaintiffs' counsel to negotiate a better settlement for the class members, *Cando* Plaintiffs' counsel ignored repeated invitations to meet from *Robinson* Plaintiffs' counsel, presumably preferring to go it alone and secure the full potential fee for itself – even though that meant getting less money to the class. *See id.* ¶ 24, 25, 27, 29, 30, 33, 34 & Exs. 6, 7, 9. Despite contending that "[a]t all time [sic] during the settlement negotiation process, negotiations were conducted at an arms' length basis," *see* ECF No. 98 (*Cando* Pls.' Mem. of Law) at 11, the record does not reveal that *Cando* Plaintiffs disclosed any of this negotiation history to the Court. Where, as here, "class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011).

### 2.     Courts Routinely Criticize *Cando* Plaintiffs' Counsel's Conduct.

In addition to *Cando* Plaintiffs' counsel's conduct in this case, numerous courts have objected to its conduct in other respects.[10] These Courts' views are consistent with *Cando*

---

[10]     *See, e.g.*, *Kim v. 511 E. 5th Street, LLC*, No. 12 Civ. 8096, 2016 WL 6833928, at *4 (S.D.N.Y. Nov. 7, 2016) (reprimanding Lee Litigation Group for "not adher[ing] to its duty of candor to the Court in its submissions" relating to request for award of attorneys' fees); *Yong Kui*

Plaintiffs' counsel's conduct here, where they seem to have focused more on recovering fees than on the interests of the class.  This alone should disqualify *Cando* Plaintiffs' counsel from proceeding as class counsel here.  *See*, *e.g.*, 7A Fed. Prac. & Proc. Civ. § 1769.1 (3d ed.) ("when the court reviews a proposed settlement for fairness, it may consider counsel's role in obtaining that settlement and any attorney-fee award contained therein. If the desire for fees appears to have colored the lawyer's judgment on what could be obtained for the class, the settlement may be rejected and new or additional counsel appointed"); *Creative Montessori Learning Centers*, 662 F.3d at 917 ("There is no basis for confidence that [class counsel] would prosecute the case in the interest of the class, of which they are the fiduciaries, . . . rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts.").

---

*Chen v. Wai Cafe Inc.*, No. 10 Civ. 7254, 2016 WL 722185, at *6 (S.D.N.Y. Feb. 19, 2016) (declining to sanction Lee Litigation Group for perpetuating a fraud on the court, but noting his "incompetence"); *Gonzalez v. Scalinatella, Inc.*, 112 F.Supp. 3d 5, 25 (S.D.N.Y. June 12, 2015) (criticizing Lee Litigation Group's characterization of past decisions as awarding him hourly rate of $550 and concluding that "this list of decisions—when presented in tandem with the characterization that it unqualifiedly reflects judicial approvals of counsels hourly rate—is, at best, a woefully inartful articulation of the state of this case law and, at worst, a blatantly self-interested misrepresentation to the court.  These cases simply do not stand for the blanket appropriateness of a $550.00–per–hour rate for Mr. Lee and counsel would be well-advised to stop passing them off as such"); *Agudelo v. E&D LLC*, No. 12 Civ. 960, 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) (objecting to Lee Litigation Group's requested fee of more than 65 percent of a $30,000 settlement and urging "counsel and his colleagues at the employment law bar to focus on the fact that the FLSA and related legislation were enacted to help disadvantaged employees, not their lawyers").

It is worth noting that Cando Plaintiffs' counsel did not heed Judge Dolinger's advice in Gonzalez: a year and a half later, Judge Francis critiqued him for precisely the same practice in *Kim*, cited above.  2016 WL 6833928, at *4 ("I therefore join my colleagues in cautioning the firm against similar conduct in the future.").

### 3. *Cando* Plaintiffs' Counsel's Selection of Its Own Claims Administration Firm to Administer the Settlement Presents an Irreconcilable Conflict.

*Cando* Plaintiffs' counsel should also not be appointed class counsel because of its self-dealing to the detriment of the class. *Cando* Plaintiffs' counsel has designated its wholly-owned claims administration firm to administer the settlement at a much higher cost than the market bears and, apparently, without obtaining bids from other companies. This presents a fundamental conflict with the interests of the class. *See* Pls.' Br. at 16, ECF No. 98.

As class counsel, *Cando* Plaintiffs' counsel must ensure that the class is not overcharged for the work of the claims administrator. This role is compromised where, as here, class counsel stands to profit from that same work. This is not an abstract concern. *Robinson* Plaintiffs' counsel provided the Settlement Agreement to three reputable settlement administration firms (American Legal Claim Services, LLC; Rust Consulting, Inc.; and Settlement Services, Inc.) and asked them to prepare bids for the administration of the proposed settlement as currently drafted. The three bids were for $27,944, $20,000, and $17,350, respectively – far less than the $50,000 plus up to $20,000 in "unanticipated" costs that *Cando* Plaintiffs' counsel stands to receive from the class settlement. *See* Kessler Decl. Exs. 15, 16, 17. Based on this comparison, it appears that *Cando* Plaintiffs' counsel's administration firm is significantly overcharging the class for its work – further evidence of its willingness to put its own pecuniary interests ahead of those of the class.

### B. *Robinson* Is a Superior Vehicle by Which to Prosecute These Claims.

*Cando* Plaintiffs fail to establish that certifying a class in the Eastern District of New York is superior to other available methods for fairly and efficiently adjudicating the controversy, as required by Fed. R. Civ. P 23(b)(3).

27

In addition to being first-filed (as *Alcantara*), *Robinson* is significantly further along, with class and collective certification and briefing already complete, and more than 50 opt-in plaintiffs having joined the case.  Kessler Decl. ¶¶ 1, 43.  Counsel in *Robinson* are therefore better positioned to know the potential risks both sides face on the merits than counsel in *Cando*, where no motion practice or discovery has occurred.

Furthermore, *Robinson* is prosecuted by superior counsel.  In stark contrast to the long list of decisions critiquing the performance of Lee Litigation Group, two of the firms representing the *Robinson* Plaintiffs – Shulman Kessler LLP and Outten & Golden LLP ("O&G") – have established track records of exemplary work on behalf of Plaintiffs in wage and hour class actions.[11]  Additionally, the firms are joined in *Robinson* by the experienced state-court litigators at the Law of Offices of Anthony A. Capetola.  *See* Ex. 13 (Capetola Aff.).

---

[11]      *See, e.g.*, *Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL 5395905, at *4 (S.D.N.Y. Sept. 20, 2016) (granting final approval of nationwide Title VII discrimination settlement and finding that O&G's lawyers "are nationally recognized employment class action litigators"); *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016) (granting final approval of FLSA settlement and finding that O&G lawyers "are experienced class action employment lawyers with good reputations among the employment law bar"); *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 Civ. 1510, 2014 WL 4352060, at *8 (N.D.N.Y. Aug. 20, 2014) (noting O&G's lawyers are experienced class action litigations with good reputations); *Perez v. Allstate Insurance Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 423 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (appointing O&G as class counsel in assistant manager misclassification case because it has "experience in handling class actions, sufficient knowledge of the pertinent law, and sufficient resources to commit to this representation"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (O&G "have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G as class counsel in multi-state wage and hour class action); *Torres v. Gristede's Operating Corp.*, No. 4 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) (grocery store co-manager misclassification case in which the court later granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny the

Motion for Preliminary Approval.

Dated:  New York, New York
         December 23, 2016

Respectfully submitted,


/s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Juno Turner
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
jms@outtengolden.com
jturner@outtengolden.com

**SHULMAN KESSLER LLP**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
tkessler@shulmankessler.com

---

Supp. 2d 447 (S.D.N.Y. 2008)); *Garcia v. Pancho Villa's of Huntington Village*, 281 F.R.D. 100, 107 (E.D.N.Y. 2011) ("the Court takes notice that  . . . Shulman Kessler, are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits."); *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 616, 622 (S.D.N.Y. 2012) (noting that Shulman Kessler LLP and Outten & Golden, LLP, "have substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions and are experienced employment lawyers with good reputations among the employment law bar."); *Puglisi v. TD Bank*, No. 13 Civ. 637 (E.D.N.Y. July 30, 2015), Hr'g Tr. at 10-12 (Ex. 14) (indicating that the work by Shulman Kessler LLP and Outten & Golden, LLP – was "excellent" and noting "the high level of service that was provided to the class."); *Rodriguez v. Joseph Eletto Transfer, Inc.*, No. 5431/2016, 2016 WL 7365683, at *2 (Sup. Ct. Dec. 15, 2016) (indicating the work by the plaintiffs' counsel – including Shulman Kessler LLP – was "has established their significant experience in prosecuting employment class actions and their work performed in in representing the interests of class members.").

gkaske@shulmankessler.com

*Attorneys for Proposed Intervenor-Plaintiffs
and the Putative Collective
and Class Actions*