**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARIO CANDO, et al.,
on behalf of themselves,
FLSA Collective Plaintiffs and the Class,

                    Plaintiffs,               Case No.: CV-16-1154

                                           Levy, M.J.

               v.

BIG CITY YONKERS, INC.,
AUTOSTAR AUTOMOTIVE WAREHOUSE,
INC., QPBC INC., MICHIGAN LOGISTICS
INC., NORTHEAST LOGISTICS, INC., and
JOHN DOE CORPORATIONS 1-8,

                    Defendants.


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT**


**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, 2nd Floor
New York, New York 10016
Telephone:  (212) 465-1188
Fax: (212) 465-1181

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT………………………………………………………………1

ARGUMENT………………………………………………………………………………...2

I.     The *Robinson* Plaintiffs' Objection to Preliminary Approval of the Settlement is Premature……………………………………………………………2

II.    The *Robinson* Plaintiffs' Objection to Preliminary Approval of the Settlement Should be Overruled for Lack of Standing………………………..4

III.   The *Robinson* Plaintiffs' Objections are Without Merit and Should be Rejected……………………………………………………………………5

A. The Settlement is Not the Result of a "Reverse Auction"………………6

B. The Settlement Provides Monetary Recovery that is Fair, Reasonable and Adequate……………………………………………………………7

C. The Proposed Notice Satisfies Due Process………………………….12

D. The Proposed Release is Sufficiently Tailored to Plaintiffs' Claims……..14

E. Lee Litigation Group, PLLC Should be Appointed Class Counsel……….15

i. Plaintiffs' counsel is adequate and experienced……………………15

ii. The parties' selection of Advanced Litigation Strategies, LLC…...17 as settlement claims administrator presents no conflict

iii. *Robinson* is not a superior vehicle to prosecute the Class' claims..21

IV.   Issuance of a Preliminary Injunction is Appropriate…………………………24

CONCLUSION………………………………………………………………………………28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242 (7th Cir. 1992)……………………………5

*Alvarado v. Dublin 6 at 115 Broadway Inc., et al.*, No. 14 Civ. 3939 (S.D.N.Y.)…………19

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*,
   398 U.S. 281 (1970)……………………………………………………………………25, 27

*Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014)…………………………………5

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992)…………………………………14

*Cabrera v. Glenoak Enterprises, LLC, et al.*, No. 14 Civ. 5599 (E.D.N.Y.)………………20

*Carillo v. 27-39 East 30 Rest. Corp., et al.*, No. 13 Civ. 4491 (S.D.N.Y.)………………..16, 19

*Chang v. Phoenix Sattelit TV (U.S.), Inc.,* No. 14 Civ. 2686,
   2014 WL 5017838 (S.D.N.Y. Sept. 22, 2014)……………………………………………28

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d at 608 (W.D.N.Y. 2011)…………...2, 3

*Deangelis v. Corzine,* 1:11-cv-07866 (S.D.N.Y. Jul, 14, 2016)……………………………26

*Flanagan v. Arnaiz,* 143 F.3d 540 (9th Cir. 1998)………………………………………..25

*Flores, et al. v. KC 53 LLC, et al.*, No. 12 Civ. 8095 (S.D.N.Y.)…………………………16, 19

*Galvez v. Lucky Pearl, LLC, et al.*, No. 15 Civ. 5177 (S.D.N.Y.)…………………………20

*Gross v. Barnett Banks, Inc.,* 934 F. Supp. 1340 (M.D. Fla 1995)…………………………25

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)…………………………14, 15

*Guaman v. 5 "M" Corp., et al.*, No. 13 Civ. 3820 (S.D.N.Y.)……………………………..18, 19

*Han v. Sterling National Mortgage Company Inc., et al.*, No. 09 Civ. 5589 (E.D.N.Y.)…..16

*Hernandez v. McGee's Bar & Grill, Inc., et al.*, No. 15 Civ. 6067 (S.D.N.Y.)…………….20

*In re Baldwin-United Corp.* 770 F.2d 328 (2d Cir. 1985) …………………………………25, 27

*In re Joint E. & S. Dist. Asbestos Litig.,* 134 F.R.D. 32 (E.D.N.Y. 1990)…………………25

*In re JP Morgan Chase & Co., Securities Litig.,* 1:12-cv-03879 (S.D.N.Y. Jan. 19, 2016)..26

*In re Medical X-Ray Film Antitrust Litig.*, 93-CV-5904,
   1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ……………………………………………6

*In re Mexico Money Transfer Litig.*, No. 98 C 2407, 98 C 2408,
   1999 WL 1011788 (N.D. Ill. Oct. 19, 1999)……………………………………………13, 25

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993)……………....13

*In re Penthouse Exec. Club Compensation Litig.*,
   2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)……………………………………………2, 11

*In re Prudential Secs. Inc. Ltd. P'Ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 2005) …………6

*In re Warner Chilcott Ltd. Sec. Litig.,* 06-Civ-11515,
   2008 WL5110904 (S.D.N.Y. Nov. 20, 2008)……………………………………………..6

*In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35 (2d Cir. 1986) …………………………..10

*Karvaly v. eBay, Inc.*, 245 F.R.D. 71 (E.D.N.Y. 2007) ………………………………………6

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., et al.*,
   No. 12 Civ. 0265 (S.D.N.Y.)…………………………………………………………16, 19

*Lin, et al. v. Benihana National Corp., et al.,* 10 Civ. 1335 (S.D.N.Y.)……………………18, 19

*Long, et al. v. HSBC USA Inc., et al.*, No. 14 Civ. 6233 (S.D.N.Y. September 13, 2016)…24

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983)………………………………………15

*Mills v. Captial One, N.A.*, No. 14 Civ. 1937, (S.D.N.Y. September 30, 2015)……………24

*Mohamed v. Ess-a-Bagel*, No. 13 Civ. 8726 (E.D.N.Y.)……………………………………17

*Mohamed v. Sophie's Cuban Cuisine, Inc., et al.*, No. 14 Civ. 3099 (S.D.N.Y.)…………..20

*Morris, et al. v. Affinity Health Plans, Inc.*, S.D.N.Y. No. 09-cv-1932……………………22

*Nicotra v. Babo Botanicals, LLC*, 2:16-00296 (E.D.N.Y. Sept. 7, 2016)…………………..26

*Ortiz v. Chop't Creative Salad Company LLC, et al.*,
   No. 13 Civ. 2541 (S.D.N.Y. January 16, 2015)………………………………………23

*Perez v. Dos Toros, LLC, et al.*, No. 14 Civ. 9183 (S.D.N.Y.)……………………………16, 17

*Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)……………………………………..10

*Rapoaport-Hecht v. Seventh Generation, Inc.,* 7:14-cv-09087 (S.D.N.Y. Oct 12, 2016)….26

*Romero v. La Revise Associates, LLC, et al.*, No. 12 Civ. 8324 (S.D.N.Y.)………………16, 19

*Sanchez v. JMP Ventures, L.L.C., et al.,* No. 13 Civ. 7264 (S.D.N.Y.)……………………16, 19

*Santana, et al. v. Fishlegs LLC, et al*., No. 13 Civ. 1628 (S.D.N.Y.)………………………16, 19

*Sanjaya, et al. v. Inakaya USA Inc., et al.*, 12 Civ. 4500 (S.D.N.Y.)………………………16

*Shahriar v. Sukhmani Inc., et al.,* No. 13 Civ. 3823 (S.D.N.Y.)……………………….……19

*Sierra v. Triple J. Associates of Queens, Inc*., No 12 Civ. 4462 (E.D.N.Y.)………………16, 17

*Solorio v. 142 Mercer Street, LLC, et al.*, No. 15 Civ. 5817 (S.D.N.Y.)…………………..20

*Standard Microsystems Corp. v. Texas Instruments Inc.,* 916 F. 2d 58 (2d Cir. 1990)……25

*States of New York & Maryland v. Nintendo of America, Inc.*,
       775 F. Supp. 676 (S.D.N.Y. 1991)……………………………………………………..13

*Supnick v. Fogel*, 989 F.2d 93 (2d Cir. 1993)……………………………………………5

*U.S. v. Schurkman,* 728 F.3d 129 (2d Cir. 2013)………………………………………….26, 27

*Viafara v. MCIZ Corp., et al*., No 12 Civ. 7452 (S.D.N.Y.)………………………………16, 18

*Williams v. General Elec. Capital Auto Lease*, No. 94 C 7410,
       1995 WL 765266, (N.D. Ill. Dec. 26, 1995)………………………………………...13

*Wright v. Linkus Enterprises, Inc.,* 259 F.R.D. 468 (E.D. Cal. 2009)…………………….25

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012)……………………………………………….27

*Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016)………..…2, 3, 11

## Other Authorities

William B. Rubenstein, et al., *Newberg on Class Actions* § 11:55 (4th ed. 2011)…………..4

# PRELIMINARY STATEMENT[1]

Plaintiffs respectfully submit this reply memorandum of law in response to the *Robinson* Plaintiffs' opposition to plaintiffs' motion for preliminary approval of class action settlement and approval of proposed notice of settlement.

The *Robinson* Plaintiffs' objection to preliminary approval of the Plaintiffs' proposed settlement with Defendants is procedurally and substantively improper, and thus, must be overruled.  First, the objection must be overruled as it is premature.  It is well-settled that such objections cannot be raised until the notice and fairness hearing stage of the settlement approval process.  Second, the objection should be overruled because *Robinson* Plaintiffs lack standing to object to the settlement.  Once preliminary approval is granted and notice is issued, the *Robinson* Plaintiffs will likely opt-out to pursue their state court claims in *Robinson*.  Individuals that opt-out are no longer class members and thus, do not have standing to object to a settlement.  Finally, the *Robinson* Plaintiffs' objections to preliminary approval should be overruled as they are without merit and as the *Robinson* Plaintiffs' have failed to articulate any cognizable reason why preliminary approval should not be granted.

Ever since the moment that the Parties reached a settlement in principle following the settlement conference before Magistrate Judge Levy, the *Robinson* Plaintiffs have attempted to

---

[1] For purposes of this motion, Plaintiffs use the following definitions: the term "Plaintiffs" refers to the Named Plaintiffs and the represented putative Class Members in *Cando*; the "*Robinson* Plaintiffs" refers to the intervenor-movants, plaintiffs in the *Robinson* state court litigation who have filed a motion to intervene and opposed preliminary approval in *Cando*; "Defendants" refers to Big City Automotive, Big City Automotive Warehouse, 450 Concord Avenue Corp., Big City Yonkers, Inc., D A L Holding Co., Inc., Glenwood Auto Parts Corp., KKLDS, Inc., All Parts Inc., QPBC Inc., 20-15 Atlantic Corp., Autostar Automotive Warehouse, Inc., Williamsburg Automotive Realty, LLC, Ryle Realty Corp., Linden BC, Inc., and Big City Englewood, Inc., and each of their respective past and present affiliates, parents, subsidiaries, related companies, trade, trading, business, or "doing business as" names/entities, owners, directors, officers, shareholders, predecessors, benefit plans, management committees, members, agents, employees, trustees, representatives, attorneys, shareholders, partners, benefit plan fiduciaries and administrators, successors, and assigns, each in their capacity as such, including any Defendant identified as a "John Doe" or "Jane Doe" person or entity in this action; "*Cando*" refers to the instant action (*Cando v. Big City Yonkers, Inc., et al.*, No. 16 Civ. 1154 (RML) (E.D.N.Y.); and the "Parties" refers to the parties in *Cando*, Plaintiffs and Defendants.

disrupt the settlement and thwart the settlement process by any means necessary.  Beginning with their motion to intervene and now with their opposition to preliminary approval, they have engaged in a pattern of activity - misstating facts and using unsupported assertions and misapplications of law - to waste the parties' and the Court's time, delaying the settlement and causing unnecessary legal fees to accrue.  It is respectfully submitted that the Court should not permit such gambit to succeed.

## ARGUMENT

I.       **The *Robinson* Plaintiffs' Objection to Preliminary Approval of the Settlement is Premature**

Assuming *arguendo* that the *Robinson* Plaintiffs, non-party intervenor movants, have standing to object to the settlement (which Plaintiffs argue in Section II, *infra*, they do not), their objection at the preliminary approval stage is both premature and improper as a matter of law.

It is well-settled that such objections cannot be raised until the notice and fairness hearing stage of the settlement approval process.  *See, e.g., Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598, at \*5 (E.D.N.Y. Apr. 7, 2016) (Kuntz, J.) ("Plaintiff Yim's disapproval…is not an impediment to preliminary approval, however, because the proper time for the Court to consider objections to a settlement is at the final approval hearing"); *In re Penthouse Exec. Club Compensation Litig.*, 2013 WL 1828598, at \*2 (S.D.N.Y. Apr. 30, 2013) (Wood, J.) (granting preliminary settlement approval despite named plaintiffs' objections because "a plaintiff's dissatisfaction with certain settlement terms is not a bar to preliminary approval" and the "proper time for the Court to consider" those objections "is at the final approval hearing"); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d at 608 (W.D.N.Y. 2011) (Larimer, J.) (granting preliminary settlement approval and noting that "there is no reason why" the objections of proposed intervenors to the settlement "cannot be fully and adequately aired at the fairness

hearing and in the context of the Court's decision whether to finally approve the settlement"); the Court in *Yim* further noting "[m]oreover, Plaintiff Yim has the right to opt out of the settlement and pursue his claim individually <u>after</u> the Court grants preliminary approval.  See *Davis* at 601, 606 (stating that at the preliminary approval stage that "any class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately").

While there is no bar to the *Robinson* Plaintiffs objecting to the settlement in the instant action, such objection is premature and may only be lodged following the Court's granting of preliminary approval, pursuant to the approved notice and objection/opt-out process.  For such reason, the *Robinson* Plaintiffs' premature objection should be overruled and preliminary approval should be granted.

If the Court denies preliminary approval on the basis of the *Robinson* Plaintiffs' premature and baseless objection, it will not only set a bad precedent but is contrary to public policy.  Such a decision will allow any firms to intervene in and oppose a settlement, arbitrarily arguing the settlement amount is "too low," even though the settlement would benefit the class. There are firms that already specialize in such activity, ingratiating themselves in cases and attempting to derail settlements with one goal in mind, large attorneys' fees.  The undersigned has had a recent experience with a California law firm that did just that in one of our cases, whom we later discovered had engaged in similar activity in other cases.  In the instant action, if the *Robinson* Plaintiffs succeed in this business model of hijacking a case, destroying a settlement and expecting a payoff.   The only people that will benefit from the years of litigation to follow if the settlement is not approved is *Robinson* Plaintiffs' counsel, Troy Kessler, Outten & Golden and Anthony Capetola, <u>not</u> the class.  The class would contrastingly benefit, not from

3

drawn out litigation, but from expedient settlement.  The speed of a settlement is especially important on a class case as class members addresses change or get stale as time goes on, often times with class members moving, with no forwarding address information or ability to skip trace.  A speedy settlement allows the most possible class members to be notified and participate in a settlement and to reap the rewards by receiving their settlement checks.

## II.    The *Robinson* Plaintiffs' Objection to Preliminary Approval of the Settlement Should Be Overruled for Lack of Standing

The *Robinson* Plaintiffs' objections to the settlement should further be overruled because they lack standing to object to the settlement.  Although, at this moment, the *Robinson* Plaintiffs may be considered putative class members[2], they will **not** be class members once they opt out of the settlement (which they purportedly will do in order to pursue their claims in *Robinson*, currently pending in New York Supreme Court).  Generally, non-class members do not have standing to object to a class settlement.  See 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11:55 (4th ed. 2011)

> "Individuals who are not class members because they are outside the definition of the class **or have opted out** are on a different footing [from class members].  They are not subject to *res judicacta* by the settlement.  Class action settlements typically leave intact the legal claims of others.  Therefore, non-settling parties in multiparty cases ordinarily lack standing to object to settlements..."

If their objection was timely interposed, it would be barred for lack of standing.  To avoid the standing conundrum, it appears the *Robinson* Plaintiffs have purposely prematurely objected to the settlement, rather than at the appropriate time after notice has issued and they have opted-out, to give the illusion that they are "class members" with standing to object.  However, once preliminary approval is granted and the *Robinson* Plaintiffs opt-out, they will no longer be

---

[2] Plaintiffs have not moved for class certification nor has a class has been certified.  The putative "class" referred to herein is the class for which a settlement has been reached, which is pending for preliminary approval.  Unless and until preliminary approval is granted, there is not yet a "class."

considered class members and thus, their standing to object evaporates.  If their objections were timely interposed after the Court grants preliminary approval and notice is issued, and after the *Robinson* Plaintiffs opt-out, they would not have standing to object.  As such, the premature objections of the *Robinson* Plaintiffs should be treated as third party objections.

For a third party to object to a settlement under Rule 23, the third party must "demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014); *see also Supnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993).  Formal legal prejudice "exists only in those rare circumstances when, for example, the settlement agreement formally strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at trial. *Bhatia*, at *3.  "[A] settlement which does not prevent the later assertion of a non-settling party's claims (although it may spawn additional litigation to vindicate such claims), does not cause the non-settling party of a legal 'formal' legal prejudice." Id. at *4 (citing *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247-48 (7th Cir. 1992)).  Here, the *Robinson* Plaintiffs will not be prejudiced by the settlement as they have the right to opt out of the settlement, in which case they can proceed on their own behalf in their state court case.

As the *Robinson* Plaintiffs have not shown that they will sustain any formal legal prejudice as a result of the approval of the settlement, they do not have standing to object.

III.   **The *Robinson* Plaintiffs' Objections Are Without Merit and Should be Rejected**

Notwithstanding the fact that the *Robinson* Plaintiffs' objections are procedurally defective due to prematurity and lack of standing, such objections are also substantively without

5

merit and must be rejected.  The *Robinson* Plaintiffs raise several objections to the settlement, which may be summarized as follows:

- First, the Robinson Plaintiffs object that the settlement is deficient because it results from a "reverse auction."

- Second, the *Robinson* Plaintiffs object that the settlement amount is inadequate because it is not within the range of possible approval.

- Third, the *Robinson* Plaintiffs object that the proposed Notice does not provide adequate information to class members about the pending *Robinson* state court lawsuit.

- Fourth, the *Robinson* Plaintiffs object that the settlement is inadequate because the release is too broad.

- Finally, the *Robinson* Plaintiffs object to the appointment of Lee Litigation Group, PLLC as class counsel.

 As detailed below, each of these assertions is meritless and should therefore be rejected.

### A.    <u>The Settlement is Not the Result of a "Reverse Auction"</u>

"Although a complete analysis is required for final approval of a class action settlement, at the preliminary approval stage, the Court need only find that the proposed settlement fits 'within the range of possible approval' to proceed." *Warner*, 2008 WL 5110904, at *2 (quoting *In re Prudential Secs. Inc. Ltd. P'Ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 2005) (Pollack, J.). "In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) (Glasser, J.).  "Preliminary approval of settlements should be given if the settlement is the result of serious, informed, and non-collusive negotiations and the proposed settlement has no obvious deficiencies." Id. (quoting *In re Medical X-Ray Film Antitrust Litig.*, 93-CV-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (Sifton, J.).

Here, the settlement clearly fits within the range of possible approval to proceed and preliminary approval should be granted so notice may issue to the class.

As to the *Robinson* Plaintiffs' argument that the settlement is the result of a "reverse auction," such absurd contention has been briefed extensively in connection with the *Robinson* Plaintiffs' motion to intervene. As such, Plaintiffs do not feel it necessary to regurgitate the arguments already pending before the Court on the intervention motion[3], but instead, incorporate by reference Defendants' arguments in their memorandum of law in opposition to proposed intervenor-plaintiffs' motion to intervene (ECF Dkt. No. 102), to which Plaintiffs joined in support, and the statements of the undersigned in the Declaration of C.K. Lee submitted in opposition to *Robinson* Plaintiffs' motion to intervene (ECF Dkt. No. 107).

As is evident from the intervention briefs and the Declaration of C.K. Lee in opposition, and as the Court is well aware from the October 7, 2016 Settlement Conference, the proposed settlement resulted from the parties' extensive arms-length negotiations. Once again, as they did with their motion to intervene, the *Robinson* Plaintiffs use material misstatements, out-of-Circuit case law and other legal gymnastics to try to procure the relief they desperately seek. However, their baseless opposition to the Plaintiffs' preliminary approval motion shows only that their intention is to disrupt the settlement and thwart the settlement process with one goal in mind, securing a "better deal" resulting in more legal fees to the *Robinson* Plaintiffs' counsel.

**B.**     **The Settlement Provides Monetary Recovery that is Fair, Reasonable and Adequate**

---

[3] Throughout their opposition, the *Robinson* Plaintiffs attempt to mislead the Court by stating on several occasions that Defendants insisted that C.K. Lee attend the August 1, 2016 mediation and that Defendants would not mediate without him. Much of their flawed argument regarding the procedural and substantive unfairness of the settlement flows from this notion that Defendants insisted on a joint mediation, sized up both sets of plaintiffs and counsel, and settled with the group in the weaker bargaining position. This contention is simply untrue. In prior discussions and correspondence with the undersigned, Defendants' counsel made clear that they were going to mediate with the *Robinson* Plaintiffs, regardless of whether C.K. Lee and the *Cando* Plaintiffs' participated.

The *Robinson* Plaintiffs spend a significant portion of their opposition arguing that the parties fail to demonstrate that the settlement amount falls within the range of possible approval. By using fuzzy math, guessing about what occurred during a confidential settlement conference, misinterpreting terms of the settlement and ignoring the high risk associated with this "all or nothing" misclassification case, the *Robinson* Plaintiffs use every trick in the book to attempt to persuade the Court. However, their tactics are unavailing.

In an attempt to convince the Court of some impropriety involving the settlement, a settlement which was in fact overseen by the Court itself during a lengthy settlement conference with Magistrate Judge Levy, the *Robinson* Plaintiffs at best misinterpret, and at worst misstate one of the settlement's material terms. As to the any unclaimed funds, which are to be donated to a *cy pres* charitable donation per the settlement, the parties have first provided a carve-out for "unforeseen costs" prior to the *cy pres* distribution. Without any factual basis, the *Robinson* Plaintiffs inform the court that such "unforeseen costs" are really a payment to Advanced Litigation Strategies, LLC ("ALS"), the settlement administrator, implying that this is extra money that will not go to the class, but will instead, end up in C.K. Lee's pocket[4]. This could not be further from the truth. The "unforeseen" administration costs contemplated are solely designed to compensate class members and are NOT in any way, further administration fees for ALS. For example, the number of class members weeks worked are calculated according to information provided by Defendants to the administrator. However, as is often the case with settlement administration, a handful of class members usually end up contacting the administrator regarding their check amounts, claiming that they in fact worked longer periods than those originally provided by Defendants. Once the employment information is verified with

---

[4] As disclosed in the Plaintiffs' motion for preliminary approval, ALS is an administration company under common control of Plaintiffs' counsel.

Defendants, if class members did in fact work longer work periods than originally calculated, it additional money will have to be paid to compensate them for their increased settlement allocation.  The settlement carve out for unforeseen costs would cover this amount.  Another common scenario in which "unforeseen costs" arise in class settlement administration involves class members that are inadvertently left off of the class list, who later contact the administrator (usually once they find out that their co-workers or ex-co-workers have received settlement payments) alleging they should also be included in the class.  Again, if their employment is verified by Defendant, this will result in additional checks having to be cut and monies paid to compensate those class members added to the class list at a later date.  Such funds would come under the "unforeseen costs" umbrella.

The next of the *Robinson* Plaintiffs' unsupported and incorrect contentions is that Plaintiffs' counsel agreed to a lower settlement amount to allow for the possibility of ALS acting as settlement administrator.  This is simply untrue.  During the settlement negotiations, both for the prior settlement figure contemplating reversion and later for the ultimate non-reversionary settlement amount, the parties agreed that ALS would act as administrator.  The class size was the same in either scenario (1,709) and thus, the settlement administrator's proposed fee ($50,000) was the same in either scenario.  There was no additional money promised to ALS in exchanged for the parties agreeing to the lower, non-reversionary settlement amount.

Moreover, while the *Robinson* Plaintiffs attempt to argue that LLG receives a windfall based on the reduced settlement amount, in fact, LLG receives less money.  Had the reversionary settlement been finalized at $750,000, LLG would have applied for one third of the settlement fund (based on the percentage of fund method), plus costs, on final approval ($250,000 plus costs), rather than 1/3 of $565,000 fund, plus costs ($188,333 plus costs) which is now sought.

As both LLG's costs and ALS's administration fees would have remained the same in either scenario, the decreased settlement amount actually results in approximately $61,667 less to Plaintiffs' counsel.  However, because the $565,000 settlement provides for no reversion, it is a more favorable guaranteed deal for the class and on such basis LLG agreed to the settlement even though it would result in reduced legal fees to Plaintiffs' counsel.

Next, the *Robinson* Plaintiffs argue against the *cy pres* term of the settlement, alleging it is inappropriate for the Court to determine that unclaimed funds may be donated to a *cy pres* without determining if they first may be redistributed to the class.  The *Robinson* Plaintiffs' objection to the proposed *cy pres* distribution procedure is inappropriate.  First, Courts in this Circuit and District routinely approve class settlements containing *cy pres* donations of unclaimed funds as a material term without a redistribution.  Second, there may never be a *cy pres* distribution.  A donation of leftover funds to charity would occur only if funds are unclaimed.  Lastly, the Second Circuit has held that a district court may not "dictate the terms of a class settlement" but that a Judge may only "approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982)).  When the Plaintiffs and Defendants signed the Settlement Agreement, they contracted to terms to the settlement, including the *cy pres* donation of unclaimed funds, which the Court is not now authorized to modify on preliminary approval.  The Court may preliminarily approve or disapprove the settlement based on its fairness, reasonableness and adequacy to the settling parties, but it may not add or subtract terms – here, eliminating the *cy pres* donation term and replacing it with a redistribution term, at the request of *Robinson* Plaintiffs - to the terms agreed on by the parties in the Settlement Agreement.

10

Next, the *Robinson* Plaintiffs object to the estimated per week award class members will receive under the settlement.  Such objection, again, is premature.  See *Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO) (E.D.N.Y. Mar. 31, 2016) in which Hon. William F. Kuntz held "Plaintiff Yim's disapproval of the amount he will receive under the settlement is not an impediment to preliminary approval, however, because the proper time for the Court to consider objections to a settlement is at the final approval hearing.  See *In re Penthouse Executive Club Comnpensation Litig.*, 10-Civ-1145, 2013 WL 1828598, at *2 (S.D.N.Y. April 30, 2013) (Wood, J.) (granting preliminary settlement approval despite named plaintiffs' objections because "a plaintiff's dissatisfaction with certain settlement terms is not a bar to preliminary approval" and the "proper time for the Court to consider" those objections is "at the final approval hearing.).

Lastly, and perhaps most importantly, the *Robinson* Plaintiffs pick and choose statements in Plaintiffs' moving papers to argue that the percentage recovery is unfair, while completely ignoring pages of arguments in those same motion papers which provide context and explanation as to the various permutations of damages calculations.  Additionally, the *Robinson* Plaintiffs fail to acknowledge the most important factor in determining percentage recovery – that this is an extremely high risk "all or nothing case" which may result in **ZERO** recovery to Plaintiffs.

In their moving papers, Plaintiffs used the *Novartis* settlement and subsequent United States Supreme Court decision as an illustration to underscore the greater-than-usual litigation risks associated with "all or nothing" cases.  In no uncertain terms, while Plaintiffs may have originally formulated a $95,000,000 "best case" scenario prior to mediation – which Defendants contend and Plaintiffs acknowledge is aggressive and based on several assumptions – Plaintiffs are only one decision away from being left with $0.00.  And given that a New York State

appellate court, along with two State administrative agencies, have already determined some of Defendants' drivers were properly classified as independent contractors, it is highly possible that this Court may reach the same conclusion, leaving Plaintiffs empty handed.

The high litigation risk and "all or nothing" stakes were further emphasized to the Court in the Declaration of C.K. Lee filed in opposition to *Robinson* Plaintiffs' motion to intervene:

> "[p]articularly after speaking with and observing Frank Robinson, the lead claimant in the *Robinson* case who participated in the mediation with Ralph Berger, I was convinced that it was in the best interest of the class to engage in an expedient settlement prior to extended litigation…" ECF Dkt No. 107 at ¶ 4.

Based on the undersigned's observations, Plaintiffs believe Mr. Robinson may not be qualified as a class representative.  Due to privilege issues, if the Court feels necessary, Plaintiffs' counsel would be willing to submit or to disclose to the Court the factual results of his conversation with Frank Robinson *in camera*.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is fair and reasonable, especially because, if Plaintiffs fail to prove that they were misclassified as independent contractors, then they are not entitled to any recovery whatsoever.  If the Court, like the court in *Sanabria* and the NYS Unemployment and Workers' Compensation Appeal Boards, finds in favor of Defendants on the misclassification issue, then this case is worth nothing.  It must be emphasized that, in evaluating the reasonableness of a settlement amount, courts must compare the settlement amount to the plaintiffs' maximum possible recovery, **discounted for the risks of litigation**, which here, are substantial.

### C.  The Proposed Notice Satisfies Due Process

The *Robinson* Plaintiffs' argument that the proposed notice does not adequately appraise potential class members of the existence of the *Robinson* state court case and their option to

participate in that case fails because *Robinson* has not been certified as either a collective or a class action. At this moment it is an individual state court action with motions for collective and class certification pending. Federal Rule of Civil Procedure 23 does not require a notice to putative class members to include information about other separate state court litigations.

The content of the proposed notice fully complies with due process and Fed. R. Civ. P. 23. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. The detailed information in the notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B). Courts have approved class notices even when they provided only general information about a settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The proposed notice exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

*Robinson* Plaintiffs' request that if preliminary approval is granted, the Court should require the parties to amend their proposed notice to prominently describe the *Robinson* state court action and provide *Robinson* Plaintiffs' counsel's contact information is without legal basis and must be denied. *See States of New York & Maryland v. Nintendo of America, Inc.*, 775 F. Supp. 676 (S.D.N.Y. 1991) (declaring that the settling parties "are under no obligation to advertise the existence of other" class actions); *see also In re Mexico Money Transfer Litig.*, No. 98 C 2407, 98 C 2408, 1999 WL 1011788, at *4 (N.D. Ill. Oct. 19, 1999) (refusing to require notice of other class actions since "class members could be burdened and confused by potentially receiving several class notifications"); *Williams v. General Elec. Capital Auto Lease*, No. 94 C 7410, 1995 WL 765266, at *6-7 (N.D. Ill. Dec. 26, 1995) (refusing to require the notice to

include information regarding the other similar class actions); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992) (rejecting suggestion to include "parallel proceeding in a state court" in notice), *appeal dismissed*, 995 F.2d 1066 (6th Cir. 1993).

### D.     The Proposed Release is Sufficiently Tailored to Plaintiffs' Claims

The *Robinson* Plaintiffs argue the settlement should not be approved because the release is overbroad as it requires class members to release "claims[5]" not mentioned in the notice. Such argument is misguided. The notice clearly summarizes the released claims and refers Class Members to the Settlement Agreement for further detail.

First, the release of retaliation claims is both appropriate and narrowly tailored to the Plaintiffs pleaded claims. See First Amended Complaint, ¶¶1, 2, 16, 73 and 85, pleading retaliation claims. The Settlement Agreement, Section 4, clearly details the terms of the release. Section 1.25 of the Settlement Agreement defines "Released Claims" and sets forth all claims being released, including in Section 1.25 subsection (8), "for retaliation."

"As a general rule, the contents of a settlement notice must 'fairly appraise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975). "Class members are not expected to rely upon the notices as a complete source of settlement information…[and] [a]ny ambiguities regarding the substantive aspects of the settlement [can] be cleared up by obtaining a copy of the agreement as provided for in the notice." *Id*.

Here, as is routine practice, the notice contains a summarized description of the Release. It provides in Section 9, captioned "Procedures," that unless Class Members opt out, they will

---

[5] Although the *Robinson* Plaintiffs refer to unmentioned "claims" plural, the only claim they refer to is a singular claim for retaliation.

"…automatically release Big City from all New York Labor Law claims that were asserted or raised, or that could have been asserted or raised, in this case."  The notice further informs Class Members that by endorsing, depositing or cashing their settlement check, they will:

> "also automatically release Big City from all Fair Labor Standards Act claims that were asserted or raised, or that could have been asserted or raised, in this case.  Releasing your claims means that you cannot sue, continue to sue, or be party to any other lawsuit against Big City regarding the claims brought in this case, although you may still retain certain federal law claims.  It also means that all of the Court's orders, and the releases of claims set forth in the parties' Settlement Agreement, will apply to you and legally bind you."

Finally, the notice informs Class Members in Section 18 that "**[t]his Notice summarizes the proposed settlement.  More details are in the Settlement Agreement.  You can review the settlement agreement by asking for a copy of the Settlement Agreement by writing or calling the Settlement Administrator.**"

For the avoidance of doubt, the notice may also be modified to provide additional detail regarding the release provision and released claims, if the Court deems it necessary.

Given that the notice informs Class Members of the primary terms of the Release, that they could avoid having their claims released by opting out, and explains where they could review the settlement agreement and release in its totality, nothing more is required.  See *Grunin*, 513 F.2d at 122; *Maher v. Zapata Corp.*, 714 F.2d 436, 452 (5th Cir. 1983) ("By telling the shareholders that the descriptions were only summaries' and the court files were open for inspection, the notice implicitly invited them to conduct a further investigation, if they so desired, on the basis for, the background of, and the legal implications of the settlement.")

    **E.**    <u>**Lee Litigation Group, PLLC Should Be Appointed Class Counsel**</u>

        **i.**    **Plaintiffs' counsel is adequate and experienced**

Plaintiffs' Counsel should be appointed as Class Counsel because they meet all of the

requirements of Federal Rule of Civil Procedure 23(g).  The *Robinson* Plaintiffs have offered virtually no factual basis to support their argument that Lee Litigation Group, PLLC ("LLG") fails to meet the criteria for appointment as Class Counsel, other than a few citations to critical judicial language, mostly relating to fee applications[6].

As was detailed at length in Plaintiffs' memorandum of law in support of preliminary approval, LLG has substantial experience prosecuting large-scale wage and hour class and collective actions, and has been appointed class counsel in more than 20 class action litigations in the Eastern and Southern Districts.  See, *inter alia*, *Santana, et al. v. Fishlegs LLC, et al*., No. 13 Civ. 1628 (S.D.N.Y. 2016); *Perez v. Dos Toros, LLC, et al*., No. 14 Civ. 9183 (S.D.N.Y. 2016); *Sanchez v. JMP Ventures, L.L.C., et al.,* No. 13 Civ. 7264 (S.D.N.Y. 2015); *Carillo v. 27-39 East 30 Rest. Corp., et al*., No. 13 Civ. 4491 (S.D.N.Y. 2015); *Romero v. La Revise Associates, LLC, et al.*, No. 12 Civ. 8324 (S.D.N.Y.); *Viafara v. MCIZ Corp., et al*., No 12 Civ. 7452 (S.D.N.Y.); *Sierra v. Triple J. Associates of Queens, Inc*., No 12 Civ. 4462 (E.D.N.Y.); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., et al*., No. 12 Civ. 0265 (S.D.N.Y.); *Flores, et al. v. KC 53 LLC, et al.*, No. 12 Civ. 8095 (S.D.N.Y.); *Sanjaya, et al. v. Inakaya USA Inc., et al.*, 12 Civ. 4500 (S.D.N.Y.).

Moreover, Judges in this Circuit and District have repeatedly praised C.K. Lee and Lee Litigation Group for their work in class action litigations, a sampling of which is detailed below:

- Hon. Joseph F. Bianco, U.S.D.J., stated: "The quality of the representation here has been extremely high.  As I pointed out, all the papers in this case have been of high quality and its clear to me that class counsel who has significant experience, did an excellent job or representing the class and achieving an excellent result for the class under the circumstances." *Han v. Sterling National Mortgage Company Inc., et al*., No. 09 Civ. 5589 (E.D.N.Y.);

---

[6] *Robinson* Plaintiffs' citation on page 26 to *Chen v. Wai Café Inc*. mischaracterizes Judge Francis's Opinion, in which he explained the legal standard, that "mere incompetence is not a fraud on the Court." He did not note, as *Robinson* Plaintiffs allege, LLG's "incompetence."

- Hon. Brian M. Cogan, U.S.D.J., stated: "[Among] plaintiffs' lawyers who bring [FLSA] actions, [C.K. Lee] is definitely at the high end in terms of [his] ability to prosecute these cases…"  *Sierra v. Triple J. Associates of Queens, Inc.*, No. 12 Civ. 4462 (E.D.N.Y.);

- Hon. Katherine Polk Failla, U.S.D.J., stated: "I have no doubt as to the quality of the representation in this case.  I know both [Mr. Lee and Ms. Seelig] who have appeared before me in this and many other cases, and they do have substantial and very useful experience in this regard…" *Perez v. Dos Toros, LLC, et al*., No. 14 Civ. 9183 (S.D.N.Y.);

- Hon. Lewis A. Kaplan, U.S.D.J., stated: "I have nothing but admiration for the pro bono and other services that [C.K. Lee] render[s] for clients who do not have any advantages. I not only approve, but admire [his work]…" *Mohamed v. Ess-a-Bagel*, No. 13 Civ. 8726 (E.D.N.Y.).

### ii.     The parties' selection of Advanced Litigation Strategies, LLC as settlement claims administrator presents no conflict

Without any factual or legal basis, the *Robinson* Plaintiffs argue that the selection of Advanced Litigation Strategies, LLC ("ALS") as settlement claims administrator is evidence of Plaintiffs' counsel's "self-dealing" and presents an "irreconcilable conflict" as ALS is an administration company under common control of Plaintiffs' counsel.   Such allegation is unsupported by any caselaw and is contrary to the facts.

First, Plaintiffs did not "designate" ALS as the settlement administrator.  The selection of ALS as settlement administrator was agreed upon by both Plaintiffs and Defendants during the settlement conference overseen by Magistrate Judge Levy and in subsequent negotiations.  In addition, the appointment of ALS as settlement administrator is subject to the Court's approval and is not a one-sided selection by Plaintiffs' counsel.  If the Court takes issue with the selected administrator, it may simply order the parties to select an alternate administrator.

Second, the *Robinson* Plaintiffs' contention that the administration fee sought by ALS for administering this extremely large, over 1,700 person class settlement ($50,000), is "excessive" based on bids that the *Robinson* Plaintiffs secured from settlement administration companies

(American Legal Claims Services, RUST Consulting and Settlement Services, Inc.) is without merit[7].  Of course, different companies charge different rates based on several variables such as: the size of the settlement class, relationship with counsel, experience in administering settlements, skill, and various other factors. However, the three administration proposals submitted by the *Robinson* Plaintiffs are simply defective as they do not mirror the terms of the settlement, leaving out key costly administration elements which account for the lowered cost estimates.  Specifically, the administration estimates obtained by the *Robinson* Plaintiffs: (1) leave out  the inclusion of a bilingual (English/Spanish) call-center with live representatives (not just a menu recording), a must for effective settlement administration, (2) do not include "claims processing," a significant cost in administration, (3) assume one work state, when class members are actually from two work states (New York and New Jersey), and (4) incorrectly assume that only 0.25% of class members will opt out (assuming all *Robinson* Plaintiffs opt out, the minimum opt-out percentage will be at least 3% and likely higher), when processing opt-outs accounts for a substantial portion of an administrator's fee.

As evidence that the $50,000 administration fee charged by ALS is appropriate, Courts in this Circuit have approved ALS for administration fees between $40,000 and $45,000 in class settlements with smaller class sizes.  See *Lin, et al. v. Benihana National Corp., et al.,* 10 Civ. 1335 (S.D.N.Y. June 27, 2014) (approving $45,000 in administration fees to ALS for a class size of 905 individuals); *Viafara v. MCIZ Corp., et al.,* No. 12 Civ. 7452 (S.D.N.Y. May 1, 2014) (approving $40,000 in administration fees to ALS for a class size of 1,224, in connection with the Defendant JAD's settlement); *Guaman v. 5 "M" Corp., et al.*, No. 13 Civ. 3820 (S.D.N.Y. March 27, 2015) (approving $40,000 in administration fees to ALS for a class size of 553

---

[7] The *Robinson* Plaintiffs incorrectly allege on pages 11 and 12 of their memorandum of law that ALS will receive "up to "$70,000 in inflated administration costs." Such allegation is simply incorrect and is the *Robinson* Plaintiffs' misinterpretation of one of the settlement terms, as explained in section III(B) herein.

individuals).  Based on the aforementioned decisions, the increased costs of doing business in the past three years and the significantly larger class size, ALS's $50,000 administration proposal is reasonable.

Moreover, contrary to *Robinson* Plaintiffs' baseless contention that Plaintiffs "failed to secure bids from other administration companies," the undersigned has herewith provided a comparable third party administration quote from a reputable national settlement administration company, CPT Group, supporting that a $50,000 administration cost for a 1,709 person class with bilingual administration capabilities and call center (English/Spanish) is appropriate and reasonable.  See **Exhibit A** to the Decl. of C.K. Lee, CPT Group estimate of $49,626.51.

Although the *Robinson* Plaintiffs argue that Plaintiffs' counsel's role is "compromised" as counsel stands to profit from the "same work" in using an administration company under common control, having an entity under common control of Plaintiffs' counsel act as settlement claims administrator streamlines the administration process, and is consistent with the practice in the Second Circuit.  Advanced Litigation Strategies, LLC ("ALS") has been repeatedly approved and has served as settlement claims administrator on several class settlements for which the undersigned counsel represented the class, in both the Eastern and Southern Districts, including but not limited to in the following cases:

- *Viafara v. MCIZ Corp., et al.,* No. 12 Civ. 7452 (S.D.N.Y.);
- *Khamsiri, et al. v. George & Frank's Japanese Noodle Rest. Inc., et al*., No. 12 Civ. 0265 (S.D.N.Y.);
- *Flores, et al. v. KC 53 LLC, et al.*, No. 12 Civ. 8095 (S.D.N.Y.);
- *Romero v. La Revise Associates, LLC, et al.*, No. 12 Civ. 8324 (S.D.N.Y.);
- *Lin, et al. v. Benihana National Corp., et al.,* 10 Civ. 1335 (S.D.N.Y.);
- *Sierra v. Triple J. Associates of Queens, Inc.,* No. 12 Civ. 4462 (E.D.N.Y.);
- *Shahriar v. Sukhmani Inc., et al.,* No. 13 Civ. 3823 (S.D.N.Y.);
- *Sanchez v. JMP Ventures, L.L.C., et al.*, No. 13 Civ. 7264 (S.D.N.Y.);
- *Carillo v. 27-39 East 30 Rest. Corp., et al*., No. 13 Civ. 4491 (S.D.N.Y.);
- *Guaman v. 5 "M" Corp., et al.*, No. 13 Civ. 3820 (S.D.N.Y.);
- *Alvarado v. Dublin 6 at 115 Broadway Inc., et al.*, No. 14 Civ. 3939 (S.D.N.Y.);

- *Santana v. Fishlegs LLC, et al.*, No. 13 Civ. 1628 (S.D.N.Y.);
- *Cabrera v. Glenoak Enterprises, LLC, et al.*, No. 14 Civ. 5599 (E.D.N.Y.);
- *Mohamed v. Sophie's Cuban Cuisine, Inc., et al.*, No. 14 Civ. 3099 (S.D.N.Y.);
- *Solorio v. 142 Mercer Street, LLC, et al.*, No. 15 Civ. 5817 (S.D.N.Y.);
- *Galvez v. Lucky Pearl, LLC, et al.*, No. 15 Civ. 5177 (S.D.N.Y.); and
- *Hernandez v. McGee's Bar & Grill, Inc., et al.*, No. 15 Civ. 6067 (S.D.N.Y.).

Lastly, as to the *Robinson* Plaintiffs' implication that having an administrator under common control of Plaintiffs' counsel is somehow improper, Plaintiffs provide below the evidence of the ethical implications of using a firm-controlled claims administrator, which LLG had previously submitted to both Hon. Frederic Block, U.S.D.J. and Hon. Lorna G. Schofield, U.S.D.J., in connection with the final approvals of class settlements that were ultimately approved in the Eastern and Southern Districts, *Guaman v. 5 "M" Corp., et al.*, No. 13 Civ. 3820 (S.D.N.Y.) and *Cabrera v. Glenoak Enterprises, LLC, et al.*, No. 14 Civ. 5599 (E.D.N.Y.).

"We have contacted the Committee on Professional Ethics regarding the issue of whether a law firm may use a settlement claims administrator under common control of counsel. The attorney assigned to the Ethics Hotline (Jamie Stecher, Esq.), confirmed that an attorney may own and operate both a law firm and a non-legal business (such as a settlement administration company) simultaneously. The Ethics Hotline attorney stated that an attorney's ownership of or engagement in such non-legal business is not prohibited by the Rules of Professional Conduct 5.7, 5.8, or otherwise."

"Upon further research, we have confirmed the guidance provided by the Ethics Hotline attorney is correct. Devika Kewalramani's publication "Lawyer-Nonlawyer Business Ventures: A Limited Affair" explains:

'Attorneys may own or operate, through separate legal entities, non-legal "ancillary businesses", to provide non-legal services (e.g. investment advice, accounting services, mortgage brokerage services, among other examples). Such is generally referred to as "multidisciplinary practice." Rule 5.7 defines "nonlegal services" as "those services that lawyers may lawfully provide and that are not prohibited as an unauthorized practice of law when provided by a nonlawyer." Under Rule 5.7, lawyers and law firms may provide nonlegal services to clients or to the public in different ways: either (1) directly, e.g., by hiring salaried nonlawyer employees who may or not be professionals (e.g., researchers or financial planners) to provide nonlegal services or employing lawyers who are, for example, also accountants, or (2) indirectly, e.g., through legally separate entities − such as engineering firms or accounting firms − that the lawyer or law firm owns, controls or is affiliated with.'"

"Some law firms have nonlegal "ancillary businesses" that they own and operate as separate entities to provide nonlegal services (e.g., investment advice, environmental services or trust services).  See N.Y.S. Bar Op. 755 (2002), applying the predecessor to the Rules (lawyers may refer clients to their nonlegal businesses if they provide clients with the disclaimer under Rule 5.7(a)(4), without complying with Rule 1.8(a) governing business transactions with clients, so long as the client is fully informed of the lawyer's interest in the nonlegal entity pursuant to Rule 1.7(a) and of available alternatives).  The opinion added that there is no bar on the lawyer or the ancillary business from advertising the availability of the dual roles or referring existing clients to the other, but warned that no referral fee may be paid for such referral."  Devika Kewalramani, Moses & Singer LLP, *"Lawyer-Nonlawyer Business Ventures: A Limited Affair"*

### iii.   *Robinson* is <u>not</u> a Superior Vehicle to Prosecute the Class's Claims

Rather than simply oppose preliminary approval, the *Robinson* Plaintiffs' also attempt in to make a power grab by arguing that *Robinson* is the "superior vehicle" to prosecute the class's claims because: (i) it was "first filed" (citing *Alcantara*, a prior federal action which, by their own admission, was voluntarily dismissed by Plaintiffs based on their interpretation of the forum selection clause in the delivery drivers' Operating Agreements), (ii) the *Robinson* state court action is "further along" than *Cando*, and (iii) Plaintiffs' counsel in *Robinson* is "superior" to Plaintiffs' counsel in the instant action.

As to *Robinson* Plaintiffs' flawed argument that their action was "first filed" and thus enjoys superiority and priority to *Cando*, repeating such argument over and over again does not make it true.  Such argument has been briefed *ad nauseum* in connection with the *Robinson* Plaintiffs' Motion to Intervene and does not need to be reiterated here, other than to emphasize that **it is well settled in the Second Circuit that the first-filed rule only applies to concurrent federal litigation**.  Seemingly trying to work around this rule, the *Robinson* Plaintiffs' now contend that their predecessor federal case, *Alcantara,* not *Robinson*, was the first-filed case. However, this argument fails as the *Robinson* Plaintiffs voluntarily opted to abandon and dismiss their federal action (by the filing of a Notice of Dismissal on November 3, 2015), and re-file

21

their action in state court on January 11, 2016, instead of fighting Defendants' anticipated motion to dismiss in federal court.  In any event, the fact that the *Robinson* Plaintiffs' action was filed first has nothing to do with whether the settlement is within the range of possible approval in order for the Court to grant preliminary approval

For the *Robinson* Plaintiffs to allege that their state court action has progressed further than *Cando*, while *Cando* has resulted in a class settlement that would resolve the claims of up to 1,709 class members and is on the cusp of preliminary approval, is nonsensical.  With motions for conditional collective certification and class certification pending and the expected several year litigation trajectory in state court, it is unlikely that *Robinson* will be resolved for the next several years.  *Cando*, contrastingly, is on the precipice of class resolution.

Next, the *Robinson* Plaintiffs argue that LLG should not be appointed Class Counsel as *Robinson* Plaintiffs' own counsels (Troy Kessler, Esq. of Shulman Kessler LLP, and Outten & Golden LLP) are "superior counsel[8]."  In this regard, the *Robinson* Plaintiffs attempt to color the Court's impression of LLG by citing to a couple of unfavorable sentences, taken out of context. However, as the saying goes, "people in glass houses shouldn't throw stones."  Although Plaintiffs do not dispute that both Mr. Kessler and Outten & Golden[9] are qualified and experienced plaintiff bar counsels, and have respect for both firms, a simple Google search reveals similar unfavorable language against them, which bears noting.

By way of an example, in connection with a class action litigation entitled *Morris, et al. v. Affinity Health Plans, Inc.*, S.D.N.Y. No. 09-cv-1932 (ALC)(MHD), the named plaintiff in such action, Kim Morris, objected to the settlement and filed a declaration alleging misconduct

---

[8] *Robinson* Plaintiffs also refer to Anthony Capetola, Esq. who is apparently a third co-counsel in the *Robinson* state court case but has not appeared for the *Robinson* Plaintiffs as Intervenor-Movants in the instant action.

and ethical failures by her counsel, Troy Kessler.  See **Exhibit B** to the Declaration of C.K. Lee.

Ms. Morris alleged, among other things, that Mr. Kessler:

- "…put his own, personal interests above [Mr. Morris's] interests and the interests of other plaintiffs and class members."
- [engaged in conduct that] "was so despicable that he caused [Ms. Morris] financial harm."
- "never asked me to approve of a settlement offer he was going to make at the mediation"
- settled a class case without Ms. Morris's approval;
- told Ms. Morris if she was not satisfied with the settlement amount he would just "give her the remainder of what she think she's owed from what is recovered;"
- when she asked about obtaining a copy of the settlement agreement to read and review, Mr. Kessler informed Ms. Morris "you wouldn't understand it because its in legal terms" and couldn't leave it with her because "it was confidential and the Judge wouldn't approve of him leaving it with her."

As to Outten & Golden ("O&G"), the undersigned is surprised that such firm, which has recently joined Mr. Kessler as co-counsel to the *Robinson* Plaintiffs, would join in a memo alleging LLG is "unqualified" to act as class counsel when in fact, LLG has successfully co-counseled several class action cases with O&G, listed below, and enjoys a successful and productive working relationship with the firm:

- *Yuzary v. HSBC Bank USA, N.A.*, et al., No. 12 Civ. 3693;
- *Ortiz v. Chop't Creative Salad Company LLC*, No. 13 Civ. 2541;
- *Flores, et al. v. Anjost Corp., et al.*, No. 11 Civ. 1531;
- *Long, et al. v. HSBC USA Inc., et al.*, No. 14 Civ. 6233; and
- *Mendieta, et al. v. Serafina Management Group, Ltd., e al.*, No. 14 Civ. 5121.

Further, while the *Robinson* Plaintiffs cite to language in decisions reducing LLG's fees as evidence that LLG would be insufficient class counsel in the instant action, O&G's fees have also been reduced, and in such decisions (a few of which are listed below), the Court similarly took issue with O&G's billing practices:

- In *Ortiz v. Chop't Creative Salad Company LLC, et al.*, No. 13 Civ. 2541 (S.D.N.Y. January 16, 2015), Magistrate Judge Kevin Nathaniel Fox chastised O&G for failing to adhere to a quality control process, submitting statements with "glaring errors," "incorrect paragraph numbering," and found disingenuous the

statement from Justin Swartz that "a partner reviews all documents after they have been filed on ECF." Judge Fox further found billing records of O&G to be "duplicative."

- In *Mills v. Captial One, N.A.*, No. 14 Civ. 1937, (S.D.N.Y. September 30, 2015) Judge Pitman found the rates charged by O&G to be unreasonable and reduced the rates of O&G counsels, including a reduction to Mr. Swartz's hourly rate from $725 to $550.

- In his Opinion and Order in *Long, et al. v. HSBC USA Inc., et al.*, No. 14 Civ. 6233 (S.D.N.Y. September 13, 2016), Magistrate Judge Henry B. Pitman similarly reduced the hourly rates of O&G attorneys, including Mr. Swartz, as "too high" (reducing from $750 per hour to $550 per hour).

Again, the undersigned is not alleging that O&G is insufficient at representing plaintiffs or class members, but the negative language used by Magistrate Judges Fox and Pitman illustrates that most attorneys are criticized by the Court for one reason or another during the course of their professional careers. Such criticism does not support a finding of insufficiency for LLG to be appointed class counsel.

Plaintiffs are not familiar with Anthony Capetola, Esq.'s experience or background other than the Declaration he submitted in the *Robinson* state court action, which the *Robinson* Plaintiffs attached as Exhibit 14 to the Decl. of Troy Kessler. However, a search reveals that he and his firm are "Long Island divorce, child support, family and custody lawyers." Upon information, he does not practice or specialize in employment law or class action litigation.

Lastly, although the *Robinson* Plaintiffs argue their counsel are "superior" to LLG, why then does it take three firms to represent the *Robinson* Plaintiffs? Accordingly, if the *Robinson* Plaintiffs are arguing that LLG is attempting to seek a windfall in legal fees in connection with this settlement, how is it that having three firms, doing three times as much work, at billing rates that exceed that of LLG's attorneys and staff, going to be more cost effective for the Class?

**IV.**     **Issuance of a Preliminary Injunction is Appropriate**

Federal courts, in fact, may enjoin state court litigation "once the litigation reaches the settlement stage" in order to "effectuate a final settlement."  *See, e.g., In re Mexico Money Transfer Litig.*, No. 98 C 2407, 98 C 2408, 1999 WL 1011788, at *3 (N.D. Ill. Oct. 19, 1999). Thus, numerous courts have recognized the power of federal courts to enjoin state court actions that would interfere with the implementation of a class action settlement.  *See Flanagan v. Arnaiz*, 143 F.3d 540, 545-46 (9th Cir. 1998); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 477 (E.D. Cal. 2009) (issuing injunction requested by Plaintiffs to enjoin class members from bringing actions based on the FLSA claims covered by the pending settlement, noting that "the existence of other actions by class members for the same or similar claims could jeopardize the ability to proceed with final approval of the settlement").  *Gross v. Barnett Banks, Inc.*, 934 F. Supp. 1340, 1345-46 (M.D. Fla. 1995).  The same rings true in the Second Circuit.  *See In re Baldwin-United Corp.*, 770 F.2d 328, 335 (noting that federal injunctive relief "may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case") (quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.D.N.Y. 1990) ("The Second Circuit has recognized that a stay of proceedings in state court is appropriate under the 'necessary in aid of jurisdiction' exception where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective") (quoting *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990)).

The *Robinson* Plaintiffs' argument that the Plaintiffs' request for an injunction is "extraordinary" and "improper," and that Plaintiffs simply acceded to Big City's wishes in

requesting an injunction is yet another blatant misstatement of fact.  As Plaintiffs explained in their memorandum of law in support of plaintiff's motion for preliminary approval, it is common practice for federal courts to issue preliminary injunctions after granting preliminary approval to class action settlements while notice is being disseminated to the Class.  *See e.g., Rapoport-Hecht v. Seventh Generation, Inc.*, 7:14-cv-09087 (KMK), ECF No. 52, ¶ 17 (S.D.N.Y Oct. 12, 2016); *Nicotra v. Babo Botanicals, LLC*, 2:16-cv-00296 (GRB), ECF No. 23, ¶ 16 (E.D.N.Y. Sept. 7, 2016); *Deangelis v. Corzine*, 1:11-cv-07866 (VM)(JCF), ECF No. 1108, ¶ 19 (S.D.N.Y. Jul. 14, 2016); *In re JP Morgan Chase & Co. Securities Litig.*, 1:12-cv-03879 (GBD), ECF No. 47, ¶ 17 (S.D.N.Y. Jan. 19, 2016).

Contrary to the *Robinson* Plaintiffs' assertion, the injunction does not "remove class members' opportunity to pursue their valuable claims."  (ECF No. 113, p. 18).  Rather, the issuance of an injunction benefits all parties, including the *Robinson* Plaintiffs, by preventing class member confusion in receiving multiple notices relating to multiple cases, each with varied procedural postures.  The injunction will streamline the process and will allow class members to evaluate for themselves if they want to participate in the class settlement or not.

The cases cited by the *Robinson* Plaintiffs are inapposite and should be disregarded.  In particular, *U.S. v. Schurkman*, 728 F.3d 129 (2d Cir. 2013), upon which the *Robinson* Plaintiffs heavily rely, is both factually and procedurally inapplicable.  *Schurkman* did not involve competing class actions lawsuits; instead, the controversy arose from an environmental enforcement action brought by the United States seeking reimbursement for cleanup activities undertaken at Defendants' septic tank site.  *Id*. at 131-32.  Moreover, the court in *Schurkman* dealt with a final consent decree, not a motion for preliminary approval of class action settlement. *Id.* at 132-33.

The *Schurkman* court cites to *Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012), which is inapposite to the situation here.  *Wyly* also concerned a final judgment and addressed a case that was unrelated to the settlement. Neither factor applies here.  The *Wyly* case mentions in passing that the claims are not duplicative, none of the defendants were the same, and the other action would have no effect on that release in the federal settlement.  *Wyly*, 697 F.3d at 139.  Here, the circumstances are exactly the opposite of those presented in *Wyly*, which further supports the issuing of the injunction in the present action.

The *Robinson* Plaintiffs likewise overlook the similarities between the present circumstances and those presented in *Baldwin-United*.  Like in *Baldwin-United*, the parties are in the final stages of the settlement process, and  the risk of derailing a settlement at this stage is high.

It is also critically important – and overlooked by the *Robinson* Plaintiffs – that the injunction sought in *Schurkman* would be permanent and "would seriously undercut principles of comity."  *U.S. v. Schurkman*, 728 F.3d 129, n. 4 (2d Cir. 2013).  In holding that the *Baldwin-United* exception was inapplicable, the *Schurkman* Court noted that the injunction in *Baldwin-United* "was to expire upon entry of final judgment in all of the multidistrict proceedings in federal court, thus posing less of a risk to fundamental constitutional independence of the States and their courts."  *Id.* (quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)).  In this action, the preliminary injunction would only be in effect until the Court issues its decision granting final approval of the settlement.  (ECF Dkt. No. 97-1, ¶ 10).  This provides further support for Plaintiffs' argument that issuance of the injunction is proper.

27

The *Robinson* Plaintiffs' reliance on *Chang v. Phoenix Satellit TV (U.S.), Inc.*, No. 14 Civ. 2686, 2014 WL 5017838 (S.D.N.Y. Sept. 22, 2014) is also procedurally distinguishable from the procedural posture in the present action.  The plaintiffs in *Chang* had filed a federal court lawsuit against their employer, which included accusations of retaliation by their supervisor.  *Id.* at *3.  Thereafter, the plaintiffs sought to enjoin a state court action filed by the supervisor, who alleged the plaintiffs of defamation.  *Id.*  The court denied the injunction, finding that even "[t]hough it is possible that the state court could issue rulings that have a bearing on factual issues arising in the action, this [alone] is insufficient to justify an injunction."  *Id.* at 4. The present circumstances are markedly different.   Clearly, the present circumstances warrant the Court's issuance of a preliminary injunction pursuant to the All Writs Act and the exceptions to the Anti-Injunction Act.

## CONCLUSION

For the reasons set forth herein and as set forth in Plaintiffs' memorandum of law in support of plaintiffs' motion for preliminary approval of class action settlement and approval of proposed notice of settlement and in defendants' opposition to the *Robinson* plaintiffs' motion to intervene, it is respectfully submitted that the Court should overrule the *Robinson* Plaintiffs' opposition and objection to preliminary approval, preliminarily approve the settlement and authorize the distribution of notice.

Dated: January 13, 2017
      New York, New York                          Respectfully submitted,
                                      LEE LITIGATION GROUP, PLLC

                        By:   /s/ C.K. Lee, Esq.
                                C.K. Lee (CL 4086)
                                Anne Seelig (AS 3976)
                                30 East 39th Street, 2nd Floor
                                New York, New York 10016
                                Telephone:  (212) 465-1188